<div align="center">

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**Case No. 17-cv-24127-DPG**

</div>

NLG, LLC,

      Defendant/Appellant

v.

SELECTIVE ADVISORS GROUP, LLC,
LIZA HAZAN, A/K/A ELIZABETH HAZAN

      Plaintiffs/Appellees

_____/

<div align="center">

**<u>NLG, LLC'S MOTION FOR REASSIGNMENT OF RELATED CASE</u>**
**<u>PENDING BEFORE THE HONORABLE JOSE E. MARTINEZ TO CASE</u>**
**<u>TO THE HONORABLE DARRIN P. GAYLES</u>**

</div>

      NLG, LLC ("NLG"), through undersigned counsel, in accordance with this Court's inherent authority, Local Rule 3.8 and Section 2.15.00 of the Court's Internal Operating Procedures, files this Motion for Reassignment of Related Case Pending Before the Honorable Jose Martinez to the Honorable Darrin P. Gayles (the "Motion") and avers as follows:

<div align="center">

**<u>PRELIMINARY STATEMENT</u>**

</div>

      On April 10, 2018, NLG filed a declaratory judgment action seeking relief from a $5 million dollar Judgment by Confession obtained by Selective Advisors Group, LLC without notice to NLG or an opportunity to be heard, captioned as *NLG, LLC v. Selective Advisors Group, LLC*, Case Number 18-cv-21398-JEM (the

"Declaratory Action").  This Declaratory Action was assigned to the Honorable Jose E. Martinez and is directly related to the pending matter before this Court captioned as *NLG, LLC v. Selective Advisors Group, LLC and Liza Hazan*  [Case No. 17-cv-24127-DPG] (the "Related Action").  On April 13, 2018, NLG filed a notice of related action. [*See* ECF No. 37]. As detailed below, the Declaratory Action should be reassigned to this Court which has already spent considerable judicial resources over the past six months on litigation involving the same property, the same issues of fact and law, originated from the same transaction and involving the same parties.   Reassignment will also prevent inconsistent rulings, promote judicial economy and prevent delays.

### Conditions for Reassignment

While the Southern District has no specific rules for reassignment, other district courts state: A case may be reassigned to the calendar of another judge if it is found to be related to an earlier-numbered case assigned to that judge and each of the following criteria is met:

**(1)** both cases are pending in this Court;

**(2)** the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort;

**(3)** the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and

**(4)** the cases are susceptible of disposition in a single proceeding.

1.     As already stated, both cases are pending in this Court and thus the first condition has been met.

2.     The handling of both cases by the same judge is likely to result in substantial savings of judicial time and effort is also true.  The Related Action involves an appellate record exceeding 2,000 pages where an initial brief has already been filed by Appellant NLG.  [*See* ECF No. 14 and 14-1].  This Court has already conducted two hearings on the matter and is very familiar with the parties, the property at issue, the related case facts and the related case law.

3.     The earlier case, *i.e.* the Related Action has not progressed to the point where designating a later filed case as related would be likely to delay the proceeding. In fact, it would have the opposite effect and speed up the disposition of both matters.

4.     The cases are both susceptible of disposition in a single proceeding.

5.     Attached hereto as Exhibit 1 is a copy of the Declaratory Action and Exhibits.

6.     Counsel Grant has made an appearance in the Declaratory Action and objects to the reassignment of the case to this Court as premature.  Counsel Grant has filed a Motion for Extension of Time to File a Response/Reply Answer to the Declaratory Action.

**WHEREFORE, P**laintiff, NLG, LLC, respectfully requests that the Court grant NLG's Motion for Reassignment of Related Case Pending Before the Honorable Jose Martinez to the Honorable Darrin P. Gayles; reassign the Declaratory Action pending before Judge Martinez to this Court and grant such other and further relief as the Court deems appropriate.

Dated: May 1, 2018

Respectfully submitted,

**Attorneys for NLG, LLC**
Juan Ramirez, Jr.
ADR Miami LLC
Florida Bar No. 201952
1172 S. Dixie Hwy. #341
Coral Gables, FL 33146
(305) 667-6609
jr@adrmiami.com

Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I filed the foregoing with the Clerk of the Court and a true and correct copy of foregoing was served via U.S. mail or email and

EFC system to the parties on the attached service list as indicated on this 1st day of May, 2018.

Respectfully submitted,

/s/ Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com
*Attorneys for NLG, LLC*

## SERVICE LIST

**Via Email and ECF**

Joe M. Grant, Esq. on behalf of Defendant/Appellee Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;
mg197ecfbox@gmail.com;sleary@msglaw.com

David W. Langley on behalf of Defendant/Appellee Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

# Exhibit 1
# The Declaratory Action

*NLG, LLC v. Selective Advisors Group, LLC*, Case Number 18-cv-21398-JEM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 18-cv-

NLG, LLC,

     Plaintiff

v.

SELECTIVE ADVISORS GROUP, LLC,

     Defendant

_____/

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT

NLG, LLC ("NLG") files this Verified Complaint for Declaratory Judgment to vacate, set aside and strike a fraudulent judgment by confession *nunc pro tunc* to date of entry and avers as follows:

## INTRODUCTION

1. This is an action to declare a judgment obtained by 9197-5904 Quebec, Inc. (herein "Quebec") fraudulent which two other judges have previously ruled was nothing but a sham—Judge Jean K. FitzSimon of the United States Bankruptcy Court for the Eastern District of Pennsylvania and Florida Circuit Court Judge Monica Gordo.

2. Quebec is the predecessor to Selective Advisors Group, LLC ("Selective"). Quebec fraudulently obtained and recorded a sham $5 million judgment by confession on February 22, 2012 in New York County, New York, attached hereto as Exhibit 1 (the "Sham Confessed Judgment").

3. On or about April 21, 2014, Quebec domesticated the Sham Confessed Judgment in Miami-Dade County, Florida.

4.      On or about May 5, 2014 in Florida and on June 17, 2014 in New York, Quebec assigned the Sham Confessed Judgment to Selective for no consideration.   See Exhibit 11.

5.      On or about September 4, 2015, Selective voluntarily filed a satisfaction of the Sham Confessed Judgment. Attached hereto as Exhibit 2 is a true and correct copy of the New York County Clerk's Certificate of Disposition and Satisfaction of the Confessed Judgment recorded by counsel of record for Selective in New York. Selective offered the New York court no explanation for the satisfaction, nor did the New York court make any finding before accepting the satisfaction and dismissing the case.

6.      While the judgment has been "satisfied" and dismissed, it continues to affect NLG's rights to foreclose on a mortgage which the Third District Court of Appeal ordered enforced by a mandate issued more than three years ago.

7.      Although the Sham Confessed Judgment is no longer outstanding, NLG seeks to have the entire proceeding stricken from the public record *nunc pro tunc* to date of entry because it was a fraud on the Court, was procedurally defective, was obtained ex parte, without notice, and in violation of NLG's rights to due process. Thus, the Sham Confessed Judgment should have never been recorded, but was instead recorded in New York County, New York and Miami-Dade County, Florida.

## **PARTIES**

8.      NLG is a Delaware Limited Liability Company with its principal place of business located at 854 Pheasant Run Road, West Chester, Pennsylvania 19382.  NLG is citizen of Nevis.

9.      Selective is a Delaware Limited Liability Company with its principal place of

**2**

business located at 6913 Valencia Drive, Fisher Island, FL 33109.  Selective is a citizen of Florida.

## VENUE AND JURISDICTION

10.     Jurisdiction is proper in this Court. The Court has jurisdiction over this action under 28 U.S.C. § 1332 (Diversity), and 28 U.S.C. § 2201 (Declaratory Judgment Act).

11.     This Court has personal jurisdiction over Selective because Selective is a citizen of Miami Dade County, Florida and Selective used the state and federal courts of Florida to further its fraud.

12.     Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1391(c).

13.     An actual case or controversy has arisen between the parties.

## FACTUAL BACKGROUND

14.     On or about January 4, 2012, Quebec, recorded in Pennsylvania a judgment against Chris Kosachuk individually and NLG (the "Lorret Judgment").  Attached as Exhibit 3 is a copy of the Lorret Judgment. As can be seen from Exhibit 3, although the Lorret Judgment listed NLG in the caption, the actual judgment was only against Chris Kosachuk individually.

15.     However, Quebec misrepresented the judgment debtors when it domesticated the Lorret Judgment in Pennsylvania and fraudulently claimed the Lorret Judgment was also against NLG. It was not.  Attached as Exhibit 4 is the Houle Affidavit used in Pennsylvania which misled the Pennsylvania Court.

16.     Quebec then sought a charging order with management rights to NLG without any service or notice to NLG. This Court should take judicial notice that both Pennsylvania and Delaware law specifically prohibit a judgment creditor from taking over the management

3

of an LLC. Furthermore, even if valid, the Charging Order should have been limited to collecting the amount due under the Lorret Judgment, which was the relief requested in Quebec's motion, to wit: $105,375.78, plus costs of $1,050.00, and interest.

17.     Using those wrongfully and fraudulently obtained management rights, on February 22, 2012, Quebec recorded the Sham Confessed Judgment at issue in this action by acting as Plaintiff Quebec and Defendant NLG at the same time in the same action using the same attorney, Mr. Darius Marzec, who is also Liza Hazan's attorney of record in the three states.

18.     As soon as NLG discovered this fraud committed by Quebec and its attorney, Mr. Marzec, NLG motioned the Pennsylvania court to vacate the Lorret Judgment and the charging order against NLG, which the Pennsylvania court did.  Attached hereto as Exhibit 5 is the order vacating the Lorret Judgment and charging order against NLG (the "Vacatur Order").  By operation of law, the Vacatur Order cancelled all actions taken pursuant to the charging order or the Lorret Judgment.

19.     Before the Pennsylvania Court vacated the charging order, on March 27, 2012, the Marzec Law Firm filed a complaint in New York County, New York, against Mr. Kosachuk and NLG with NLG as the purported plaintiff under Index Number 102260/2012 captioned V.R. Auto Location D/B/A NLG, LLC AND NLG, LLC v. Christopher Kosachuk (Index Number 102260/2012 NYSCEF Doc. Nos. 2)) (the "V.R. Auto Complaint"). Attached hereto as Exhibit 6 is a true and correct copy of the V.R. Auto Complaint.

20.     Correctly the New York Court abated the action to give NLG an opportunity to vacate the charging order in Pennsylvania.  As soon as the New York Court became aware of its vacatur, it forced Mr. Marzec to withdraw his frivolous V.R. Auto Complaint, which

4

was done on June 27, 2012. Attached hereto as Exhibit 7 is a true and correct copy of the New York Court's Order recognizing the withdrawal of the V.R. Auto Complaint.

21.     At no time in the action pursuant to the V.R. Auto Complaint did Quebec or Mr. Marzec ever mention in any of their filings that Quebec already had recorded a $5 million Judgment by Confession against NLG on February 22, 2012. There was no point to the V.R. Auto Complaint against NLG, if Quebec was already a real judgment creditor of NLG for $5 million. Quebec and its attorney concealed these facts from the New York Court, NLG and Mr. Kosachuk.

22.     On April 4, 2014, Raymond Houle, gave a deposition wherein Mr. Houle unequivocally stated that NLG owed no money to Quebec. Attached hereto as Exhibit 8 is a true and correct copy of the Houle Deposition Transcript.

23.     Specifically in his deposition on page 45 at lines 18 – 20, Mr. Houle was asked "Before you filed this confession of judgment against NLG, did NLG owe Quebec Corporation any money?" Answer by Mr. Houle. "No." Accordingly, Mr. Houle admits that NLG owed no money to Quebec before this sham Confessed Judgment.

24.     Knowing that no money was actually owed, Quebec used the Florida Courts to further its fraud.

25.     On or about April 21, 2014, Quebec domesticated the Sham Confessed Judgment in Miami-Dade County under case number 14-10475-CA-01 and the case was assigned to the Honorable Peter Lopez.

26.     On March 24, 2015, the Honorable Jean K. FitzSimon of the United States Bankruptcy Court for the Eastern District of Pennsylvania cancelled the Lorret Judgment against Mr. Kosachuk *nunc pro tunc*, which had served as the basis for the entire proceeding

5

and charging order from Pennsylvania.  Attached hereto as Exhibit 9 is a true and correct copy of the FitzSimon Judgment.  Judge FitzSimon found that the entire proceeding in Pennsylvania was filed in bad faith and awarded Mr. Kosachuk over **$1 million** in compensatory and punitive damages against Quebec, which remains wholly unsatisfied. This is the same entity, Quebec, which assigned its rights to Selective, and is still claiming rights against NLG based on the same Lorret Judgment. Both the US District Court for the Eastern District of Pennsylvania and the Court of Appeals for the Third Circuit agreed with this assessment of Quebec's bad faith and egregious actions in filing the bad faith involuntary bankruptcy proceeding against Mr. Kosachuk.

27.     This Court should note that Mr. Marzec was the attorney who filed the bad faith involuntary proceeding against Mr. Kosachuk in Philadelphia resulting in the damages judgment mentioned above, was also the architect of the Sham Confessed Judgment, has filed multiple pleadings in Florida, and is still Ms. Hazan's attorney of record.

28.     By operation of law, all actions taken pursuant to the Lorret Judgment and charging order were cancelled *nunc pro tunc* by Judge FitzSimon in the Bankruptcy Court for the Eastern District of Pennsylvania and by the Pennsylvania State Court.

29.     On March 15, 2018, the United States Court of Appeals for the Third Circuit affirmed the FitzSimon Judgment.  Attached hereto as Exhibit 10 is a true and correct copy of the Third Circuit Judgment and Opinion.

30.     Selective continues to assert wrongfully that it somehow still has rights pursuant to the Sham Confessed Judgment even though it voluntarily satisfied those rights years ago and the Pennsylvania Courts cancelled any of those alleged rights.

31.     Selective tried to assert those rights post satisfaction in front of Judge Gordo,

6

in NLG's Foreclosure Action. After carefully considering Selective's position and arguments, Judge Gordo rejected them all in a detailed 46-page order granting foreclosure (the "Foreclosure Order"). Attached as Exhibit 11 is a true and correct copy of the Foreclosure Order which is final and no longer appealable. The Judge Gordo Foreclosure Order was followed by a Final Judgment of Foreclosure, which was appealed, but that appeal was subsequently dismissed. Thus, all her findings and conclusions constitute the law of the case.

32. Judge Gordo's Foreclosure Order should have ended the matter but Selective continued to litigate this matter and NLG is now forced to bring this matter to conclusion before this Court.

### COUNT ONE – DECLARATORY JUDGMENT
### (VACATING, SETTING ASIDE AND STRIKING THE $5 MILLION SHAM CONFESSED JUDGMENT NUNC PRO TUNC TO DATE OF ENTRY)

33. To the extent applicable, NLG incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

34. NLG demands a declaratory judgment in its favor against Selective Advisors Group, LLC that the Sham Confessed Judgment is vacated, set aside and stricken with prejudice *nunc pro tunc* to date of entry in both New York and Florida.

35. Based on the foregoing, the Sham Confessed Judgment should be vacated, set aside and stricken with prejudice *nunc pro tunc* to date of entry.

**WHEREFORE**, Petitioner NLG respectfully requests a Final Judgment against Defendant, SELECTIVE ADVISORS GROUP, LLC, A Delaware Limited Liability Company, and enter judgment as follows:

1.) The Sham Confessed Judgment for $5 million and assigned to Selective Advisors

7

Group, LLC is hereby vacated, set aside and stricken from the public records, in both New York and Florida, *nunc pro tunc* to date of entry on the basis of fraud, collusion, an insufficient affidavit and failure to comply with the NY CPLR;

      2.)    Enter a judgment awarding NLG, LLC all attorney's fees court costs, disbursements and other such relief this Honorable Court finds appropriate.

Respectfully submitted,

**Attorneys for NLG, LLC**
Juan Ramirez, Jr.
Florida Bar No. 201952
ADR Miami LLC
1172 S. Dixie Hwy. #341
Coral Gables, FL 33146
(305) 667-6609
jr@adrmiami.com

Astrid E. Gabbe
The Law Office of Astrid E. Gabbe, P.A.
Florida Bar No. 635383
P.O. Box 4216
Hollywood, FL 33083
Tel. (954) 303-9882
Fax. (954) 983-1427
astridgabbe@gmail.com

Dated: Miami, FL
April 6, 2018

8

## **VERIFICATION**

I, Chris Kosachuk, pursuant to Fla. Stat. 92.525, 28 U.S. Code § 1746 and under penalty of perjury, I declare that I have read the foregoing Verified Complaint for Declaratory Judgment and that the facts are true, correct and based on my personal knowledge.

_____
Chris Kosachuk
Manager - NLG, LLC

Dated this 6th day of April, 2018

# EXHIBIT 1
Sham Confessed Judgment

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

**Address of Plaintiff:**
3765 Saint-Kevin, Ste 9
Montreal, Quebec H3T 1H8
Canada

9197-5904 Quebec, Inc.

**Plaintiff,**

Index No.:

**JUDGMENT BY**
**CONFESSION**

**against**

NLG, LLC, a Delaware Limited Liability Company,

**Defendant.**

12101875

| | | |
|---|---|---|
| Amount Confessed | $5,000,000.00 | |
| Interest | $0.00 | $ 5,000,000.00 |
| Costs by Statute | _____$15.00_____ | |
| Transcript | | |
| Fees on Execution | | |
| Satisfaction | | |
| Filing Fee | _____$210.00_____ | $ 5,000,225.00 |

The undersigned, Attorney at Law of the State of New York, affirms that he is the attorney of record for the Plaintiff herein and states that the disbursements specified are correct and true and have been or will necessarily be made or incurred herein and are reasonable in amount and affirms this statement to be true under the penalties of perjury.

Dated: February 16, 2012

**MARZEC LAW FIRM, PC**

I HEREBY CERTIFY THAT I HAVE
ADJUSTED THIS BILL OF COSTS AT
$ 225.00

FEB 22 2012

Norman Goodman
**CLERK**

Darius A. Marzec, Esq.
Attorney for Plaintiff
225 Broadway, Suite 3000
New York, NY 10007
(212) 267-0200

**FILED**

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

**JUDGMENT** entered the ___22nd___ day of ___February___, 2012

On the foregoing affidavit of Confession of Judgment made by the defendant herein,

sworn to the on the 16th day of February 2012,

**NOW, ON MOTION OF MARZEC LAW FIRM, PC**, attorney for plaintiff, it is

**ADJUDGED that** 9197-5904 Quebec, Inc. Plaintiff, with the address of 3765 Saint-

Kevin, Suite 9, Monteal, Quebec H3T 1H8, Canada, do recover of **NLG**, LLC, Defendant, with

the address of 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309, the sum

of $5,000,000.00 with interest of $0.00, making a total sum of $5,000,000.00 together with

$225.00 costs and disbursements, as taxed by the clerk    amounting in all to the sum of

$5,000,225.00 and that the plaintiff have execution therefor.

___Norman Goodman___

CLERK

FILED

FEB 22 2012

COUNTY CLERKS OFFICE
NEW YORK

\* Defendant's full name is:
NLG, LLC, a Delaware Limited
Liability Company

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

Index No. 10187/12

---

9197-5904 Quebec, Inc.,

**Plaintiff,**

**AFFIDAVIT OF**
**CONFESSION OF**
**JUDGMENT**

**against**

NLG, LLC, *A DelAWARE LIMITED*
*LIABILITY COMPANY,*

**Defendant.**

**FILED**

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

---

**STATE OF NEW YORK**

**COUNTY OF NEW YORK**     ss.:

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

The defendant hereby confesses judgment herein and authorizes entry thereof against defendant in the sum of $5,000,000.00.

Defendant's address is 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309; Defendant authorizes entry of judgment in New York County, New York, if said residence address is not in New York State.

This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Fraud and Abuse of Process.

**This affidavit, if made in connection with an agreement for the purchase for $1,500.00 or less of any commodities for any use other than a commercial or business use upon any plan of deferred payments whereby the price or cost is payable in two or more installments, was executed, subsequent to the time a default occurred in the payment of an installment thereunder.**

**Sworn to before me this**
**16 day of** *Febuary,* **2012**

*Raymond Houle*

9197-5904 Quebec, Inc. by Raymond Houle, Manager
*MANAGER, NLG LLC*

*NOTARY PUBLIC*

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/2012

13



**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

Index No. *10 875/12*

9197-5904 Quebec, Inc.,

                  **Plaintiff,**

    **against**

NLG, LLC,

                 **Defendant.**

**AFFIDAVIT OF
RAYMOND HOULE**
REGARDING FACTS
SUPPORTING
JUDGMENT

**STATE OF NEW YORK**

**COUNTY OF NEW YORK**      **ss.:**

      Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

      This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Defendant has consistently abused its legal position by filing frivolous litigation documents, affidavits, pleadings, and motions, in and without the state, misrepresenting the truth concerning key facts regarding the mode of operation, personnel, employees, corporate documents and status of defendant; Defendant has failed to abide by rules of court with respect to discovery, disclosures and subpoena power of the court and counsel, and has made litigation process difficult, wasteful, and expensive to adversary/ies. All actions of Defendant constitute abuse of process and fraud upon the court and parties involved, who were unduly damaged by such fraudulent conduct and abuse of process by Defendant. The conduct of Defendant was intentional and malicious and calculated to cause additional expense, delay and harassment to defendant's adversaries; such conduct was illegal, improper, unethical and unnecessary to the administration of justice and process in these matters, giving Plaintiff a cause of action.

14

_Raymond Houle_
RAYMOND HOULE

Sworn to before me on the 21 day of February, 20 12.

_Notary Public_

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/20 12

FILED

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

15



**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK** Index No.

9197-5904 Quebec, Inc.,

**Plaintiff,**

**against**

NLG, LLC., A DELAWARE LIMITED LIABILITY
COMPANY,

**Defendant.**

---

**JUDGMENT BY CONFESSION**
**AFFIDAVIT OF JUDGMENT BY CONFESSION**

---

**ATTORNEYS FOR PLAINTIFF**
**Marzec Law Firm, P.C.**
**Darius A. Marzec, Esq.**
**225 Broadway, Suite 3000**
**New York, NY 10007**
**212-267-0200**

**FILED AND DOCKETED**
FEB 2 2 2012
AT 10:25 A M
N.Y., CO. CLK'S OFFICE

---

**CERTIFICATION**

Pursuant to Section 130-1.1, the following documents are hereby certified:

By: Darius A. Marzec, Esq.
MARZEC LAW FIRM PC
Attorneys for Plaintiff
225 Broadway, Ste. 3000
New York, NY 10007
(212) 267-0200


DOCKETED BY

# EXHIBIT 2

New York County Clerk's Certificate of Disposition and
Satisfaction of the Confessed Judgment

NO. 00321     <<< FEE >>>     CERTIFICATE OF DISPOSITION     <<< FEE >>>

| JUDGMENT DEBTOR | | | | JUDGMENT CREDITOR | ATTORNEY FOR JUDGMENT CREDITOR |
|---|---|---|---|---|---|
| SURNAME | GIVEN NAME | PROFESSION | LAST KNOWN ADDRESS | NAME AND ADDRESS | NAME AND ADDRESS |
| 01 NLG LLC | | | 6499 NORTH POWERLINE ROAD #304<br>FT LAUDERDALE FL 33309 | A)9197-5904 QUEBEC INC<br>SEE REMARKS | MARZEE LAW FIRM P C<br>225 BROADWAY SUITE 3000<br>NEW YORK NY 10007 |

| JUDGMENT DOCKETED | JUDGMENT RENDERED | AMOUNT OF JUDGMENT | |
|---|---|---|---|
| DATE: 02/22/2012 | COURT: SUPREME COURT | | |
| | COUNTY: NEW YORK | DAMAGES | |
| HR & MIN: 10:25 | INDEX NO: 101875/12 | COST | |
| | DATE: 02/22/2012 | TOTAL | $5,000,225.00 |
| | HR & MIN: 10:25 | | |

| EXECUTION | SATISFIED | |
|---|---|---|
| WHEN ISSUED | WHEN | HOW AND TO WHAT EXTENT |
| | 9/4/15 | FULLY SATISFIED BY SATISFACTION PIECE |

STATE OF NEW YORK
COUNTY OF NEW YORK

    I, MILTON A. TINGLING, CLERK OF THE COUNTY OF NEW YORK, HEREBY CERTIFY THAT THE ABOVE IS A
CORRECT TRANSCRIPT FROM THE DOCKET OF JUDGMENTS IN MY OFFICE.

*Fully Satisfied As Stated*

IN TESTIMONY WHEREOF, I HAVE HERE UNTO SET MY NAME AFFIXED MY OFFICIAL SEAL THIS 1st DAY September 20 15

COUNTY CLERK, NEW YORK COUNTY

PAGE: 1

18

NO. 00321

REMARKS:   DATE AND MANNER OF CHANGE OF STATUS OF JUDGMENT      <<< FEE >>>      CERTIFICATE OF DISPOSITION      <<< FEE >>>

02/22/2012 CREDITOR'S ADDRESS IS AS FOLLOWS: 3765 SAINT-KEVIN, SUITE 9
           MONTREAL, QUEBEC H3T 1H8    CANADA
           DEBTOR: NLG LLC, A DELAWARE LIMITED LIABILITY COMPANY
06/17/2014 JUDGMENT ASSIGNED TO: SELECTIVE ADVISORS GROUP, LLC DOING BUSINESS AT
           16192 COASTAL HIGHWAY, LEWES, DELAWARE 19958, COUNTY OF SUSSEX.
03/16/2015 TRANSCRIPT FILED IN SUFFOLK COUNTY ON 3/2/2015
09/04/2015 FULLY SATISFIED

STATE OF NEW YORK
COUNTY OF NEW YORK

        I, MILTON A. TINGLING, CLERK OF THE COUNTY OF NEW YORK, HEREBY CERTIFY THAT THE ABOVE IS A
CORRECT TRANSCRIPT FROM THE DOCKET OF JUDGMENTS IN MY OFFICE.
        Fully satisfied as stated
IN TESTIMONY WHEREOF, I HAVE HERE UNTO SET MY NAME AFFIXED MY OFFICIAL SEAL THIS __1th__ DAY __September__ 20 __15__

                                                        _____
                                                        COUNTY CLERK, NEW YORK COUNTY

19

# VLAHADAMIS & HILLEN LLP
### Attorneys and Counselors at Law

148 E. Montauk Highway, Suite 3
Hampton Bays, NY 11946

Telephone: 631.594.5400
Fax: 631.594.5401
www.vhlawny.com

*JAMES F. VLAHADAMIS
james@vhlawny.com

*Admitted in NY & NJ

EVANS M. HILLEN
evans@vhlawny.com

September 4, 2015

Via Fed Ex
Hon. Shlomo S. Hagler
c/o Meshulum Bulls
Supreme Court, Civil Term
New York County
60 Centre Street
Room 335
New York, New York 10013

RE: <u>9197-5904 QUEBEC, INC. (Selective Advisors Group, LLC, Judgment Assignee)</u>
<u>v. NLG, LLC</u>
<u>Index No.: 101875/2012</u>

Hon. Judge Hagler,

Please be advised that my firm represents the Selective Advisors Group LLC, plaintiff judgment creditor herein. This correspondence shall constitute a courtesy notification that plaintiff accepted payment in full satisfaction of the judgment outstanding against NLG, LLC and has caused the annexed Satisfaction of Judgment to be recorded with the county clerk's office.

Given the foregoing, it would be unsuitable for this Court to entertain any application of NLG, LLC (such as one filed by letter on September 3, 2015) seeking to restore the motion to vacate the judgment as there currently exists no judgment to vacate and the matter remains moot. Thank you for your attention to this matter.

Sincerely yours,

James F. Vlahadamis

CC:
ARI MOR, Esq. (Attorney for NLG, LLC)
JONATHAN BORG, Esq. (Attorney for ADR Miami, LLC, nonparty movant)

20

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------X
SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
Assignee of 9197-5904 Quebec Inc
     Plaintiff,           Index No:101875/2012

                                            **NOTICE OF FILING
                                            SATISFACTION OF
                                            JUDGMENT**

       - against -

NLG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY,
                        Defendant.
------------------------------------------------------------X

**PLEASE TAKE NOTICE** that the Plaintiff-Assignee Selective Advisors Group, LLC is

hereby filing a Satisfaction of Judgment.

Dated: September 3, 2015
      New York, New York


Vlahadamis & Hillen, LLP

                                By:    */s/ James F. Vlahadamis*
                                       James F. Vlahadamis, Esq.
                                       148 E. Montauk Highway
                                       Suite 3
                                       Hampton Bays, New York 11946



TO:    THE LAW OFFICES OF ARI MOR, ESQ
         347 E 65th Street, Suite 2RW
         New York, New York 2RW
         (347) 850-0578
         ari.mor.esq@gmail.com

         ATTORNEY FOR DEFENDANT
         NLG, LLC, a Delaware Limited Company

JONATHAN M. BORG BEDELL & FORMAN LLP
44 Wall Street, 10th Floor
(646) 219-7551
jborg@bedell-forman.com

ATTTORNEY FOR ADR MIAMI LLC ("ADRM")

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------X
SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
Assignee of 9197-5904 Quebec Inc.

                                    Plaintiff,          Index No: 101875/2012
                                                        SATISFACTION OF
                                                        JUDGMENT
              - against -

NLG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY

                                    Defendant.
--------------------------------------------------X

## SATISFACTION OF JUDGMENT

WHEREAS, a judgment was entered in the above entitled action On February 22, 2012 in
favor of 9197-5904 QUEBEC, INC. Against NLG, LLC in the sum of $5,000,000.00 plus
costs of $225.00, and said $5,000,225.00 judgment

Which was docketed in the Office of the Clerk of the County of New York, On February
22, 2012 and

WHEREAS, said judgment has been assigned on April 30, 2014 to Selective Advisors
Group, and

WHEREAS judgment creditor has accepted a partial payment

on account of the satisfaction of the judgment on September

23

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X
SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
Assignee of 9197-5904 Quebec, Inc

                          Plaintiff,

              - against -

NLG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY,

                        Defendant.
-------------------------------------------------------------X

Index No:101875/2012
**SATISFACTION OF JUDGMENT**

## SATISFACTION OF JUDGMENT

WHEREAS, a judgment was entered in the above entitled action On February 22, 2012 In

favor of 9197-5904 QUEBEC, INC Against NLG, LLC In the sum of $5,000,000.00 plus

costs of $225.00, and said $5,000,225.00 judgment

Which was docketed in the Office of the Clerk of the County of New York, On February

22, 2012 and

WHEREAS said judgment has been assigned on April 30, 2014 to Selective Advisors

Group, LLC and

WHEREAS said judgment has been paid in full (Plaintiff has accepted a partial payment

that is hereby deemed as payment in full satisfaction of the judgment) on September 1,

2015 and the amount of $0.00 remains unpaid, and

24

It is certified that there is no outstanding execution with the Sheriff or Marshal within the State of New York, and

WHEREAS the undersigned is the holder of said judgment and said judgment has not been assigned,

THEREFORE, full satisfaction of the judgment is hereby acknowledged and said Clerk is hereby authorized and directed to make an entry of said satisfaction on the docket of said judgment.

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal the day and year first above written.

On behalf of
SELECTIVE ADVISORS GROUP, LLC:

Dated: 9/3/15

Sean    Neil    Meehan ; manager

ACKNOWLEGEMENT

COUNTY OF Oneida

On the 3rd day of September the year 2015 before me, Sean Neil Meehan, the undersigned, personally appeared personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities and that by his/her/their signature(s) on the instrument, the

individual(s), or the person upon behalf of which the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

_____
Sean Neil Meehan

## CERTIFICATE OF CONFORMITY

I, _DIANE BIBEAU_, a duly licenced notary public in the province of _QUEBEC_ Canada, affirm under penalty of perjury and certify that I witnessed the signature of Sean Neil Meehan as applied to the document annexed to this certificate, which was signed and dated on September 5, 2015. The matter in which acknowledged, in accordance with, and conforms to, the laws for taking oaths at acknowledgements, in the province of Quebec, Canada.

Dated: September 5th 2015

_____
NOTARY PUBLIC
NAME:

26

## AFFIRMATION OF SERVICE

STATE OF NEW YORK     )

                               )    SS.:

COUNTY OF NEW YORK   )

I, James Vlahadamis, being sworn, say, I an attorney duly admitted to practice law in the State of New York. On September 3, 2015, I served the within Notice of Filing of Judgment Satisfaction and Satisfaction of Judgment by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to the following person at the last known address set forth after the name:

TO:     THE LAW OFFICES OF ARI MOR, ESQ
         347 E 65th Street, Suite 2RW
         New York, New York 2RW
         (347) 850-0578
         ari.mor.esq@gmail.com

         ATTORNEY FOR DEFENDANT
         NLG, LLC, a Delaware Limited Company

         JONATHAN M. BORG BEDELL & FORMAN LLP
         44 Wall Street, 10th Floor
         (646) 219-7551
         jborg@bedell-forman.com

         ATTTORNEY FOR ADR MIAMI LLC ("ADRM")

Vlahadamis & Hillen, LLP

                               By:     /s/ James F. Vlahadamis
                                       James F. Vlahadamis, Esq.
                                       148 E. Montauk Highway
                                       Suite 3
                                       Hampton Bays, New York 11946

# EXHIBIT 3
The Lorret Judgment

SUPREME COURT STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------x
EUGENIA LORRET and NINA GOGITIDZE,

Index No. 103896/04

Plaintiffs,

-against-

CHRIS KOSACHUK & NLG, LLC

Defendants.
-----------------------------------------------------------x

### JUDGMENT

The issues in the above entitled action having duly come on to be heard before Justice Walter B. Tolub, without a jury, at an IAS Part 15, of this Court on the 12th, 13th and 14th days of September, 2006, and the issues having been duly tried on those days and the plaintiff, EUGENIA LORRET, having duly appeared by Burstein & Blum, LLP by Mark M. Blum, Esq., her attorney, and the defendant, CHRIS KOSACHUK, having duly appeared pro se, and the proofs of both parties having been adduced and the plaintiff's counsel and the defendant having been duly heard, and the Court, after due deliberation, on the 6th day of November, 2006, having made and filed Findings of Fact and Conclusions of Law in writing in favor of the plaintiff EUGENIA LORRET and against the defendant CHRIS KOSACHUK and directing the entry of judgment in the sum of $108,293.54 plus interest from November 25 2002, and the costs and disbursements of the plaintiff having been duly taxed in the sum of $1,050.00.

NOW, on motion of BURSTEIN & BLUM LLP, attorneys for the plaintiff, it is

**ORDERED, ADJUDGED AND DECREED** that the plaintiff, EUGENIA LORRET, residing at , recover of the defendant, CHRIS KOSACHUK, residing at , the sum of ONE HUNDRED EIGHT THOUSAND TWO HUNDRED NINETY THREE DOLLARS AND

FIFTY FOUR CENTS ($108,293.54) Dollars, with interest from the 25th day of November, 2002

in the amount of _____ 44,338. 91 _____ ($_____ )

as of _2/21/07___, together with ONE THOUSAND FIFTY DOLLARS

($1,050.00) costs and disbursements as taxed, making in all the sum of

X _____ $ 150,732. 45 _____ ($_____ ),

and that the plaintiff EUGENIA LORRET have execution therefor.

    DECEMBER
Judgment signed this **20**th day of ~~November~~, 2006.

_____
                                    Norman Goodman
                                    Clerk

FILED

FEB 22 2007

COUNTY CLERKS OFFICE
NEW YORK

STATE OF NEW YORK, COUNTY OF NEW YORK,
SS: I, NORMAN GOODMAN, COUNTY CLERK AND
CLERK OF THE SUPREME COURT, NEW YORK
COUNTY, DO HEREBY CERTIFY ON

2011 DEC -8 P 12: 20          4 3 6 3 1 8

THAT I HAVE COMPARED THIS COPY
WITH THE ORIGINAL FILED IN MY OFFICE ON

2/22/07
AND THAT THE SAME IS A CORRECT

TRANSCRIPT THEREFROM AND OF THE
WHOLE OF SUCH ORIGINAL, IN WITNESS
WHEREOF, I HAVE HEREUNTO SET MY
HAND AND AFFIXED MY OFFICIAL SEAL.

COUNTY CLERK AND CLERK OF THE
SUPREME COURT, NEW YORK COUNTY
FACSIMILE SIGNATURE USED PURSUANT
TO SEC. C32, C.P.L.R. (NO FEE PAID)

30

# EXHIBIT 4

Houle Affidavit

$35.80

IN THE COURT OF THE COMMON PLEAS OF CHESTER COUNTY, PENNSYLVANIA
CIVIL DIVISION

EVGUENIA LORRET and NINA
GOGITIDZE,

                                    Plaintiff,              No. 12  00057

                                                            AFFIDAVIT OF
                                                            RAYMOND HOULE

CHRISTOPHER KOSACHUK and NLG LLC,
                                    Defendants.

STATE OF QUEBEC        )
                       ) SS:
CITY OF MONTREAL       )

Raymond Houle, being duly sworn according to law, deposes and says that:

1.    I am an officer of 9197 – 5904, Quebec, Inc., with offices located at: 1255 Rue

University, Ste 1810, Montreal, Quebec H3B 3W3, Assignee of the Plaintiff Evguenia Lorret

and Nina Gogitidze;

2.    I am authorized to make this affidavit on behalf of 9197 – 5904, Quebec, Inc.;

3.    This affidavit is submitted to the Chester County Prothonotary for filing together with an

authenticated copy of the judgment entered against the defendants on February 22, 2007 by the

Supreme Court of the State of New York (hereinafter the "Judgment", respectively) in favor of

Evguenia Lorret and Nina Gogitidze;

Deft. Notified

32

4.      The Judgment is valid, enforceable and unsatisfied; true and correct copy of the Judgment is attached to this Affidavit as "Exhibit A";

5.      Thereafter on May 12, 2008 the Judgment was reduced by Court Order (hereinafter the "Court Order"); true and correct copy of the Court Order is attached as "Exhibit B"

6.      The Judgment has been assigned by plaintiffs Evguenia Lorret and Nina Gogitidze to 9197-5904 Quebec, Inc. on December 15th, 2009; true and correct copy of the Assignment is attached as "Exhibit C";

7.      No part of the judgment has been paid or satisfied, and there is now due and owing on the Judgment $105,375.78 plus costs of $1,050.00, together with interest from November 25, 2002.

8.      The name and last known post office addresses of the judgment debtors are:

a.      Christopher Kosachuk

        201 South Biscayne Blvd., 28th FL.

        Miami, FL 33131

9.      The name and post office address of the judgment creditor is:

        9197 – 5904, Quebec, Inc.

        c/o Darius A. Marzec, Esq.

        225 Broadway, Suite 3000

        New York, NY 10007

33

Raymond Houle

SWORN to and subscribed
before me this _16_ day of December, 2011.

Notary Public



```
CCCAMINI                SUPREME COURT - STATE OF NEW YORK      DATE: 01/03/2012
INDEX NO: 103896 2004           NEW YORK COUNTY CLERK          TIME: 14:23:50
PURCHASE: 03122004         CIVIL INDEX MINUTE BOOK INQUIRY

PLAINTIFF NAME: LORRET EUGUENIA      DEFENDANT NAME: KOSACHUK CHRIS
     ATTORNEY: TOFEL TROUP & PARTN      ATTORNEY: UNKNOWN
               800 THIRD AVENUE -
               NEW YORK, NEW YORK
               1-212 752-0007
SEQ  DATE           MINUTES
0001 03122004       SUMMONS AND COMPLAINT


0001 04152004       AFFIDAVIT OF SERVICE


0001 07122004       AFFIDAVIT OF SERVICE


0001 07162004       ORDER IAS PART 30 SEQ 001 WITHDRAWN


0001 09292004       PROCEEDINGS


0001 11042004       PRELIMINARY CONFERENCE ORDER


0001 11052004       AFFIDAVIT OF SERVICE


0001 12022004       VERIFIED REPLY


0001 04012005       ORDER IAS PART 30 SEQ 003 DECIDED AS PER
                    MEMO.DECISION OF 4/4/05,SEQ 004 GRANTED.

0001 04072005       COPY ORDER/NOTICE OF ENTRY


0001 04142005       NOTICE


0001 05162005       SHORT FORM ORDER IAS PART 30


0001 07252005       SO ORDERED STIPULATION


0001 08022005       ORDER IAS PART 30 SEQ 005 WITHDRAWN


0001 08172005       ORDER IAS PART 30 SEQ 02 IS WITHDRAWN


0001 08232005       FAX PAPERS


0001 09212005       PROCEEDINGS/FAX PAPERS



                         PAGE -   1
```

FILED

12 JAN -4 PM 1:27

OFFICE OF THE
PROTHONOTARY
CHESTER CO. PA.

438641

AS CLERKS MINUTES

```
         CCOAMINI              SUPREME COURT - STATE OF NEW YORK        DATE: 01/03/2012
    INDEX NO: 103896 2004           NEW YORK COUNTY CLERK              TIME: 14:23:50
    PURCHASE: 03122004          CIVIL INDEX MINUTE BOOK INQUIRY

  PLAINTIFF NAME: LORRET EUGUENIA       DEFENDANT NAME: KOSACHUK CHRIS
       ATTORNEY: TOFEL TROUP & PARTN       ATTORNEY: UNKNOWN
                 800 THIRD AVENUE -
                 NEW YORK, NEW YORK
                 1-212 752-0007
  SEQ  DATE                   MINUTES
  0001 12062005               ORDER IAS PART 30 SEQ 06 IS RESOLVED

  0001 12202005               LETTER

  0001 02072006               SHORT FORM ORDER IAS PART 30. SEE ORDER.

  0001 11082006               FINDINGS OF FACT AND CONCLUSION OF
                              LAW (3)

  0001 11212006               TRANSCRIPT'S
                              COURT EXHIBITS

  0001 11222006               NOTICE OF CHANGE OF ADDRESS

  0001 11302006               NOTICE OF APPEAL # 3634

  0001 12282006               APPELLATE DIVISION RECEIPT

  0001 02222007               JUDGMENT - SD 02/23/07
                              8/27/08 JDGMT MODIFIED PURSUANT TO
                              ORDER FILED 5/9/08. NG/JMC (SD 8/27/08)
  0001 03022007               NOTICE OF ENTRY

  0001 05072007               TRANSCRIPT'S (3)

  0001 09132007               PROCEEDINGS (3)

  0001 05092008               ORDER IAS PART 15 SEQ 007,008 MOTION ARE
                              CONSOLIDATED FOR DISPOSITION IN ACCORD.
                              WITH THE MEMORANDUM DECISION.
  0001 05122008               ORDER IAS PART 15 SEQ 007 MOTION IS
                              CONSOLIDATED WITH SEQ008 FOR DISPOSITION
                              IN ACCORD.WITH THE UNDERLYING
  0002 05122008               MEMORANDUM DECISION.

  0001 05152008               COPY ORDER/NOTICE OF ENTRY

  0001 09032008               NOTICE OF ENTRY
```

PAGE -  2

36

```
        CCOANINI                    SUPREME COURT - STATE OF NEW YORK        DATE: 01/03/2012
   INDEX NO: 103896 2004                  NEW YORK COUNTY CLERK             TIME: 14:23:50
   PURCHASE: 03122004              CIVIL INDEX MINUTE BOOK INQUIRY

   PLAINTIFF NAME: LORRET EUGUENIA       DEFENDANT NAME: KOSACHUK CHRIS
       ATTORNEY: TOFEL TROUP & PARTN          ATTORNEY: UNKNOWN
                 800 THIRD AVENUE -
                 NEW YORK, NEW YORK
                 1-212 752-0007
   SEQ  DATE                     MINUTES
   0001 12312008                 TRANSCRIPT


                              PAGE -    3
```

# EXHIBIT A

# The People of the State of New York

## BY THE GRACE OF GOD FREE AND INDEPENDENT

*To all to whom these presents shall come or may concern, GREETING:*

**Know Ye,** That we having examined the records and files in the office of the Clerk of the County of New York and Clerk of the Supreme Court of said State for said County, do find a certain JUDGMENT

there remaining in the words and figures following, to wit:

FILED
12 JAN -4 PM 1:28
OFFICE OF THE
PROTHONOTARY
CHESTER CO., PA.

OFFICE OF
PROTHONOTARY



SUPREME COURT STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------x      Index No. 103896/04

EUGENIA LORRET and NINA GOGITIDZE,

        Plaintiffs,

       -against-

CHRIS KOSACHUK & NLG, LLC

        Defendants.

-----------------------------------------------------------------x

## JUDGMENT

The issues in the above entitled action having duly come on to be heard before Justice Walter B. Tolub, without a jury, at an IAS Part 15, of this Court on the 12th, 13th and 14th days of September, 2006, and the issues having been duly tried on those days and the plaintiff, EUGENIA LORRET, having duly appeared by Burstein & Blum, LLP by Ray M. Blum, Esq., her attorney, and the defendant, CHRIS KOSACHUK, having duly appeared pro se, and the proofs of both parties having been adduced and the plaintiff's counsel and the defendant having been duly heard, and the Court, after due deliberation, on the 6th day of November, 2006, having made and filed Findings of Fact and Conclusions of Law in writing in favor of the plaintiff EUGENIA LORRET and against the defendant CHRIS KOSACHUK and directing the entry of judgment in the sum of $108,293.54 plus interest from November 25 2002, and the costs and disbursements of the plaintiff having been duly taxed in the sum of $1,050.00.

NOW, on motion of BURSTEIN & BLUM LLP, attorneys for the plaintiff, it is

**ORDERED, ADJUDGED AND DECREED** that the plaintiff, EUGENIA LORRET, residing at , recover of the defendant, CHRIS KOSACHUK, residing at , the sum of ONE HUNDRED EIGHT THOUSAND TWO HUNDRED NINETY THREE DOLLARS AND

FIFTY FOUR CENTS ($108,293.54) Dollars, with interest from the 25th day of November, 2002

in the amount of _____ 24,388. _____ ($_____)

as of ____2|21|07___, together with ONE THOUSAND FIFTY DOLLARS

($1,050.00) costs and disbursements as taxed, making in all the sum of

X _____$ 150,732.45_____ ($_____ ),

and that the plaintiff EUGENIA LORRET have execution therefor.

Judgment signed this **20** day of ~~November~~ DECEMBER, 2006.

_____
Clerk

FILED

FEB 22 2007

COUNTY CLERKS OFFICE
NEW YORK

STATE OF NEW YORK, COUNTY OF NEW YORK,
SS.: I, NORMAN GOODMAN, COUNTY CLERK AND
CLERK OF THE SUPREME COURT, NEW YORK
COUNTY, DO HEREBY CERTIFY ON

2011 DEC -8 P 12: 20

THAT I HAVE COMPARED THIS COPY
WITH THE ORIGINAL FILED IN MY OFFICE ON

2/22/07
AND THAT THE SAME IS A CORRECT

TRANSCRIPT THEREFROM AND OF THE
WHOLE OF SUCH ORIGINAL, IN WITNESS
WHEREOF, I HAVE HEREUNTO SET MY
HAND AND AFFIXED MY OFFICIAL SEAL.

436318

_____
COUNTY CLERK AND CLERK OF THE
SUPREME COURT, NEW YORK COUNTY
FACSIMILE SIGNATURE USED PURSUANT
TO SEC. C33, C.P.R. LAW, FEE PAID

41

BURSTEIN & BLUM LLP
Robert A. Burstein, Esq.
21 EAST 40TH STREET SUITE 1802
NEW YORK, NY 10016
(212) 947-9416
SUPREME COURT STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------x     Index No. 103896/04

EUGENIA LORRET and
NINA GOGITIDZE

                    Plaintiffs,


                    -against-


CHRIS KOSACHUK & NLG, LLC,

                    Defendants.
----------------------------------------------------------------x

## BILL OF COSTS AND DISBURSEMENTS

COSTS (CPLR 8201)
Before note of issue                                                        $200.00
After note of issue                                                          200.00
Trial, inquest or assessment of damages                                      300.00
                                       TOTAL                                 $700.00

DISBURSEMENTS
Fee for Index Number (CPLR § 8018(a))                                       $210.00
Request for Judicial Intervention                                             95.00
Note of Issue                                                                 30.00
Sheriff's fee on execution (CPLR 8301 [a][8])                                 15.00

                                       TOTAL:                                $350.00

                    * Costs and disbursements taxed
                      by court     NG/AH

STATE OF NEW YORK     )
                      ) SS.:
COUNTY OF NEW YORK    )

David M. Blum, after being duly sworn, deposes and says:

I am a member of the firm of Burstein & Blum LLP, attorneys for the Plaintiff in this case. The foregoing disbursements were or will be necessarily made and are reasonable in amount.

DAVID M. BLUM

Sworn to before me this
November 6, 2006

Notary Public

Robert A. Burstein
Notary Public, State of New York
No. 31-4728699
Qualified in New York County
Commission Expires July 91, 20__

FILE
FEB 22 2007
COUNTY CLERK'S OFF
NEW YORK

43

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK                    Index No.: 103896/04

EUGENIA LORRET and NINA GOGITIDZE,

                                    Plaintiffs,

          -against-

CHRIS KOSACHUCK and NLG, LLC,

                                    Defendants.

---

### NOTICE OF SETTLEMENT

### JUDGMENT & BILL OF COSTS AND DISBURSEMENTS

**BURSTEIN & BLUM LLP**
Attorney for Plaintiffs
Office and Post Office Address, Telephone
21 EAST 40TH STREET
SUITE 1802
NEW YORK, NEW YORK 10016
(212) 947-9416

TO: Chris Kosachuck

Defendant Pro Se

Service of a copy of the within                    is hereby admitted.

Dated,                    Attorney(s) for          . . . . . . . . . . . . . . . . .

DOCKETED BY

    **Sir: Please take notice**

[ ]NOTICE OF ENTRY
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the
within named court on
[ ]NOTICE OF SETTLEMENT
that an order                    which the within is a true copy will be
presented for
settlement to the HON.          one of the judges the within named Court, at
on the    day of    19    at          M.

Dated,

     Yours, etc.

                    FILED AND
To                  DOCKETED

Attorney(s) for         FEB 2 2 2007

          AT    3:24P    M
          N.Y. CO. CLK'S OFFICE

                    **BURSTEIN & BLUM LLP**
                    Attorney for Plaintiff
                    Office and Post Office Address
                    21 EAST 40TH STREET
                    SUITE 1802
                    NEW YORK, NEW YORK 10016
                    (212) 947-9416

44

All of which we have caused by these presents to be exemplified and the Seal of our said County and Supreme Court to be hereunto affixed.

Witness, BERNARD J. FRIED a Justice of the Supreme Court of the State of New York for the County of New York, the 8 day of December in the year of our Lord two thousand and Eleven , and of our independence the two hundred and thirty - fifth.

*Norman Goodman*

County Clerk and Clerk of the
Supreme Court, New York County

I, a Justice of the Supreme Court of the State of New York for the County of New York, the same being a Court of Record, do hereby certify that the foregoing attestation is in due form, proper form and by the proper officer.

Dated, New York, DEC 13 2011 20 11

Justice of the Supreme Court
of the State of New York.

State of New York, } ss.:
County of New York,

I, NORMAN GOODMAN, County Clerk and Clerk of the Supreme Court of the State of New York, County of New York, do hereby certify that BERNARD J. FRIED whose name is subscribed to the preceding certificate is a Justice of the Supreme Court of said State in and for the County of New York, duly elected and qualified, and that the signature of said Justice to said certificate is genuine.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the Seal of said County and Court this 13 day of December 20 11.

45

# EXHIBIT B

# The People of the State of New York
## BY THE GRACE OF GOD FREE AND INDEPENDENT

*To all to whom these presents shall come or may concern, GREETING:*

**Know Ye,** That we having examined the records and files in the office of the Clerk of the County of New York and Clerk of the Supreme Court of said State for said County, do find a certain ORDER

FILED
12 JAN - PM 1:29
OFFICE OF THE
PROTHONOTARY
CHESTER CO., PA.

there remaining, in the words and figures following, to wit:



47

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _____ *TOLUB* _____          PART *15*
                            *Justice*

*LORRAT, EUGENIA, ETAC.*                    INDEX NO. *103896/04*

                                            MOTION DATE _____

- v -                                       MOTION SEQ. NO. *08*

*CHRIS KOSACHUCK, ETAL*                     MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

|                                                          | PAPERS NUMBERED |
| --- | --- |
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | _____ |
| Answering Affidavits — Exhibits _____ | _____ |
| Replying Affidavits _____ | _____ |

**Cross-Motion:** ☐ Yes  ☐ No

Upon the foregoing papers, it is ordered that this motion *and motion seq. 007 are*

*Consolidated for disposition in accordance with the memorandum*

*decision.*

**FILED**

MAY 12 2008

COUNTY CLERK'S OFFICE
NEW YORK

*TOLUB*          J.S.C.

Dated: _____

Check one: ☐ FINAL DISPOSITION   ☐ NON-FINAL DISPOSITION

Check if appropriate: ☐ DO NOT POST   ☐ REFERENCE

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

48

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: IAS PART 15
------------------------------------------x
EUGENIA LORRET and NINA GOGITIDZE

          Plaintiffs,

     -against-

CHRIS KOSACHUK & NLG, LLC

         Defendants.
------------------------------------------x

Index No. 103896/04
Mtn Seq.007,008

**FILED**

MAY 12 2008
COUNTY CLERK'S OFFICE
NEW YORK

**WALTER B. TOLUB, J.:**

Motion sequence 007 and sequence 008 are consolidated for disposition in accordance with the underlying decision. Motion sequence 007 is a motion to modify the judgment entered in this matter on February 22, 2007 by $60,000 to correct a ministerial error. Motion sequence 008 is a motion to vacate an order entered against the Plaintiff on March 21, 2008 for failure to appear.

<div align="center">Facts</div>

Plaintiffs commenced this action against the Defendants claiming that the Defendants diverted funds from the Plaintiffs' account for his personal benefit. The action as to NLG was eventually dismissed.

In the Answer to the Complaint, and upon the three day trial of the action, the Defendant Chris Kosachuk admitted receiving two checks totaling $136,293.54 from the Plaintiff, and depositing said funds into his private account.

Upon the trial of the action it was proven that, inter alia, the Plaintiff, prior to the filing of the Complaint had demanded repayment from the Defendant of all sums which remained due and owing out of the $136,293.54 (See Findings of Fact and Conclusions of Law, Defendant's Ex. F).

At trial, Plaintiff further demanded repayment of $60,000.00 which the Defendant had surreptitiously wired out of Plaintiff's account. This court specifically and expressly stated that the claim for $60,000 would not be considered as part of this case. (Defendant's Ex. D and E, at 433-434). Although the $60,000 claim was rejected, this court inadvertently included the sum in its Findings of Fact and Conclusions of Law.

On March 7, 2008, Plaintiff was served with the instant order to show cause seeking a modification of the Judgment made and entered by the court. The matter was scheduled for a hearing on March 21, 2008. No one from Plaintiff's office appeared and Plaintiff now seeks to vacate the default and upon vacatur, opposes Defendant's motion for modification of the Judgment.

<u>Discussion</u>

<u>Motion Sequence 008 to Vacate the Default</u>

CPLR §5015(a) provides, inter alia, that the court which rendered the judgment or order may relieve a party from such order upon such terms as may be just upon the ground of excusable

2

default. Courts have routinely recognized that there is a strong preference for adjudicating matters on the merits rather than relying on procedural issues. (Campos v. New York City Health and Hospitals Corp., 307 AD2d 785 (1st Dept 2003)). Where the party's default resulted from a mistake and an inadvertent assumption, courts have grated motions to vacate. (Connolly v. Tuan, 12 Misc.3d 1172(A) (Sup. Ct. NY Co. June 23, 2006)). Here, although Defendant could have been more thorough and diligent in managing its affairs, this court is inclined to vacate the March 21, 2008 Default Judgment so that the matter may be decided on the merits.

Motion Sequence 007 Motion To Modify the Judgment Entered.

Defendant's motion for a modification of the Judgment entered on February 22, 2007 is also granted as this court made a ministerial error. As is clear from the trial transcript, this court had no intention of even considering Plaintiff's $60,000 claim. Plaintiff's claim was in fact expressly excluded from this matter. (Defendant's Ex. D and E, at 433-434).

Furthermore, the court may correct any mistake, defect or irregularity in the papers or proceedings not affecting a substantial right of a party. (CPLR §5019). Clerical mistakes may be corrected, not substantive ones. Here, there has been a clerical error and therefore the court is within its power to correct same.

3

51

Accordingly it is

ORDERED that Plaintiffs' motion to vacate the default judgment of march 21, 2008 is granted; and it is further

ORDERED that Defendant's motion is granted and that the Judgment entered in this case on February 22, 2007 be modified downward to exclude the sum of $60,000 and that Defendant is to pay all sums due and owing; and it is further

ORDERED that the Clerk of the court is directed to enter judgment accordingly.


This memorandum opinion constitutes the decision and order of the Court.

Dated:

HON. WALTER B. TOLUB, J.S.C.

**FILED**

MAY 12 2008

COUNTY CLERK'S OFFICE
NEW YORK

STATE OF NEW YORK, COUNTY OF NEW YORK,
SS: I, NORMAN GOODMAN, COUNTY CLERK AND
CLERK OF THE SUPREME COURT, NEW YORK
COUNTY, DO HEREBY CERTIFY ON

2011 DEC -8 P 12: 20

THAT I HAVE COMPARED THIS COPY
WITH THE ORIGINAL FILED IN MY OFFICE ON

5/12/08

AND THAT THE SAME IS A CORRECT

TRANSCRIPT THEREFROM AND OF THE
WHOLE OF SUCH ORIGINAL. IN WITNESS
WHEREOF, I HAVE HEREUNTO SET MY
HAND AND AFFIXED MY OFFICIAL SEAL.

436320

COUNTY CLERK AND CLERK OF THE
SUPREME COURT, NEW YORK COUNTY
FACSIMILE SIGNATURE USED PURSUANT
TO SEC. 301-A OF THE LAWS, FEE PAID

52

f which we have caused by these presents to be exemplified and the seal of our said County and Supreme Court to be hereunto affixed.

Witness, Hon. BERNARD J. FRIED a Justice of the Supreme Court of the State of New York for the County of New York, the 8 day of December in the year of our Lord two thousand and Eleven , and of our independence the two hundred and thirty-fifth.

*Norman Goodman*

County Clerk and Clerk of the
Supreme Court, New York County

a Justice of the Supreme Court of the State of New York for the County of New York, the said being a Court of Record, do hereby certify that the foregoing attestation is in due and proper form and by the proper officer.

d, New York, DEC 1 3 2011 2011 *Bernard Fried*

Justice of the Supreme Court
of the State of New York.

State of New York,
County of New York, } ss.:

I, NORMAN GOODMAN, County Clerk and Clerk of the Supreme Court of the State of New York, County of New York, do hereby certify that Hon. BERNARD J. FRIED whose name is subscribed to the preceding certificate is a Justice of the Supreme Court of said State in and for the County of New York, duly elected and qualified, and that the signature of said Justice to said certificate is genuine.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the Seal of said County and Court this 13 day of December 2011.

*Norman Goodman* 53



# EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK                                    Index No. 103896/2004

------------------------------------------------------------

EVGUENIA LORRET AND NINA GOGITIDZE

                                        Plaintiff,

        -against-

CHRISTOPHER KOSACHUCK and NLG LLC

                                        Defendant.

------------------------------------------------------------

## ASSIGNMENT OF JUDGMENT

This indenture made the 15th day of December 2009, between EVGUENIA LORRET and
NINA GOGITIDZE residing at 6254 97th Pl. # 10K Rego Park, State of New York, party of the
first part, and 9197-5904 Quebec, Inc with offices located at: 1255 Rue University Ste 1810
Montreal, Quebec H3B 3W3, the party of the second part.

    Whereas, on the 22nd day of February 2007 judgment was recovered in the Supreme
Court, County of NY in favor of EVGUENIA LORRET AND NINA GOGITIDZE
and against CHRISTOPHER KOSACHUCK and NLG LLC in the sum of $108,293.54 plus
costs of $1050.00 plus interest from November 25, 2002, and which Judgment was thereafter
modified and reduced on May 12, 2008 to the amount of $48,293.54 plus costs of $1050.00 plus
interest from November 25, 2002.

    Now This Indenture Witnesseth that the said party of the first part in consideration of
$10 and goods valued at nominal consideration to them duly paid has sold, and by these presents
does assign, transfer and set over, unto the said party of the second part 9197-5904 Quebec it's
executors, administrators, and assigns, the said judgment and all sum or sums of money that may
be had or obtained by means thereof, or on any proceedings to be had thereupon,
Also, the said party of the first part does hereby constitute and appoint the said party of the
second part, it's executors, administrators, and assigns, their true and lawful attorney irrevocable,
with power of substitution and revocation, for the use and at the proper costs and charges of the
said party of the second part, to ask, demand, and receive, and to obtain executions, and take all
lawful ways for the recovery of the money due or to become due on said judgment; and on
payment to acknowledge satisfaction, or to discharge the same; and attorneys one or more under
them for the purpose aforesaid, to make and substitute, and at pleasure to revoke; hereby
ratifying and confirming all that their said attorney or substitute shall lawfully do in the premises.
Also, the said party of the first part does covenant, that there is now due on the said judgment the
sum of $$48,293.54 and that they will not collect or receive the same or any part thereof, nor
release or discharge the said judgment, but will allow all lawful proceedings therein to be taken

by the said party of the second part, saving the said party of the first part harmless of and from any costs in the premises. This assignment is made without recourse to the party of the first part in any event whatsoever.

In Witness Whereof, the party of the first part has hereunto set [his/her] hand and seal the day and year first above written.

_E Lorret_

EVGUENIA LORRET

### ACKNOWLEGEMENT

.STATE OF NEW YORK

COUNTY OF NEW YORK

DAVID M. BLUM
NOTARY PUBLIC, State of New York
No. 02BL5029264
Qualified in New York County
Commission Expires June 13, 2010

On the 15th    day of  December before me personally appeared EVGUENIA LORRET
to be known and known by me to be the individual described in and who executed the foregoing
Assignment of Judgment, and who duly acknowledged to me that she executed the same.

_Notary Public_

Notary Public

_Nina Gogitidze_

NINA GOGITIDZE

### ACKNOWLEGEMENT

STATE OF NEW YORK.

COUNTY OF NEW YORK

DAVID M. BLUM
NOTARY PUBLIC, State of New York
No. 02BL5029264
Qualified in New York County
Commission Expires June 13, 2010

On the 15th    day of  December before me personally appeared NINA GOGITIDZE
to be known and known by me to be the individual described in and who executed the foregoing
Assignment of Judgment, and who duly acknowledged to me that she executed the same.

_Notary Public_

Notary Public

FILED
MAR 2 1 2011
NEW YORK
COUNTY CLERK'S OFFICE

56

Notary Public

*Ngogitidze*
NINA GOGITIDZE

## ACKNOWLEGEMENT

STATE OF NEW YORK

COUNTY OF NEW YORK

On the 15th day of December 2009 before me personally appeared NINA GOGITIDZE
to be known and known by me to be the individual described in and who executed the foregoing
Assignment of Judgment, and who duly acknowledged to me that she executed the same.

Notary Public

NOTARY PUBLIC, State of New York
No. 02BL5029264
Qualified in New York County
Commission Expires June 13,

FILED

MAR 21 2011

NEW YORK
COUNTY CLERK'S OFFICE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 103896/2004

------------------------------------------------------------------

EVGUENIA LORRET AND NINA GOGITIDZE

Plaintiffs,

-against-

CHRISTOPHER KOSACHUCK and NLG LLC

------------------------------------------------------------------

## NOTICE OF ASSIGNMENT OF JUDGMENT

Date: March 14, 2011

To: CHRISTOPHER KOSACHUCK and NLG LLC

Dear Judgment Debtors:

You are hereby notified that on December 15, 2009 we assigned and transferred to
9197 -5904 QUEBEC, INC the Judgment entered against you in the above captioned matter.

Please direct any further correspondence (or payments, if applicable) to them at the following
address:

David Blum, Esq.
286 Madison Avenue Suite 1802
New York, NY 10017

Please contact us should you have any questions, and we thank you for your cooperation.

yours, etc.

David M. Blum
Attorneys for :EVGUENIA LORRET and
NINA GOGITIDZE

FILED
MAR 21 2011
NEW YORK
COUNTY CLERKS OFFICE

BERNARD J. FRIED

a J[...] of the Supreme Court of the State of New York for the County of New York, the [...] being a Court of Record, do hereby certify that the foregoing attestation is in [...] and proper form and by the proper officer.

York,                DEC 13 2011            19

Justice of the Supreme Court
of the State of New York.

ork,    } ss.:
ork,    }

I, Norman Goodman County Clerk and Clerk of the Supreme Court of the State of New York, County of New York, do hereby certify that Hon. BERNARD J. FRIED whose name is subscribed to the preceding certificate is a Justice of the Supreme Court of said State in and for the County of New York, duly elected and qualified, and that the signature of said Justice to said certificate is genuine.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the Seal of said County and Court this 8 day of December, 2011 19 .

Norman Goodman
County Clerk and Clerk of the
Supreme Court, New York County.

6235

No[...]

59

IN THE COURT OF THE COMMON PLEAS OF CHESTER COUNTY, PENNSYLVANIA
CIVIL DIVISION

EVGUENIA LORRET and NINA
GOGITIDZE,

Plaintiff,

No. 12-00057

CHRISTOPHER KOSACHUK and NLG, LLC,
Defendants.

To:    Christopher Kosachuk
       201 South Biscayne Blvd.
       28th FL.
       Miami, FL 33131

## NOTICE

NOTICE IS GIVEN THAT A JUDGMENT IN THE ABOVE-CAPTIONED MATTER HAS
BEEN ENTERED AGAINST YOU.

*Damarus A. Osborn, Deputy*
PROTHONOTARY    1/4/12

If you have any questions concerning the above, please contact:

Darius A. Marzec
Marzec Law Firm, PC
Attorney for Plaintiff
225 Broadway, Suite 3000
New York, NY 10007
(212) 267-0200

FILED
12 JAN -4 PM 1:29
OFFICE OF THE
PROTHONOTARY
CHESTER CO. PA.

# EXHIBIT 5

The Vacatur Order

9197-5904 QUEBEC, INC.                : IN THE COURT OF COMMON PLEAS
                    Plaintiff
                                      : CHESTER COUNTY, PENNSYLVANIA
            v.
                                      : CIVIL ACTION
CHRIS KOSACHUK and NLG, LLC
                    Defendant         : NO. 2012-00057

*Attorneys for Plaintiff: Darius A. Marzec, Esq. and Guy A. Donatelli, Esq.*
*Attorney for Defendants: Randall C. Schauer, Esq.*

## ORDER

AND NOW, this __/__ day of May, 2012, upon consideration of the Motion of Defendants Chris Kosachuk and NLG, LLC to Vacate Foreign Judgment and Vacate Charging Order, Plaintiff's answer thereto and the parties' Memoranda, and following a hearing, it is hereby ORDERED that:

1.    The Judgment entered against NLG, LLC is vacated.

2.    The Charging Order entered February 15, 2012 is vacated. Defendants shall have 20 days to answer Plaintiff's Motion for Charging Order and For Relief under Rule 3118.[1]

BY THE COURT:

Edward Griffith, J.

---

[1] The only matter before the court is the motion of Defendants Christopher Kosachuk and NLG, LLC to vacate a foreign judgment and charging order. This discussion is confined to the facts and law relevant to that motion.

On February 22, 2007 judgment was entered in the Supreme Court of New York, New York County in favor of Eugenia Lorret and against Chris Kosachuk in the amount of

$108,293.54, plus interest of $41,388.91 from November 25, 2002 and costs of $1,050 ("the Judgment"). (Affidavit filed 1/4/12, Exh. A).

On May 12, 2008 Judge Tolub, Supreme Court of New York, New York County, entered an Order correcting and reducing the Judgment to $48,293.54, plus interest and costs. (Affidavit 1/4/12, Exh. B)

In the New York action, captioned "Eugenia Lorret and Nina Gogitidze v. Chris Kosachuk & NLG, LLC", Plaintiffs accused Defendants of diverting funds from Plaintiffs' account for Kosachuk's personal benefit. Judge Tolub's May 12, 2008 Order recites that NLG, LLC was dismissed from the action prior to judgment being entered. Without explanation, the judgment was entered in favor of Lorret and not Gogitidze.

On December 15, 2009 Lorret and Gogitidze assigned the Judgment to 9197-5904 Quebec, Inc. ("Quebec"). (Affidavit, Exh. C filed 1/4/12)  Quebec exists for the sole purpose of holding and collecting the Judgment.

On January 4, 2012 Quebec commenced these proceedings, captioned as "Eugenia Lorret and Nina Gogitidze v. Chris Kosachuk & NLG, LLC", to domesticate the Judgment pursuant to the Uniform Enforcement of Foreign Judgments Act, 42 Pa.C.S.A. §4306 ("UEFJA"). As part of Quebec's initial filing, Raymond Houle, an officer of Quebec, provided an affidavit pursuant to 42 Pa.C.S.A. §4306(c) ("the Affidavit").

In the Affidavit Houle declares "now due and owing on the Judgment [is] "$105,375.78 plus costs of $1,050, together with interest from November 25, 2002." (Affidavit, ¶7) (It should be noted that the figure $105,375.78 appears to represent the sum of the judgment, $48,293.54, plus approximately ten years of interest, 9% pursuant to McKinney's CPLR 5004, plus the costs.)

Houle also states in the Affidavit that it "is submitted to the Chester County Prothonotary for filing together with an authenticated copy of the judgment entered against the defendants on February 22, 2007...". (Affidavit, ¶3) (emphasis added)

Houle knew or should have known that the Judgment had been entered in New York against Kosachuk only.

The UEFJA requires that a judgment creditor provide the last known post office address of a judgment debtor in the affidavit; the prothonotary will send notice of the registration to this address. 42 Pa.C.S.A. § 4306(c).

Houle set forth in the Affidavit the last known post office address of Kosachuk as 201 South Biscayne Blvd, 28th FL., Miami, FL 33131 ("the Miami Address"). (Affidavit, ¶8)

Despite having included NLG in the caption as a defendant, referencing plural "defendants" and "judgment debtors" in the Affidavit, and having the Judgment entered against NLG, Houle failed to provide a last known post office address for NLG. Counsel for Quebec admitted that the post office address for NLG is 854 Pheasant Run Road, West Chester, Pennsylvania 19382 ("the West Chester Address"). (Marzec Dep., p. 19)

The prothonotary, upon receiving documents that facially complied with the requirements of the UEFJA and that sought entry of a judgment against both Kosachuk and NLG, recorded the Judgment against both Kosachuk and NLG.

On February 15, 2012 an order was entered on Quebec's motion amending the caption of this action so that "9197-5904 Quebec, Inc." is now identified as Plaintiff and Lorret and Gogitidze were removed.

On February 15, 2012 an order was entered granting Quebec's motion for a charging order against NLG. The Charging Order gave all economic and management rights in NLG to Quebec pursuant to 15 Pa.C.S.A. §8563.

Kosachuk first learned of the existence of the Pennsylvania proceedings when the Charging Order was used by Quebec in proceedings in Florida.

With reference to NLG, there was no judgment from New York to domesticate. The Affidavit, signed by Houle and prepared by his counsel Darius Marzec, misled this court about the nature of the Judgment. Notably, Quebec acted to correct the case caption, but took no action to correct the judgment against NLG.

With reference to Kosachuk, personal service was not necessary to register the Judgment. Since this action involves post-judgment procedure, Kosachuk's interest had already been protected by prior notice and hearing in New York. "Pennsylvania courts have automatic *in rem* jurisdiction over all property located in the Commonwealth." Andrews v. Wallace, 441 Pa.Super. 208, 657 A.2d 24, 26 (1995). Due process requires "that Commonwealth authorities provide some notice before seizing a person's property to satisfy a judgment. This notice requirement is less stringent than personal service, because the Commonwealth is only going after property to satisfy a judgment which has been obtained with the fullest due process protections." Id.

With reference to the entry of the Charging Order, which operated as the seizure of the NLG, notice to Kosachuk was insufficient. Kosachuk had two last post office addresses, the Miami Address and the West Chester Address. Kosachuk had used both addresses for personal, business and legal matters. Quebec, through Houle and Marzec, was aware that Kosachuk used both addresses. Unlike the Andrews v. Wallace case, where the judgment debtor was avoiding service, in this case the judgment creditor was avoiding giving actual notice. Quebec chose to give notice to Kosachuk at one address, the one calculated to be the least likely to provide actual notice. Quebec chose not to give notice to NLG despite having had a judgment entered against NLG. Marzec knew that Kozachuk accepted mail for NLG at the West Chester Address. (Marzec Dep., p. 19)

The charging order permits creditors to collect on a limited liability company member's unpaid personal debts through the member's interest in the limited liability company. Zokaites v. Pittsburgh Irish Pubs, LLC, 962 A.2d 1220, 1225 (Pa.Super.2008). When the limited liability company has members other than the judgment debtor, the judgment

3

creditor can seize only the member's economic benefits. Id. In this instance, Quebec alleged that Kosachuk was the sole member of NLG and seized the entire LLC. Notice of registration of a foreign debt by mail, rather than personal service, is adequate because the judgment debtor can raise defenses prior to execution. Shine, Julianelle, Karp, Bozelil & Karazin, P.C. v. Rubens, 192 A.D. 2d 345, 596 N.Y.S. 2d 20 (1993); Gedeon v. Gedeon, 630 P.2d 579 (Colo.,1981). Given the failure of notice, Kosachuk was denied an opportunity to raise any defense to the seizure. The Charging Order, entered on February 15, 2012 will be vacated so that Kosachuk can answer the Quebec's motion and any defenses can be duly considered.

4

# EXHIBIT 6
V.R. Auto Complaint

SCANNED ON 3/23/2012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
========================================X

V.R. AUTO LOCATION INC. D/B/A NLG
AND NLG, LLC.,

                       Plaintiff,

       -against-

CHRISTOPHER KOSACHUK,

                 Defendant.

========================================X

Index No.:
Date of Purchase:

**SUMMONS**

Plaintiff designates
NEW YORK
County as place of trial

The basis of venue is:
Plaintiff's Place Of
Doing Business

12102260

To the above named defendant:

    **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the Plaintiff's Attorneys within 20 days after the service of this summons exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

Dated: New York, New York
      March 22, 2012

                            **MARZEC LAW FIRM, P.C.**

                BY:

                            MICHAEL MA, ESQUIRE.
                            Marzec Law Firm, P.C.
                            Attorneys for Plaintiff
                            225 Broadway, Ste. 3000
                            New York, New York 10007
                            (212) 267-0200
                            dmarzec@MarzecLaw.com

Defendant's Address:

Christopher Kosachuk
201 South Biscayne Blvd.
28th Floor
Miami, FL 33131

FILED
MAR 23 2012
NEW YORK
COUNTY CLERK'S OFFICE

67

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------X
V.R. AUTO LOCATION INC. D/B/A NLG
AND NLG, LLC,

                            Plaintiff,                  Index No.:

      - against –

CHRISTOPHER KOSACHUK,            **COMPLAINT**

                       Defendant.

----------------------------------------------------------------X

      Plaintiff, V.R. AUTO CONNECTION INC D/B/A NLG AND NLG, LLC, by and through its attorneys MARZEC LAW FIRM, P.C., complains of the Defendant as follows:

      1.     At all times hereinafter mentioned, Plaintiff V.R. AUTO CONNECTION INC. D/B/A "NLG" AND "NLG, LLC" ("V.R.") was and is a Canadian corporation doing business in the City of New York, New York with the principal business address of 3756 Saint- Kevin, Ste 9, Montreal, Quebec, H3T 1H8, Canada.

      2.     At all times hereinafter mentioned, Defendant Christopher Kosachuk ("Kosachuk") is an individual with an address of 201 S. Biscayne Blvd., 28th Floor, Miami, FL 33131.

      3.     Jurisdiction is proper in New York as both Plaintiff and Defendant do business in New York and all pertinent events took place in New York State and New York County, to wit: execution of documents, agreements, corporate documents, exchange of consideration, and the acts complained of occurred herein.

      4.     This is a declaratory judgment action.

<div align="center">1</div>

<div align="right">68</div>

## FACTS

5.      All interest in NLG/NLG, LLC ("NLG") was transferred from 9197-5904 Quebec, Inc. to VR, on or about March 1, 2012.

6.      9197-5904 Quebec, Inc. received complete authority over NLG pursuant to a court order after extensive execution proceedings against Defendant Kosachuk.

7.      9197-5904 Quebec, Inc. holds a valid New York Judgment against Christopher Kosachuk in the sum exceeding $105,000.00 including interest.

8.      Per execution proceedings, Christopher Kosachuk has lost its right, title and interest in NLG.

9.      V.R. currently holds any and all interest in NLG, and is doing business as such.

10.     V.R. has learned that Defendant Kosachuk continues to hold himself out as Manager/Member of NLG in violation of property and corporate rights of Plaintiff.

11.     Plaintiff is in the business of consulting.

## CAUSE OF ACTION

12.     Plaintiff repeats and realleges all foregoing allegations.

13.     Plaintiff demands a declaratory judgment in its favor and against Defendant, declaring that is the rightful owner of, and solely charged with control of the NLG.

14.     Plaintiff a declaratory judgment indicating that Defendant has no right, title or interest in NLG.

15.     Moreover, Defendant Kosachuk's misrepresentation has imbued irreparable harm and damages upon V.R., and will continue to imbue such irreparable harm and damages absent preliminary and permanent relief by this Court.

2

69

Supreme Court Records OnLine Library - page 3 of 5

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered against the Defendant as follows: That the Court issue a judgment declaring:

    (i)      V.R. as sole shareholder/owner/beneficiary of NLG; and

    (ii)     Christopher Kosachuk an individual with no interest, shares, rights, or position whatsoever in NLG; and

    (iii)    Christopher Kosachuk an individual with no right to bind NLG; and

    (iv)    Costs and expenses, including attorneys' fees and disbursements, as permitted by law, and such other and further relief as the Court may deem just, proper and equitable.

Dated: New York, New York  
       March 22, 2012

                                      **MARZEC LAW FIRM, PC**

                             By:     MICHAEL MA, ESQUIRE.  
                                     Marzec Law Firm, P.C.  
                                     Attorneys for Plaintiff  
                                     225 Broadway, Suite 3000  
                                     New York, New York 10007  
                                     (212) 267-0200  
                                     dmarzec@MarzecLaw.com

3

70

Supreme Court Records OnLine Library - page 4 of 5

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**                                    Index No.

V.R. AUTO LOCATION, INC. D/B/A NLG
AND NLG, LLC.

                          Plaintiff,

- against -
                                                            12.02260

CHRISTOPHER KOSACHUK,

                          Defendant.

---

## SUMMONS AND COMPLAINT

---

### ATTORNEYS FOR PLAINTIFF
**Marzec Law Firm, P.C.**
**Darius A. Marzec, Esq.**
**225 Broadway, Suite 3000**
**New York, NY 10007**
**212-267-0200**

---

### CERTIFICATION

Pursuant to Section 130-1.1, the following documents are hereby certified:

By: Michael Ma, Esq.
MARZEC LAW FIRM PC
Attorneys for Plaintiff
225 Broadway, Ste. 3000
New York, NY 10007
(212) 267-0200

# EXHIBIT 7

New York Court's Order recognizing the withdrawal of the V.R.
Auto Complaint

## SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _SINGH_ _____    PART _61_

_Justice_

_____

V. R. AND LOCATION INC

- v -

CHRISTOPAR ROSACHUK

INDEX NO. _102260/12_

MOTION DATE _____

MOTION SEQ. NO. _001_

MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | _____ |
| Answering Affidavits — Exhibits _____ | _____ |
| Replying Affidavits _____ | _____ |

**Cross-Motion:** ☐ **Yes**   ☐ **No**

Upon the foregoing papers, it is ordered that this motion IS WITHDRAWN

AND ACTION IS DISCONTINUED AS

PER ATTACHED STIPULATIONS.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: _6/27/2012_

HON. ANIL C. SINGH
SUPREME COURT JUSTICE          J.S.C.

Check one: ☑ **FINAL DISPOSITION**   ☐ **NON-FINAL DISPOSITION**

Check if appropriate:  ☐ **DO NOT POST**   ☐ **REFERENCE**

☐ **SUBMIT ORDER/ JUDG.**   ☐ **SETTLE ORDER/ JUDG.**

73

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

V.R. AUTO LOCATION INC. D/B/A NLG
AND NLG, LLC,

                                                Index No.: 102260/2012

                        Plaintiff,             NOTICE OF WITHDRAWAL
                                               OF THE SUMMONS AND
        - against –                            COMPLAINT

CHRISTOPHER KOSACHUK,

                        Defendant.

-------------------------------------------------------------------X

To the Clerk of the Court:

Plaintiffs hereby withdraw, without prejudice, their Summons and Complaint filed on March 23,
2012, as the Summons and Complaint has never been served.

Dated: June 20, 2012                    Respectfully Submitted,
       New York, NY

                                        Darius A. Marzec, Esq.
                                        Marzec Law Firm, P.C.
                                        Attorney for Plaintiffs
                                        225 Broadway, Suite 3000
                                        New York, NY 10007
                                        (212) 267-0200
                                        dmarzec@marzeclaw.com

74

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------X

V.R. AUTO LOCATION INC. D/B/A NLG
AND NLG, LLC,

                                         Index No.: 102260/2012

                  Plaintiff,               NOTICE OF WITHDRAWAL
                                          OF MOTION

    - against –


CHRISTOPHER KOSACHUK,


                  Defendant.

----------------------------------------------------------------X


TO:    James R. Costo
        275 7th Avenue, Ste. 1505
        New York, New York 10011


**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant, by her attorneys, Marzec Law Firm, PC, hereby

withdraws, without prejudice, the Motion by Order to Show Cause for Preliminary Injunction

filed on March 23, 2012.

Dated: June 20, 2012
      New York, New York

                              **MARZEC LAW FIRM, PC**


                        By:
                                Darius A. Marzec
                                Attorneys for Plaintiffs
                                225 Broadway, Suite 3000
                                New York, NY 10007
                                (212) 267-0200

# EXHIBIT 8
Houle Deposition Transcript

Page 1

COURT OF COMMON PLEAS

PHILADELPHIA COUNTY, PENNSYLVANIA


NLG, LLC,                          )
                                   )
                Plaintiff,         )
                                   )
                                   )  AUGUST TERM, 2012
VS.                                )  NO. 02514
                                   )
DARIUS A. MARZEC, MARZEC LAW       )
FIRM, P.C., GUY A. DONATELLI,      )
LAMB McERLANE, P.C., and           )
9197-5904 Quebec, Inc.,            )
                                   )
                Defendants.        )
_____   )



- - -

FRIDAY, APRIL 4, 2014

- - -


        Telephonic deposition of RAYMOND HOULE, taken

at the LAW OFFICES OF EDWIN P. SMITH, 1528 Walnut Street,

Suite 702, Philadelphia, Pennsylvania, beginning at

approximately 11:15 a.m., on the above date, before Carol L.

Shearer, Registered Professional Reporter and Notary Public.

                CENTER CITY REPORTING, INC.
                1315 Walnut Street - Suite 601
                Philadelphia, Pennsylvania  19107
                     215-732-4882

Page 2

```
1    A P P E A R A N C E S:

2

3        EDWIN P. SMITH & ASSOCIATES, P.C.
         BY:  EDWIN P. SMITH, ESQUIRE
4             1528 Walnut Street
              Suite 702
5             Philadelphia, Pennsylvania  19102
              (215) 864-7300
6             edwinsmith.attorney@yahoo.com

7
              --  Representing the Plaintiff
8

9
         KANE, PUGH, KNOELL, TROY & KRAMER, LLP
10       BY:  PETER ROGERS, ESQUIRE
              (Appearing Via Telephone)
11            510 Swede Street
              Norristown, Pennsylvania  19401
12            (610) 275-2000
              progers@kanepugh.com
13

14            --  Representing the Defendants
                  Darius A. Marzec and Marzec Law Firm, P.C.
15

16
         LAMB McERLANE, P.C.
17       BY:  GUY A. DONATELLI, ESQUIRE
              (Appearing Via Telephone)
18            24 East Market Street
              West Chester, Pennsylvania  19382
19            (610) 430-8000
              gdonatelli@lambmcerlane.com
20
              --  Representing the Defendants
21                Guy A. Donatelli and Lamb McErlane, P.C.

22

23

24
```

```
 1   A P P E A R A N C E S (cont'd.):

 2

 3        MARZEC LAW FIRM
          BY:  DARIUS A. MARZEC, ESQUIRE
 4             (Appearing Via Telephone)
               225 Broadway
 5             Suite 3000
               New York, New York  10007
 6             (212) 267-0200
               dmarzec@marzeclaw.com
 7

 8             --  Representing the Defendant 9197-5904 Quebec,
                   Inc.
 9

10

11

12   ALSO PRESENT:  JUDITH P. MEYER, DISCOVERY MASTER

13

14

15

16

17

18

19

20

21

22

23

24
```

Page 4

1                    I N D E X

2

3                                              Page

4

5   Examination by Mr. Smith                  5, 66

6   Examination by Mr. Marzec                    61

7   Examination by Mr. Rogers                    74

8   Court Reporter's Certificate                 76

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
 1              (It is hereby stipulated, by and among counsel

 2        for the respective parties, that signing, sealing,

 3        certification and filing are waived; and that all

 4        objections, except as to form of the question, are

 5        waived until the time of trial.)

 6                        RAYMOND HOULE,

 7         the Witness herein, having been first duly sworn,

 8         was examined and testified as follows:

 9                        EXAMINATION

10   BY MR. SMITH:

11        Q.    State your name.

12        A.    Raymond Houle.

13        Q.    And what is your home address, Mr. Houle?

14        A.    What is what?

15        Q.    What is your home address?  Where do you live?

16        A.    Where I am?  In Montreal.

17        Q.    Give me your address, please, you street number and

18   the street name.

19        A.    My home is 552 -- 5552 Queen Mary Road -- Avenue --

20   Road -- Queen Mary Road, Apartment 4, in Hampstead.

21        Q.    She cannot hear you.  You have to turn the

22   microphone off on the computer because there's feedback.

23        A.    One moment.  Yes.

24        Q.    That's better.  Okay.  Give the rest of your address
```

Page 6

1    after Quebec.

2        A.   I didn't hear.  Sorry.

3        Q.   You have to turn the microphone off on your computer

4    and hold the phone up closer to your mouth, please.

5        A.   (Inaudible.)

6        Q.   Hold the phone closer to your mouth.

7        A.   Okay.

8        Q.   Pick up the phone and hold it near your mouth.

9        A.   Okay.

10       Q.   Now, what was your address after Montreal?

11       A.   552 Road -- Queen Mary, Apartment 4, Hampstead,

12   Quebec H3X 1G9.

13       Q.   Where's all the laughing coming from?  Mr. Houle,

14   hold the phone up to your mouth, please.

15       A.   Okay.

16       Q.   That's better.  That's better.

17            MR. SMITH:  Yes, Guy?

18            MR. DONATELLI:  My screen shows that Peter

19       Rogers is no longer on the phone.

20            (Whereupon, a discussion was held off the

21       Record.)

22   BY MR. SMITH:

23       Q.   Mr. Houle, are you employed?

24       A.   Are you what?

1      Q.    Employed.  Do you work?

2      A.    I'm working for myself.

3      Q.    What is your business?

4      A.    My what?

5      Q.    What is your business?

6      A.    I'm a businessman.

7      Q.    Say again.  What business are you in?

8      A.    Business.

9      Q.    What kind of work do you do?

10     A.    Accounting.

11     Q.    How long have you been involved in accounting?

12     A.    35 years.

13     Q.    35 years.

14     A.    I am a CPA.

15     Q.    And where did you obtain your license or

16  certification?

17     A.    CPA is here in Quebec, the new form of CPA

18  (inaudible).

19           COURT REPORTER:  I'm sorry.  I didn't get that.

20  BY MR. SMITH:

21     Q.    You have to hold the phone closer to your mouth, Mr.

22  Houle.

23           COURT REPORTER:  Say it again, please.  "Where

24     did you obtain your license or certification?"

Page 8

1          THE WITNESS:  Pardon?

2     BY MR. SMITH:

3          Q.    Where did you obtain your certification?  Where did

4     you get your CPA?

5          **A.    Montreal.**

6          Q.    What is your physical problem that prevents you from

7     coming to Philadelphia?

8          **A.    I am on medication.**

9          Q.    And why can you not travel?

10         **A.    (Inaudible.)**

11         Q.    Why can you not travel to Philadelphia?

12              MR. MARZEC:  I'm sorry.  This is Darius Marzec.

13         I just have to lodge an objection only to the extent

14         that we do not want Mr. Houle to discuss his

15         confidential health information.  And I'm not sure if

16         it's going that way, but as a precaution, I would

17         like to object to that line of questioning.  We are

18         on Skype at this time.  Mr. Houle is here.  I would

19         prefer to get to the merits.

20              MR. SMITH:  I would like to ask the questions --

21              MS. MEYER:  Mr. Marzec, the Discovery Master,

22         Judith Meyer.  The objection is premature.

23         Additionally, the Skype connection is very tortured,

24         and if Mr. Houle could possibly come to Philadelphia,

Page 9

1    that is a proper question that may be asked by

2    counsel.

3  BY MR. SMITH:

4    Q.   Mr. Houle, what is your medical problem that

5  prevents you from traveling to Philadelphia?

6    **A.   Severe, severe depression last year, and I'm still**

7  **on medication for that.**

8    Q.   You appeared in Philadelphia in December for

9  depositions; is that correct?

10    **A.   Well, yes, it was correct, but it was very difficult**

11  **for me to come back.**

12    Q.   What is the difficulty?

13    **A.   The difficulty because in my state -- my --**

14         COURT REPORTER:  I'm having trouble hearing you.

15  BY MR. SMITH:

16    Q.   Say that again, please.  And hold the phone close to

17  your mouth.

18    **A.   Okay.  I have (unintelligible) --**

19         COURT REPORTER:  "I have" what?

20         THE WITNESS:  I have (unintelligible)

21         COURT REPORTER:  I'm not --

22  BY MR. SMITH:

23    Q.   The court reporter cannot understand what you're

24  saying.  Please repeat it?

```
                                                      Page 10

 1            COURT REPORTER:  I'm not understanding most of

 2       the answers.  I'm starting to be very uncomfortable

 3       with this.

 4            MS. MEYER:  Counsel, Judith Meyer, discovery

 5       master.  It might be fruitful to ask Mr. Houle if he

 6       ever leaves his house and, if so, if he could go to a

 7       video conferencing center where we would not have to

 8       deal with these technical problems.

 9  BY MR. SMITH:

10       Q.   Mr. Houle, can you travel inside Montreal?

11       A.   No, I don't have a car.

12       Q.   How do you get around?

13       A.   By my friends.

14       Q.   You have people that drive you?

15       A.   No.

16       Q.   Are there taxicabs in Montreal?

17       A.   Yes.

18       Q.   Can you take taxicabs?

19       A.   Take what?

20       Q.   Taxicabs, taxis?

21       A.   Taxi, yes, I can take.

22            MR. SMITH:  Ms. Meyer, may I suggest that we

23       comply with your suggestion and let him take a

24       taxicab to some conference center, and Mr. Marzec can
```

1      set that up.  This is torturous.

2          MS. MEYER:  We have been 45 minutes at this, and

3      we barely have the occupation of the witness down.

4          MR. MARZEC:  Ms. Meyer, Darius Marzec.  I hear

5      Mr. Houle.  There is a language issue.  He's a native

6      French speaker, and I hear everybody.  So Our

7      position is try this.  Let's continue with the

8      question and give Mr. Houle an opportunity to answer

9      the questions now that we're set up.

10         MS. MEYER:  Mr. Marzec, the problem is if the

11     court reporter cannot hear Mr. Houle, we have no

12     transcript.

13         (Unintelligible cross-talk)

14         MR. ROGERS:  May I make one suggestion.  If

15     there's no concern now whether it is or is not

16     Mr. Houle who is testifying, could we just go to a

17     telephone deposition at this point?

18         MR. SMITH:  This is Ed Smith.  He is on the

19     telephone and the court reporter cannot understand

20     what he's saying, and it's very hard to hear him.

21         MR. MARZEC:  Because his computer is on, I

22     believe.  That's why.  There's static because of

23     that.

24         MR. SMITH:  Well, I've asked him several times

1    to turn it off, and it's still on then, apparently.

2         MR. ROGERS:  Well, can we try that?  Can we try

3    to have Mr. Houle turn off his computer entirely?

4         MR. MARZEC:  Let's try that.

5         MR. SMITH:  We're off the Record now.

6         (Whereupon, a discussion was held off the

7    Record.)

8    BY MR. SMITH:

9    Q.   Mr. Houle, do you have the exhibits in front of you

10   1 through 14?

11   **A.   1 what?**

12   Q.   There are papers that were supposed to be provided

13   to you.  There are exhibits --

14   **A.   Yes.**

15   Q.   -- and they're marked --

16   **A.   I have exhibits 1 to 13.**

17   Q.   Yes.

18   **A.   14.  Yes, I have it.**

19   Q.   You have to speak up and speak loudly, please.

20   **A.   Yes.**

21   Q.   Please pick up Exhibit H-14.

22   **A.   14.  What does it indicate on the paper?**

23        MR. MARZEC:  I don't have H-14.  Darius Marzec.

24        MR. SMITH:  I sent an e-mail saying that your

1     motion to withdraw as counsel should be marked as

2     H-14 and provided to the witness.

3          MR. MARZEC:  Which motion?  Which case?

4          MR. SMITH:  Your motion to withdraw in this

5     case.

6          MR. MARZEC:  I did not receive that as an

7     exhibit in this case.

8          MR. SMITH:  No.  I sent you an e-mail asking you

9     to provide him with a copy of your Motion to Withdraw

10    as his counsel and mark it H-14.

11  BY MR. SMITH:

12    Q.   Mr. Houle --

13          MR. MARZEC:  I don't recall such an e-mail.

14  BY MR. SMITH:

15    Q.   Mr. Houle, do you know that Mr. Marzec is quitting

16  as your attorney, or trying to quit as your attorney?

17    **A.   No.**

18    Q.   You didn't know that?

19    **A.   (No response.)**

20    Q.   When I say "your", I'm talking about Quebec.

21    **A.   Yes, Quebec.**

22    Q.   Did you know --

23    **A.   (Inaudible).**

24          COURT REPORTER:  What did you just --

Page 14

1    BY MR. SMITH:

2        Q.   Say that again?

3            MR. MARZEC:  Mr. Houle, please speak loud, slow

4        and wait for the person asking the question to

5        finish.  Just pause and then answer.

6            THE WITNESS:  Okay.

7    BY MR. SMITH:

8        Q.   Did you ever receive papers saying that Mr. Marzec

9    is trying to quit as Quebec's attorneys?

10       **A.    No.**

11       Q.   Did you know that Mr. Marzec is saying that you do

12   not cooperate with him?

13       **A.    Yes, I do cooperate.**

14           COURT REPORTER:  You do what?

15           MR. SMITH:  Cooperate.

16           THE WITNESS:  I do cooperate.

17   BY MR. SMITH:

18       Q.   Did you ever not cooperate with Mr. Marzec?

19           MR. MARZEC:  This is Darius Marzec.  I have to

20       lodge an objection --

21           THE WITNESS:  No, never.

22           MR. MARZEC:  -- because this line of questioning

23       gets into confidential client/attorney

24       communications, and information that Mr. Smith is

Page 15

1    seeking is privileged, not subject to disclosure,

2    specifically, communication between client and the

3    attorney.

4         MR. SMITH:  May I respond?  This is Ed Smith.

5         MS. MEYER:  Yes.

6         MR. SMITH:  In his motion, paragraph 4, he says

7    Quebec has failed to cooperate in the strategy,

8    advice and counsel provided to it.  In paragraph 5 he

9    says neither has Quebec agreed with counsel

10   concerning the strategy, defense and the direction of

11   the pending action.  And paragraph 6 says

12   additionally, shareholder of Quebec, Mr. Raymond

13   Houle, maintains a residence in Canada, does not

14   communicate with counsel as required for effective

15   representation.  Now I'm just questioning him as to

16   those averments by Mr. Marzec.

17        MS. MEYER:  Those are public averments -- I'm

18   sorry.  Mr. Marzec, respond.

19        MR. MARZEC:  Briefly, my response is that the

20   question is -- I worry that Mr. Houle may respond

21   with information that should not be made part of this

22   record, meaning any communication and discussions and

23   the strategy.  I don't want this to go there, because

24   it would not be proper for this deposition.

Page 16

1      MS. MEYER:  Let me make this ruling then.  Did

2   you serve this on your client, Mr. Marzec?

3      MR. MARZEC:  Yes, of course.

4      MS. MEYER:  Okay.  To the extent that you raised

5   these issues in your motion, Mr. Smith can inquire on

6   a yes/no basis whether these things are correct,

7   because I'm troubled that the Court may not know or

8   believe that Mr. Houle has been served, and if

9   Mr. Houle is in disagreement with your allegation, I

10  think the Court needs to know that.  We will not get

11  into the substance of your communications or any

12  advice you have given Mr. Houle.

13  BY MR. SMITH:

14  Q.   Mr. Houle, have you failed to cooperate in the

15  strategy or advice of Mr. Marzec?

16  **A.   No, never.**

17  Q.   Have you ever disagreed with Mr. Marzec concerning

18  your strategy or defense or anything to do with the lawsuit?

19  **A.   I always agree.**

20  Q.   Have you ever refused to talk to Mr. Marzec when

21  he's contacted you?

22  **A.   Never.  I always talk to my lawyer.**

23  Q.   Have you ever had any discussions with Guy

24  Donatelli?

Page 17

 1          MR. MARZEC:  I have to object.  Again, it's the

 2     same objection that Mr. Smith is inquiring about

 3     privileged and confidential statements between

 4     counsel and clients.

 5          MR. SMITH:  It just requires a yes or no.

 6          MS. MEYER:  He asked as to Mr. Donatelli, not as

 7     to you.

 8          MR. MARZEC:  But the privilege is held with

 9     Quebec, the company that I represent.

10          MR. SMITH:  My question just requires a yes or

11     no answer, Ms. Meyer.

12          MS. MEYER:  Yes.  It does require just a yes or

13     no answer.

14          THE WITNESS:  Could you repeat your question.

15     BY MR. SMITH:

16     Q.   Did you ever have conversations with Guy Donatelli?

17     **A.   Yes.**

18     Q.   Where was Quebec incorporated?  I'm saying Quebec

19     instead of the full name.  I'm sorry.  Where was it

20     incorporated?

21     **A.   In Quebec, in Montreal.**

22     Q.   And was there a lawyer who assisted you in creating

23     that corporation?

24     **A.   I was not the creator.**

93

Page 18

```
1       Q.   Who created it?

2       A.   I don't know.

3       Q.   Well, how did you come to be an officer of that

4  corporation or a shareholder of that corporation?

5       A.   (No audible response.)

6            COURT REPORTER:  I'm sorry?

7  BY MR. SMITH:

8       Q.   Your answer?

9       A.   Yes.  I had a friend -- I had Elia Hazan, who has

10 transferred me the company --

11           COURT REPORTER:  Who what?

12 BY MR. SMITH:

13      Q.   Wait.  Start over, please, and speak slowly and

14 loudly.

15      A.   Elia Hazan, who transferred me the company, in

16 September, 2011.

17      Q.   That's Elia Hazan; is that right?

18      A.   Yes.

19      Q.   And how is he related to Elizabeth Hazan?

20      A.   Yes.

21           MR. MARZEC:  I have to object.  I don't believe

22      that this line of questioning will lead to discovery

23      of admissible evidence in this case.  It's not

24      reasonably calculated to lead to that.
```

94

1          MS. MEYER:  Overruled.

2     BY MR. SMITH:

3          Q.   Is he related to Elizabeth Hazan?

4          **A.   Yes.  He is her brother.**

5          Q.   Were you ever asked by Elizabeth Hazan to do

6     anything using the Quebec Corporation?

7          **A.   No, never.**

8          Q.   Did Elia Hazan ask you to use the corporation to do

9     anything?

10         **A.   No, never.**

11         Q.   Were you promised anything by either Hazan for being

12    involved with the Quebec Corporation?

13         **A.   No.**

14         Q.   Weren't you promised $200,000 by Ms. Hazan?

15         **A.   Yes.**

16         Q.   And what was that for?

17         **A.   For satisfying some judgment she has with NLG.**

18         Q.   Did she pay you that money?

19         **A.   No.  It is a --**

20              COURT REPORTER:  I'm sorry?

21    BY MR. SMITH:

22         Q.   What did you say after "no"?

23         **A.   It is a promise.**

24         Q.   It is a promise?  She promised to pay?

1     **A.    P-R-O-M-I-S-E.**

2     Q.    Promise.  And when is she to pay you that money?

3     **A.    (Unintelligible.**

4           COURT REPORTER:  I'm sorry?

5     BY MR. SMITH:

6     Q.    Say that again.

7     **A.    One moment, please.**

8           MR. MARZEC:  I think he said "depending".

9     BY MR. SMITH:

10    Q.    When is she to pay you that money?

11    **A.    When I ask -- one moment, please.  Could you repeat**

12    **the question.**

13    Q.    Who is with you, Mr. Houle?

14    **A.    She has 24 months to pay me.**

15    Q.    Mr. Houle, who is with you in the room?

16    **A.    Nobody.**

17    Q.    Who?

18    **A.    Nobody.**

19    Q.    Weren't you just talking to somebody?

20    **A.    No.**

21    Q.    Do you know that, under the law of Pennsylvania, you

22    could be personally responsible for the debts of Quebec

23    Corporation under certain circumstances?

24          MR. MARZEC:  This is Darius Marzec.  I object.

```
 1        I think the question calls for a legal conclusion,

 2        which my client is not equipped to give.

 3              MR. SMITH:  I just asked him if he knows.  It's

 4        a yes or no answer.

 5              MS. MEYER:  You can ask him if he knows, but it

 6        is a legal question, and -- well, ask him if he

 7        knows.

 8   BY MR. SMITH:

 9        Q.    Do you know that?

10              MR. MARZEC:  Is my objection overruled?

11              THE WITNESS:  No.

12              MS. MEYER:  Yes.  For the purposes of yes or no,

13        it is.

14              MR. MARZEC:  His answer was no.

15              MS. MEYER:  We will treat it as a fact question.

16   BY MR. SMITH:

17        Q.    What business was Quebec in?

18              MS. MEYER:  Was there an answer to the question?

19              MR. SMITH:  Yes.  He said "no."

20              MS. MEYER:  Okay.

21   BY MR. SMITH:

22        Q.    What is the business of the Quebec Corporation?

23        A.    (Unintelligible).

24              COURT REPORTER:  I'm sorry?
```

1  BY MR. SMITH:

2      Q.   We didn't hear that.

3      **A.   One moment, please.  Yes.  Could I respond?**

4      Q.   What is the business of the Quebec Corporation?

5      **A.   Quebec uses the company to own judgment.**

6  **(Unintelligible).**

7          COURT REPORTER:  I'm sorry.  You'll have to

8      repeat that.

9          THE WITNESS:  Yes.  Quebec uses the company to

10     own a judgment against Chris Kosachuk.  That was the

11     main purpose that it was used for.

12 BY MR. SMITH:

13     Q.   Did the corporation have any other business other

14 than that?

15     **A.   Pardon?**

16     Q.   Did Quebec have any other business other than owning

17 the judgment against Mr. Kosachuk?

18     **A.   No.**

19     Q.   Does Quebec -- has Quebec paid attorneys fees to

20 Mr. Marzec or Mr. Donatelli?

21         MR. MARZEC:  I have to object on the basis that

22     the question calls for privileged and confidential

23     information that should not be disclosed here.  I

24     believe the same objection was made in response to

```
 1        paper discovery, and the objection was sustained.
 2             MR. SMITH:  I don't know what he's referring to,
 3        but this is not a privileged matter.  I'm not asking
 4        for communication.  I'm just asking whether or not he
 5        paid the bills, his corporation paid the bills.
 6             MS. MEYER:  The objection is overruled.  This is
 7        not getting into privileged material.
 8             THE WITNESS:  Okay.  I can respond.  I don't
 9        recall.
10   BY MR. SMITH:
11        Q.   Does Quebec Corporation have a checkbook, a checking
12   account?
13        A.   No.
14        Q.   You are the only shareholder of Quebec Corporation;
15   is that correct?
16        A.   Yes.
17        Q.   And you are the only officer of Quebec Corporation;
18   is that correct?
19        A.   Yes.
20        Q.   Then how did you pay attorneys fees?
21        A.   I don't have to respond to that question.
22        Q.   Yes, you do, sir.  How did Quebec pay its attorneys
23   fees?
24        A.   I don't recall.
```

Page 24

1    Q.   Have you ever received a bill for attorneys fees to

2    Quebec Corporation from Mr. Marzec or Mr. Donatelli?

3    **A.   I don't recall.**

4    Q.   Is there anything wrong with you that affects your

5    memory?

6    **A.   Sometimes, yes, because of my medication.**

7    Q.   What is the medication?

8    **A.   I have my medication over here.**

9    MR. MARZEC:  I object to the extent that this

10   calls for Mr. Houle to respond about his medical

11   conditions and medicines that he's taking.  I think

12   that's delving too deep into his personal life.

13   Again, he's here as a representative of 9197-5904

14   Quebec, Inc., that is a Defendant in this case.

15   MR. SMITH:  If I may respond, he's saying his

16   memory may be affected by the medication.  I'm

17   entitled to know what the medication is.

18   MS. MEYER:  You have a witness who doesn't

19   recall whether the company of which he is sole the

20   shareholder and officer has paid attorneys fees.  On

21   behalf of the corporation, he doesn't recall if he

22   ever received bills for attorneys fees.  If this

23   witness is impaired in any way, and he is saying his

24   memory is impaired, then the question is proper as to

1    what the hindrances are that are affecting his

2    ability to recall answers to questions.  Overruled.

3         MR. MARZEC:  Mr. Houle, please answer the

4    question.

5         THE WITNESS:  Okay.  I was treated for

6    depression, the main purpose that could affect my

7    memory.  I have good memory.  On pressure, I have

8    difficulty to remember.  That's the main thing.

9    BY MR. SMITH:

10   Q.   What is the medication that you're taking?

11   A.   **My medication is Venlafaxine.**

12   Q.   Would you spell that, please.

13   A.   **V-E-N-L-A-F-A-X-I-N-E.  It's for anxiety,**

14   **depression.**

15   Q.   Did you select the attorneys to represent the

16   corporation in matters involving Mr. Kosachuk?

17   A.   **Yes, I did.**

18   Q.   Had Mr. Marzec ever represented you before any

19   matter involving Mr. Kosachuk?

20   A.   **Yes, I did.  Yes, I do.**

21   Q.   And was that representing you personally or

22   representing some other corporation?

23   A.   **Personally.**

24   Q.   Did you ever pay any attorneys fees in cash on

1    behalf of the Quebec?

2        A.    Yes.

3        Q.    Yes?  Where did the cash come from?

4        A.    **From my money.**

5        Q.    Your personal money or the corporation's money?

6        A.    **My personal.**

7        Q.    And why did you pay in cash?

8        A.    **(No response.)**

9        Q.    Did you understand my question?

10       A.    **Yeah.  That's my right.**

11       Q.    Why did you pay --

12             MR. MARZEC:  He said "that's my right".

13             THE WITNESS:  That's my right.

14   BY MR. SMITH:

15       Q.    Did anybody ask you to pay in cash?

16       A.    **(Inaudible) cash if I want to do.**

17       Q.    What?

18       A.    **To pay cash if I want to.**

19       Q.    Did anyone ask you to pay in cash?

20       A.    **Yes.**

21       Q.    Who?

22       A.    **I don't remember.  I don't --**

23             MR. MARZEC:  I don't think he understood the

24       question.

Page 27

1          MR. SMITH:  Excuse me, sir.  Mr. Marzec, please

2     don't interrupt.

3  BY MR. SMITH:

4     Q.   Sir, who asked you to pay in cash?

5     **A.   I don't remember.**

6     Q.   Was it Elizabeth Hazan that asked you to pay in

7  cash?

8     **A.   No.**

9     Q.   Was it Mr. Hazan that asked you to pay in cash?

10    **A.   No.**

11    Q.   Was it an attorney who asked you to pay in cash?

12    **A.   It was my choice.**

13    Q.   Did you receive a receipt for those payments?

14    **A.   That's my right.**

15    Q.   Sir, did you receive --

16    **A.   I don't recall.  I don't recall if I have a**

17  **receipt.**

18    Q.   Do you file tax returns for the corporation?

19    **A.   Yes.**

20    Q.   And in the tax returns in Canada, do you have to

21  list the corporation's expenses?

22         MR. MARZEC:  I think I have to object to this

23     question on the basis that it calls for an answer

24     that a lay person, as Mr. Houle in this deposition,

Page 28

1     is not equipped to give.

2           MR. SMITH:  He's not a lay person.  He's a CPA.

3           MS. MEYER:  He's a CPA, Mr. Marzec.

4           MR. MARZEC:  But he's not appearing in this

5     deposition as a CPA.

6           MS. MEYER:  But he has the knowledge of what

7     goes on tax returns, and he's the filing officer for

8     Quebec.

9           MR. MARZEC:  Okay.  Mr. Houle, please answer.

10          THE WITNESS:  Yes.  That is my business.

11    BY MR. SMITH:

12    Q.   Does the tax return for the corporation contain a

13    listing of expenses of the corporation?

14    **A.   Sure.**

15    Q.   And did you file a tax return for the year 2013 for

16    the corporation?

17    **A.   I don't recall.**

18    Q.   When does Canadian law require that you file the tax

19    return for 2013 for the corporation?

20          MR. MARZEC:  Objection.  Even if he's a CPA,

21    this is a question that asks about statement of the

22    law and not what happened, where it happened or what

23    he did or what he didn't do and so forth.

24          MR. SMITH:  Laymen understand when tax returns

Page 29

1      are due here for April 15th.

2            MS. MEYER:  Overruled.

3            THE WITNESS:  (Inaudible).

4            MR. MARZEC:  I'm sorry, Mr. Houle.  Say again.

5            THE WITNESS:  I said I want this

6      (unintelligible) over.

7            COURT REPORTER:  I'm --

8   BY MR. SMITH:

9      Q.   Hold the phone up to your mouth, please.

10     **A.   Okay.**

11     Q.   When are tax returns due for filing for the

12  corporation for 2013?

13     **A.   June 23, 2014.**

14     Q.   And would that be true for the 2012 return that

15  would also be due in June of 2013?

16     **A.   Exactly.**

17     Q.   And the tax return that you filed for the

18  corporation for 2012, did you list any attorneys fees as

19  expenses to Mr. Marzec or Mr. Donatelli?

20     **A.   I don't recall.**

21     Q.   Have you ever had any discussions with Elizabeth

22  Hazan as to what you should do with regard to Mr. Kosachuk?

23     **A.   No.**

24     Q.   She's never discussed it with you and you've never

105

Page 30

1  discussed it with her; is that correct?

2      A.   Exactly.

3      Q.   And how about with Mr. Hazan, have you discussed it

4  with him?

5      A.   No.

6      Q.   Then how did you know to enter a judgment against

7  Mr. Kosachuk for NLG pursuant to the charging order?  Who

8  told you to do that?

9          MR. MARZEC:  Objection.  Lack of foundation.

10         MS. MEYER:  Sustained.

11 BY MR. SMITH:

12     Q.   Did you enter a judgment against NLG as a result --

13 excuse me.  Did you enter a judgment against Mr. Kosachuk

14 because of the charging order you received?

15     A.   No.

16     Q.   Didn't you enter --

17         MS. MEYER:  Did he understand the question?

18         MR. SMITH:  I'll give him another question.

19 BY MR. SMITH:

20     Q.   Didn't you enter a $5 million judgment against Mr.

21 Kosachuk because of your charging order for NLG?

22     A.   Yes.

23         MR. MARZEC:  Objection to the form and lack of

24         foundation.

1        MR. SMITH:  His answer was yes.

2        MS. MEYER:  Sustained.

3        MR. DONATELLI:  This is Guy Donatelli.  I'd also

4  like to object to that question because it

5  mischaracterizes the charges.

6  BY MR. SMITH:

7     Q.  Do you have the exhibits there, sir?

8     **A.**  **Yes.**

9     Q.  Would you please pick up Exhibit H-1.

10    **A.**  **H what?**

11    Q.  H-1.

12    **A.**  **Yes.**

13    Q.  That is a letter addressed to you by Guy Donatelli;

14  is that correct?

15    **A.**  **It is correct.**

16    Q.  Did you ever sign that letter and return it to Mr.

17  Donatelli?

18    **A.**  **No.  Yes.  I have signed.  I remember it now.**

19    Q.  That you remember signing and sending it back to

20  him; is that right?

21    **A.**  **Yeah.**

22    Q.  That letter says, quote, I will be transmitting to

23  you copies of correspondence and other papers in this case

24  which I believe have some significance.  Did you ever receive

Page 32

1    such papers and correspondence from Mr. Donatelli?

2            MR. MARZEC:  Objection.  I think that was two

3        questions.  Objection to the form.

4            MS. MEYER:  Sustained.

5    BY MR. SMITH:

6        Q.    Did you ever receive copies of correspondence from

7    Mr. Donatelli?

8        **A.    Yes, I believe so.**

9        Q.    Did you ever receive copies of any other papers from

10   Mr. Donatelli?

11       **A.    No.**

12       Q.    Who selected --

13       **A.    I don't remember.**

14       Q.    Is your answer no or is it you don't remember?

15   Which one?

16       **A.    I don't remember.**

17       Q.    Who selected Mr. Donatelli to represent the

18   corporation?

19       **A.    Can you re-ask the question again.**

20       Q.    Who selected Mr. Donatelli to represent the

21   corporation?

22       **A.    I don't recall who.**

23       Q.    Did you know that a judgment was entered against NLG

24   in the Court of Common Pleas of Chester County, Pennsylvania?

Page 33

1          MR. MARZEC:  Objection.  Lack of foundation.

2     And what judgment are we talking about here?

3          MS. MEYER:  Clarify the judgment.  Otherwise I

4     think there is foundation.

5     BY MR. SMITH:

6     Q.    In this case that we're here on, sir, your

7     corporation sued Christopher Kosachuk and NLG and recorded a

8     judgment against NLG.  Are you aware of that?

9     **A.    No.**

10    Q.    Did anyone ever tell you that a judgment in the case

11    in Chester County, Pennsylvania, was entered against NLG?

12    **A.    I don't recall.**

13    Q.    Did you learn that NLG was trying to have that

14    judgment removed in Chester County, Pennsylvania?

15    **A.    I don't recall.**

16    Q.    Did you retain attorneys to oppose the removal of

17    that judgment against NLG in Chester County, Pennsylvania?

18    **A.    I don't recall.**

19    Q.    Did you intend to enter a -- have a judgment entered

20    on behalf of the Quebec Corporation against NLG in Chester

21    County, Pennsylvania?

22    **A.    No, I don't recall.**

23    Q.    Would you please pick up Exhibit H-3.  I'm sorry.

24    H-2.

```
 1      A.   Yes.

 2      Q.   Did you ever see that document before it was

 3  presented to you for this deposition?

 4      A.   Yes.

 5      Q.   When did you first see it?

 6      A.   I don't recall.

 7      Q.   How long ago did you see it?

 8           MR. MARZEC:  Objection.  Asked and answered.

 9           MS. MEYER:  Is that an objection?

10           MR. MARZEC:  Asked and answered.

11           MS. MEYER:  He said he'd seen it before.

12           MR. MARZEC:  Say again, please.

13           MS. MEYER:  His answer was I have seen this

14      before.  I thought that's what he -- --

15           THE WITNESS:  My response is I don't recall

16      seeing this document now.  Sorry.

17  BY MR. SMITH:

18      Q.   Would you turn to H-3, Exhibit H-3, please.

19      A.   Yes.

20      Q.   Would you look at the last page of that exhibit,

21  please.  It's entitled "verification".  Do you have that

22  there, sir?

23      A.   Yes.

24      Q.   It says "I, Raymond Houle, verify that the facts set
```

1    forth in the Answer to Motion to Vacate are true and correct

2    to the best of my knowledge, information and belief.  I

3    represent that I am an officer of the Plaintiff and am

4    authorized to take this verification on its behalf.  I

5    understand that false statements herein are made subject to

6    the penalties of the law relating to unsworn falsification to

7    authorities."  Did you sign that document, sir?  Is that your

8    signature there?

9        **A.    I think so.**

10       Q.    And did you sign it on March 15, 2012?

11       **A.    Yes.**

12       Q.    Did you read the document before you signed that

13   verification?

14       **A.    I don't remember.**

15       Q.    Do you remember ever seeing Exhibit H-3 before?

16           MR. MARZEC:  Objection.  Asked and answered.

17           MS. MEYER:  Overruled.

18           THE WITNESS:  Probably.

19   BY MR. SMITH:

20       Q.    Probably?

21       **A.    Yes.  But I'm not sure.**

22       Q.    Do you know who probably gave it to you to look at?

23       **A.    Yes.**

24       Q.    Who?

1       **A.    Probably I'm not sure.**

2           MR. MARZEC:  I'm sorry.  This is Darius Marzec.

3       I'm not sure what the question is.

4           MS. MEYER:  I'm not entirely sure, either.

5    BY MR. SMITH:

6       Q.    Who gave you -- who gave you Exhibit H-3 to look at,

7    if you can recall?

8           MR. MARZEC:  Objection.  That wasn't the answer

9       to the question.  He said that he probably saw it

10      before, but he didn't say that someone gave him the

11      document to look at it.  It's mischaracterizing the

12      testimony of the witness.

13          MS. MEYER:  I think it's a new question; who

14      gave it to him.

15   BY MR. SMITH:

16      Q.    From whom did you receive Exhibit H-3?

17      **A.    I don't recall.**

18      Q.    Would you look at H-4, please, Exhibit H-4.  Do you

19   have that in front of you, sir?

20      **A.    Yes.**

21      Q.    Have you ever seen that document before it was given

22   to you for this deposition?

23      **A.    No.  Sorry.**

24      Q.    Would you please look at H-5, Exhibit H-5.  Do you

1    have that in front of you?

2        A.   Yes.

3        Q.   Would you look through it, please.

4        A.   H-5.  Okay, I got.

5        Q.   It's an Order of Court from Chester County,

6    Pennsylvania.  Do you have that in front of you?

7        A.   Yes, I have.

8        Q.   Have you ever seen that document before?

9        A.   No.

10        Q.   Did you say no?

11        A.   I don't recall.

12        Q.   Did you know that a judge in Chester County took off

13    the judgment against NLG?

14        A.   I don't know.

15            MR. MARZEC:  I don't understand the question.

16        This is Darius Marzec.  The question is when and --

17        it's a little confusing.  What does to take off mean?

18            MR. SMITH:  Would you rather I use "vacate"?  Do

19        you think he'd understand that better?

20    BY MR. SMITH:

21        Q.   Did you know that a judge in Chester County vacated

22    the judgment against NLG?

23        A.   (No response.)

24        Q.   Are you there, sir?

Page 38

1      A.    I don't recall.

2      Q.    You don't recall.  Would you please look at Exhibit

3   H-6.  It's a letter from Mr. Marzec to Judge Griffith in

4   Chester County dated May 10, 2012.  Have you ever seen that

5   letter before?

6      A.    I don't recall.

7      Q.    The document attached to that letter, which is a

8   motion to reconsider and to vacate prior order, have you ever

9   seen that before?

10     A.    I don't recall.

11     Q.    Did you authorize anyone to file either Exhibit H-4

12  H-5 -- I'm sorry.  H-4 or H-6, did you authorize anyone to

13  file those exhibits in court?

14     A.    I don't recall.

15     Q.    Would you look at H-7, please.

16          MR. DONATELLI:  Ed, H-5 is the judge's order.

17     Did you mean to include that in that question?

18          MR. SMITH:  I thought I corrected that and just

19     referred to H-4 -- I'm sorry -- H-4 and H-6.

20  BY MR. SMITH:

21     Q.    You're looking at H-7?

22     A.    Yes.

23     Q.    Have you ever seen that document before?

24     A.    I don't recall.

114

Page 39

1     Q.   Did you ever authorize anyone to change the caption

2 of the case in Chester County and the name of the parties?

3     **A.**   **I don't recall.**

4     Q.   Would you look at H-8, please.  Do you have H-8 in

5 front of you?

6     **A.**   **Yes.**

7     Q.   That's a document from the 11th Judicial Circuit in

8 and for Miami-Dade County, Florida, and it's a Notice of

9 Voluntary Dismissal with Prejudice.  It says "Plaintiff NLG,

10 by and through undersigned counsel, pursuant to the certified

11 copy of the charging order attached hereto as Exhibit A

12 hereby voluntarily dismisses this action with prejudice."

13 Did you know that the action by NLG against Elizabeth Hazan

14 that I just referred to was being dismissed?

15     **A.**   **No.**

16         MR. MARZEC:  Objection.  Lack of foundation.

17         THE WITNESS:  I don't recall.

18         MR. MARZEC:  Objection.

19         MS. MEYER:  He doesn't recall anyway.  If

20     counsel wants to lay foundation that might help him

21     recall, that's fine.

22 BY MR. SMITH:

23     Q.   Did Mr. Rosenberg represent your corporation in

24 Florida?

Page 40

```
 1      A.    Yes.

 2      Q.    And did you ask Mr. Rosenberg or did you instruct

 3  Mr. Rosenberg to satisfy the judgment that NLG had against

 4  Elizabeth Hazan?

 5      A.    Yes.

 6            MR. MARZEC:  Objection.  Lack of foundation.

 7            MS. MEYER:  Does the witness understand the

 8      question?

 9            MR. SMITH:  He said yes.  I'll say it again.

10  BY MR. SMITH:

11      Q.    Did you authorize Mr. Rosenberg to have the judgment

12  by NLG against Hazan satisfied?

13      A.    Would you repeat?

14      Q.    Did you authorize Mr. Rosenberg to have the judgment

15  of NLG against Elizabeth Hazan satisfied?

16      A.    Yes.

17      Q.    Why?

18            MR. MARZEC:  Objection.  I believe that was

19      asked and answered, and the witness testified about

20      the $200,000.

21            MR. SMITH:  I'm going to object to counsel

22      suggesting answers.

23            MS. MEYER:  There was a payment of $200,000, but

24      it was not connected to this.  And the objection is
```

116

Page 41

```
 1      overruled.

 2           MR. MARZEC:  Okay.  Mr. Houle, answer the

 3      question, please.

 4  BY MR. SMITH:

 5      Q.   Why did you instruct the satisfaction of that

 6  judgment against Elizabeth Hazan?

 7      A.   Because of the promise of the $200,000.

 8      Q.   Who were you just talking to?

 9      A.   Nobody.

10      Q.   You turned your head and you said something quietly

11  to your left.  Are you saying you're not talking to anybody;

12  you were talking to yourself?

13      A.   Exactly.

14           MR. MARZEC:  I think he was answering the

15      question.  I don't know.

16           MS. MEYER:  I believe someone else is present,

17      because very early -- I no longer have video here,

18      but very early in the deposition, Mr. Houle was

19      waving away somebody with his hand and turned his

20      head to look at somebody.  But I don't know who that

21      person was.

22  BY MR. SMITH:

23      Q.   Has there been anybody with you at all during this

24  deposition?
```

Page 42

1    **A.   No.**

2    Q.   Would you please look at H-9.  This is a document

3    from the Supreme Court of the State of New York, County of

4    New York, in which Quebec Corporation was the Plaintiff and

5    NLG was a Defendant.  Have you ever seen this document

6    before?

7    **A.   Yes, I did.**

8    Q.   When did you first see it?

9    **A.   I don't remember.**

10   Q.   Was it more than a month ago?

11   **A.   I don't remember.**

12   Q.   Was it last week, the first time you saw it?

13   **A.   No.**

14   Q.   Was it over a year ago that you first saw it?

15   **A.   I don't know.  I think was two years ago.**

16   Q.   Who prepared that document?  Who gave it to you?

17   **A.   Ten days -- ten days.**

18   Q.   Pardon me?

19   **A.   (Unintelligible)  Marzec.  It indicates on the**

20   **document.**

21   Q.   You have to say that again.  I don't understand what

22   you just said.  You said Mr. Marzec gave it to you, and then

23   what did you say?

24   **A.   It says on the paper Mr. Marzec.  (Inaudible)**

1    Q.   Who asked you to have this document filed?

2    **A.   Would you repeat.**

3    Q.   Who asked you to have this document filed with the

4    court?

5    **A.   I asked my lawyer, Mr. Marzec, to prepare -- to**

6    **prepare it.**

7    Q.   Who asked you to have this document filed?

8         MR. MARZEC:  Objection.  Asked and answered.  He

9    said, I asked my lawyer to prepare it.

10        MR. SMITH:  I didn't hear him say that.

11        THE WITNESS:  I asked my lawyer to prepare it.

12   Nobody else.

13        MR. SMITH:  Ms. Meyer, may I ask that Mr. Marzec

14   be instructed not to suggest answers as part of his

15   objections or intermeddle his answers.

16        MS. MEYER:  You are so instructed, Mr. Marzec.

17   BY MR. SMITH:

18   Q.   Why did you have this document filed?

19   **A.   Because for abuse (inaudible)**

20        COURT REPORTER:  I'm sorry.  Could you start

21   your answer again, please.

22        THE WITNESS:  (Inaudible.)

23        COURT REPORTER:  I can't hear you.

24   BY MR. SMITH:

Page 44

1      Q.   Speak up, please.  Put the phone near your mouth.

2           COURT REPORTER:  Start your answer again.

3           THE WITNESS:  Sorry.

4    BY MR. SMITH:

5      Q.   Why did you have this document filed?

6      **A.   Yeah, it was filed for fraud and abuse of process**

7    **and to collect our judgment.**

8      Q.   What judgment --

9      **A.   Because of five years of process of fraud by Mr.**

10   **Kosachuk.**

11     Q.   And you filed that as -- and who -- strike that.

12          You filed this -- you allowed this to be filed as an

13   agreement on behalf of NLG; is that correct?

14     **A.   (No response.)**

15     Q.   You represented NLG in filing this document; didn't

16   you?

17     **A.   Are you referring to the charging order?**

18     Q.   Yes, and you represented NLG in filing this

19   document; is that correct?

20     **A.   Yes.  Indicated on it.**

21     Q.   And you indicated yourself as manager of NLG; is

22   that correct?

23     **A.   Indicated.  I don't --**

24     Q.   Okay.  Look at the third page, please.  It's an

Page 45

1   Affidavit of Confession of Judgment signed by you -- that is

2   your signature at the bottom?

3        **A.    Which page?**

4        Q.    Third page.

5        **A.    I see it, yes.**

6        Q.    And it says manager of NLG.  Who appointed you as

7   manager of NLG?

8        **A.    By corporate resolution.**

9             COURT REPORTER:  I'm sorry?

10  BY MR. SMITH:

11       Q.    By corporate resolution?  What corporation?

12       **A.    That I did when Quebec took over NLG.**

13       Q.    What corporation issued the resolution?

14       **A.    You got a valid -- a valid charging order to do so.**

15  **It's the Quebec company who make that resolution.**

16       Q.    Before you filed this, did NLG owe Quebec anything?

17       **A.    I don't understand very well.**

18       Q.    Before you filed this Confession of Judgment against

19  NLG, did NLG owe Quebec Corporation any money?

20       **A.    No.**

21       Q.    Who selected the $5 million figure?

22       **A.    I did.**

23       Q.    Did anyone assist you in selecting that amount?

24       **A.    No.**

Page 46

1      Q.    Now, if you'll look at the two pages past there,

2  please.

3      **A.    Which page?**

4      Q.    Two more pages past.

5      **A.    Okay.**

6      Q.    At the top it has what appears to be your signature.

7  I ask you if that is your signature.

8      **A.    I don't find the page.  I don't know.  Past or**

9  **before?**

10     Q.    It's the fifth page of that exhibit.

11     **A.    Yes.**

12     Q.    Is that your signature?

13     **A.    Yes.**

14     Q.    And the notary is Darius A. Marzec; is that correct?

15     **A.    Yes.**

16     Q.    Was he with you when you signed this?

17     **A.    Yes.**

18     Q.    And were you in New York when you signed this?

19     **A.    Of course.**

20     Q.    Where in New York were you?

21     **A.    In his office.**

22     Q.    And where was his office?

23           MR. MARZEC:  I have to object --

24           THE WITNESS:  In Brooklyn.

1          MR. MARZEC:  -- to this line of questioning.

2     Mr. Houle, hold on.  This line of questioning is not

3     reasonably calculated to lead to admissible evidence.

4     Let's not get away from the fact that this is the

5     Dragonetti action that alleges that a judgment was

6     entered against NLG.  This is too far afield, in my

7     opinion, for these questions to continue.

8          MS. MEYER:  The level of detail, where was your

9     office, I don't know where that's going, but I'll

10    allow that question.  Can we just stipulate where

11    your office was?  Does it matter?

12         MR. SMITH:  I just wanted to know if he actually

13    knows where it was and if he was really there when he

14    signed that affidavit.

15         MS. MEYER:  All right.  So where was

16    Mr. Marzec's office?

17         THE WITNESS:  It's in Brooklyn.

18    BY MR. SMITH:

19    Q.   How many times were you there?

20    **A.   I don't understand the question.  How many?**

21    Q.   How many times were you in Mr. Marzec's office in

22    Brooklyn?

23    **A.   That time, or how many times?**

24    Q.   I'm sorry.  I didn't understand.  Say that again.

Page 48

1    **A.    Many times.**

2    Q.    More than five?

3    **A.    I don't understand.**

4    Q.    All right.  Strike the question.

5         MR. MARZEC:  I have to object.  Where is this

6    going?

7         MR. SMITH:  I said strike the question.

8         MS. MEYER:  Okay.  Counsel, move on.

9    BY MR. SMITH:

10   Q.    Would you please look at Exhibit, H-10, a document

11   from the Circuit Court of the 11th Judicial Circuit in and

12   for the Miami-Dade County in Florida.

13   **A.    H --**

14   Q.    H-10.

15   **A.    What does it indicate on the document, the title?**

16   Q.    It says Corrected Notice of Voluntary Dismissal.

17   **A.    Okay.  I see it.**

18   Q.    Have you ever seen that document before?

19   **A.    No, I don't recall seeing this document.**

20   Q.    Did you ever instruct an attorney to have this

21   document filed in Florida?

22   **A.    I don't recall.**

23   Q.    Did you ever speak with a Jonathan P. Cohen, an

24   attorney?

1       A.   I think.

2       Q.   Pardon me?

3       A.   I think.

4       Q.   You think what?

5       A.   I think so.

6       Q.   I didn't hear the rest of your answer.  Did you ever

7  speak with --

8       A.   He worked with Mr. Rosenberg.

9       Q.   You have to say that again, sir.  I didn't

10  understand what you said.

11      A.   He worked with Mr. Rosenberg.

12      Q.   Oh, he works with Mr. Rosenberg.  Okay.  Did you

13  ever authorize Mr. Rosenberg to file this document in court?

14      A.   I don't recall.

15      Q.   Would you look at H-11, please.  It's an Order of

16  Court in the 11th Circuit, Judicial Circuit, in and for the

17  Miami-Dade County, Florida.  Do you have that in front of

18  you?

19      A.   Yes.

20      Q.   Did you ever see that document before?

21      A.   I don't recall.

22      Q.   Did you know that the satisfaction of judgment,

23  which was H-10, was stricken by the Court, by this order

24  marked H-11?  Did you know that?

1        **A.    I don't recall.**

2             MR. MARZEC:  Objection.  Well, he answered that

3        question.

4    BY MR. SMITH:

5        Q.    Would you look at H-12, please.  There's several

6    pages.  Would you look through all of them, please.  Have you

7    done that?  Have you looked through all the pages?

8        **A.    Which pages?**

9        Q.    H-12.  All the pages, I want you to look through

10   them.

11       **A.    Okay.  I'm looking.  Yes.**

12       Q.    Have you ever seen that document before?

13       **A.    Yes.**

14       Q.    When did you first see it?

15       **A.    When I became the owner of Quebec.**

16       Q.    I'm sorry.  I didn't understand what answer.

17       **A.    When I became the owner of Quebec company.**

18       Q.    That's when you first saw this?

19       **A.    Exactly.**

20       Q.    Was there an owner of the Quebec Corporation before

21   you?

22            MR. MARZEC:  Objection.  Asked and answered.

23       And I can go into the details if I'm permitted.

24            MR. SMITH:  I don't believe I asked that

Page 51

1      question.  I didn't ask that question before.

2              MS. MEYER:  I don't recall it.  Overruled.

3              MR. MARZEC:  Okay.

4  BY MR. SMITH:

5      Q.   Was there an owner of the Quebec Corporation before

6  you?

7      **A.   Yes.  I told it before.  It's Elia Hazan.**

8      Q.   He was the owner before you?

9      **A.   He was the owner of the 9197 Quebec company.**

10     Q.   This H-12, this is an assignment of a judgment

11 against Christopher Kosachuk and NLG for $108,000, did you

12 see that there in the second paragraph?

13     **A.   Sorry.  What paragraph?**

14     Q.   It says "Whereas on the 22nd day of February, 2007,

15 judgment was recovered in the Supreme Court, County of New

16 York, in favor of Evguenia Lorret and Nina Gogitidze" -- I'll

17 spell these for you later -- "and against Christopher

18 Kosachuk and NLG, LLC, in the sum of $108,293.54 plus costs."

19 Have you seen that before?

20     **A.   I've seen that document, but I told you, but it's**

21 **only against Chris Kosachuk, not NLG.**

22     Q.   Well, why does this say there was a judgment entered

23 against NLG?  Do you know why?

24             MR. MARZEC:  This calls for speculation.

Page 52

1        MS. MEYER:  Ask if he knows why.

2        MR. SMITH:  That's what my question was.

3    BY MR. SMITH:

4    Q.  Do you know why it says it's a judgment entered

5    against NLG?

6        MR. MARZEC:  Okay.

7        THE WITNESS:  It's not against -- it's the name

8    of the caption.

9    BY MR. SMITH:

10   Q.  No, I'm not reading the caption.  I'm reading what I

11   just read, that the judgment of those two women and against

12   Christopher Kosachuk and NLG, in the sum of $108,000.  Do you

13   know why it says NLG?

14   **A.   I don't know.  I was not there at that time when it**

15   **was done.  I was not the owner of the Quebec company when it**

16   **was done.  So you're asking a question about a document**

17   **before I was owner of that judgment.**

18   Q.  When did you -- on what date did you become the

19   owner of the corporation?

20   **A.   Around September 2011.**

21   Q.  Would you look at the third page there, please.

22   **A.   What?**

23       MR. MARZEC:  Of H-12?

24   BY MR. SMITH:

1    Q.   Of H-12, the third page.  Strike that.  Strike that.

2  Don't go there.

3         Would you look at H-13, please.

4    **A.   Yes.   (Unintelligible).   Yes.**

5    Q.   Do you have H-13 in front of you?

6    **A.   Yes.**

7    Q.   That's a document from the Supreme Court of the

8  State of New York, County of New York, Quebec versus Kosachuk

9  and NLG and that's dated the 10th day of February, 2014.  You

10 were president of the corporation at that time; weren't you?

11        MR. MARZEC:  Objection to multiple questions in

12     that one question.

13        MS. MEYER:  Break down the questions.

14        MR. SMITH:  I thought I just asked him if he was

15     the president of the corporation at that time.

16        MR. MARZEC:  Is that a question or is it a

17     statement?

18        MS. MEYER:  It's a question.

19 BY MR. SMITH:

20    Q.   Do you understand the question, sir?

21    **A.   No.**

22    Q.   On February 10, 2014, did you have a position with

23 Quebec Corporation?

24    **A.   Yes.**

Page 54

1     Q.   What was your position?

2     **A.**   **Owner.**

3     Q.   Pardon me?

4     **A.**   **I am president.**

5     Q.   Would you look at the second page of that document.

6  I'll ask you if that contains your signature.

7     **A.**   **Yes.  What's the question?**

8     Q.   Is that your signature on the second page?

9     **A.**   **Yes.**

10    Q.   And how about at the bottom, is that also your

11 signature?

12    **A.**   **Yes.**

13    Q.   You assigned this judgment for $10; didn't you?

14    **A.**   **Pardon?**

15    Q.   This is an assignment of the judgment to SRS

16 Technologies Professionals, LLC; is that correct?

17    **A.**   **That's correct.**

18    Q.   And why did you assign it?

19    **A.**   **I sold it.**

20    Q.   Pardon me?

21    **A.**   **I sold it.**

22    Q.   You have to hold the phone up to your mouth, sir.

23    **A.**   **Sorry.  I sold it.**

24    Q.   You sold it.  Why?

Page 55

1      A.    Because I need money.

2      Q.    Well, this says you got $10.  Did that help you out

3   a lot, that $10?

4      A.    No, it's not true.

5      Q.    You mean it's not true that you got $10?

6      A.    No.  I got the amount.  I got 49,000.  I was paid in

7   cash -- in check.  I'm sorry.  In check.  My memory is -- I

8   was paid 49,000, the amount of 48,000, plus 1,000 -- 1,050

9   paid that made it 49,000, and also -- also the company, SRS

10  agreed to pay all the pending legal bills I got for the

11  amount for recovering for the interest accrued.

12     Q.    Are either of the Hazans involved with SRS

13  Technologies in any way?

14     A.    No, never.

15     Q.    Who did you negotiate this assignment with?

16     A.    (No response.)

17     Q.    Sir, why are you looking over to your left?

18     A.    I'm not looking.  I'm just getting much tired.

19     Q.    I'm sorry.  I didn't understand what you said.

20     A.    I'm getting tired.  That's why.  I have a problem

21  with my neck.  That's why I'm doing that.  Okay.

22     Q.    Who did you deal with at SRS Technologies?

23     A.    Yes.

24     Q.    Who?  Who is the person?

Page 56

1      **A.    One moment, please.   It's a company from nearby.**

2      Q.    Who is the person that you negotiated this

3   arrangement with?

4      **A.    It's Mr. Alex Sarano.**

5      Q.    Spell that last name, please.

6      **A.    S-A-R-A-N-O.**

7          MR. DONATELLI:  Did the court reporter get that

8      last name?

9          COURT REPORTER:  Yes.

10  BY MR. SMITH:

11     Q.    What did you do with the money?  Did you deposit it

12  in an account for the Quebec Corporation?

13     **A.    I cashed the money.**

14     Q.    And did you put it in an account for the Quebec

15  Corporation?

16         MR. MARZEC:  Objection.  Asked and answered.

17         MS. MEYER:  No, it's not asked and answered.

18     It's overruled.

19         MR. MARZEC:  Mr. Houle, please answer.

20         THE WITNESS:  It was a check.  It was written in

21     the name of the company first.  I was able to turn it

22     and (inaudible).

23  BY MR. SMITH:

24     Q.    Turn it and what?  We couldn't hear what you last

1    said.

2    **A.    It was (inaudible) -- no, no.**

3    Q.    Hold the phone to your mouth, please.

4    **A.    Sorry.**

5         MR. MARZEC:  Mr. Houle, do you need a break?

6         THE WITNESS:  The check was in the name of the

7    company first, but then it was replaced my name,

8    Raymond Houle.

9    BY MR. SMITH:

10   Q.    Why?

11   **A.    It was easier to..**

12   Q.    Why wasn't the check given to the corporation?

13   **A.    That is what I decided.**

14   Q.    So you took the money for yourself; is that right?

15   **A.    This is my problem.**

16   Q.    Sir --

17   **A.    Yes.**

18   Q.    -- my question is did you take the money for

19   yourself?

20   **A.    Yes.  Yes.**

21   Q.    Does Quebec own any interest in SRS?

22   **A.    No.**

23   Q.    Do you own any interest in SRS?

24   **A.    No.**

Page 58

1     Q.   Has Elizabeth Hazan or Mr. Hazan ever given you any

2   actual money?

3     **A.   No.**

4     Q.   Has Elizabeth Hazan or Mr. Hazan ever instructed you

5   to do anything with regard to Kosachuk or NLG?

6     **A.   No.**

7        MR. MARZEC:  I have to object.  This is Darius

8        Marzec.  I'm not sure when.  I'm not sure if we're

9        still talking about the assignment of the judgment.

10       I'm not -- I'm a little lost.  I don't think you have

11       a foundation there to be able to answer these

12       questions.

13       MR. SMITH:  I believe my question --

14       MS. MEYER:  The witness seems to be

15       understanding the questions and answering them.  If

16       you want to redepose him on cross examination -- not

17       cross examination, but on your questioning of the

18       witness, you may.

19   BY MR. SMITH:

20     Q.   Who paid the bill for Ms. Meyer's time recently?

21     **A.   What -- sorry.  would you repeat?**

22     Q.   Ms. Meyer had presented a bill for her time involved

23   in this case.  Who paid it on your behalf?

24     **A.   Repeat the question.  The service --**

1     Q.   Did you ever pay any money for the payment of

2  Ms. Meyer's bill?

3     **A.   Nobody paid.  Not yet.**

4     Q.   Sorry to hear that.  I'm just checking my notes.

5  I'll be with you in one second.  Did you know that Mr. Marzec

6  also represents Ms. Hazan?

7     **A.   Yes.  So what?**

8     Q.   Did you ever have any conversations of any kind with

9  Ms. Hazan other than with regards to the deposition you

10  appeared for in December in the bankruptcy matter?

11     **A.   No.**

12     Q.   Did you ever meet Ms. Hazan at any time other than

13  as a result of that bankruptcy deposition?

14     **A.   No.**

15     Q.   How about Mr. Hazan, did you ever meet with him, her

16  brother?

17     **A.   No.**

18     Q.   Then how did he ask you to take over the Quebec

19  Corporation?

20     **A.   It was a long time ago.  I meet him before.**

21     Q.   You did meet with him before.  How many times?

22     **A.   Yes.  Not recently, but --**

23     Q.   How many times?

24     **A.   Maybe five, ten times.  I don't remember.**

Page 60

1      Q.   Are you related to either Mr. or Ms. Hazan in any

2   way, either by blood or marriage?

3      **A.   No.   No.   I'm -- they are Jewish and I'm Catholic.**

4      MR. MARZEC:  Mr. Houle, there's no question

5   before you.

6   BY MR. SMITH:

7      Q.   Are you willing to have Mr. Marzec no longer

8   represent your corporation?

9      MR. MARZEC:  Objection.  I think this calls for

10   Mr. Houle to address confidential and privileged

11   information.

12   MS. MEYER:  Mr. Houle has stated he's unaware

13   that Mr. Marzec is seeking to withdraw his

14   representation from Quebec.

15   MR. SMITH:  Yes.  I'm asking him if he's willing

16   to allow him to withdraw his representation.

17   MR. MARZEC:  And there's no foundation for this.

18   It's out of the blue.

19   THE WITNESS:  I could say if that is his wish

20   I fully --

21   MR. MARZEC:  I'm sorry.  Hold on one second for

22   the ruling.

23   MS. MEYER:  You can ask him if he wishes to have

24   Mr. Marzec continue representing Quebec.

Page 61

```
 1   BY MR. SMITH:

 2       Q.   Do you, sir?

 3       A.   If that is his wish, I fully respect his wishes.

 4            MR. MARZEC:  I'm sorry.  Please ask the question

 5       again and answer.

 6   BY MR. SMITH:

 7       Q.   Do you wish Mr. Marzec to continue to represent

 8   Quebec Corporation?

 9       A.   If he doesn't want to represent Quebec any longer, I

10   will respect him.

11       Q.   Do you understand that that means you have to get

12   another lawyer to represent the corporation?

13       A.   He is a brilliant lawyer, but I understand.

14       Q.   My question is, do you understand that you will have

15   to get another lawyer to represent the corporation?

16       A.   Yes.

17            MR. SMITH:  That's all I have.

18                             EXAMINATION

19   BY MR. MARZEC:

20       Q.   Mr. Houle, this is Darius Marzec, your attorney.  I

21   just have a few questions.  Mr. Houle, do you know what a

22   Motion to Withdraw an Appearance is?

23       A.   No.

24       Q.   Do you know what a Notice of Appearance is?
```

137

1      **A.   No.**

2      Q.   Mr. Houle, are you aware that my law firm, Marzec

3   Law Firm, P.C., has filed a request before the Court in this

4   case to no longer represent 9197-5904 Quebec, Inc.

5      **A.   (No response.)**

6      Q.   Mr. Houle, did you understand?

7      **A.   It's very unfortunate.**

8      Q.   But are you aware of the application to withdraw

9   from representation filed by this firm?

10     **A.   If you want, what can I do?**

11     Q.   Mr. Houle, it's a yes or no question.  Do you know

12  that I want to leave this case and my firm wants to leave

13  this case?

14     **A.   (No response.)**

15     Q.   Mr. Houle?

16     **A.   I don't understand.**

17     Q.   Okay.  Mr. Houle, did you receive a letter from me

18  telling you -- withdrawn.

19          Mr. Houle, did you receive a motion in this case

20  filed by my law firm asking the Court for permission to no

21  longer be Quebec's attorney?

22     **A.   I didn't inspect my e-mail, but I will do it.**

23     Q.   Have you checked your mailbox?  Not e-mail, your

24  mailbox.

1    **A.   I got my mailbox -- (inaudible).**

2         COURT REPORTER:  I'm sorry?

3         THE WITNESS:  My e-mail.  My mailbox and

4    my e-mail, also.  My mailbox.

5    BY MR. MARZEC:

6         Q.   How long have you not checked your mailbox for?

7    **A.   Over a week.**

8         Q.   Mr. Houle, are you aware that this law firm has

9    withdrawn from representation of Quebec in other cases?

10   **A.   No, but I'm very sad.**

11        Q.   Mr. Houle, do you receive mail at the address that

12   you gave in the beginning of your testimony?

13   **A.   Which case?**

14        Q.   Mr. Houle, do you receive mail at --

15   **A.   No, I didn't.  No.**

16        Q.   Hold on one second, please.  I just need a minute.

17   Excuse me.  Mr. Houle, do you receive mail at 5552 Queen Mary

18   Road, Number 4, Montreal, Canada?

19   **A.   (No response.)**

20        Q.   Mr. Houle, do you receive mail at 5552 Queen Mary

21   Road address?

22   **A.   Yes, but I don't --**

23        COURT REPORTER:  "I don't" what?

24        MR. SMITH:  Say that again, Mr. Houle.

Page 64

1          THE WITNESS:  Yes, but I don't check my mail all

2     the time.

3  BY MR. MARZEC:

4     Q.    But are you aware of my law firm's applications,

5  motions, to withdraw from representation of Quebec?

6          MR. SMITH:  Objection.  He's asked that several

7     times and gotten answers.

8          MS. MEYER:  I'll allow it.

9  BY MR. MARZEC:

10    Q.    Mr. Houle?

11    **A.    Okay.  I understand now.**

12    Q.    Okay.  Let's move on.  Mr. Houle, 9197-5904 Quebec,

13 Inc., as of January 2012 held a judgment against whom?

14    **A.    Mr. Kosachuk.**

15    Q.    And what, if anything, did Quebec do with that

16 judgment in Chester County, Pennsylvania?

17    **A.    Would you repeat.**

18    Q.    What, if anything, did Quebec do with that judgment

19 against Mr. Kosachuk in Chester County, Pennsylvania?

20    **A.    It say in the charging order, holding against**

21 **collection.**

22    Q.    And what did, if anything, the charging order permit

23 Quebec to do as far as you understand it?

24    **A.    (Unintelligible).**

Page 65

1          COURT REPORTER:  I'm sorry?

2          THE WITNESS:  I'm sorry.  I'm just taking time

3      to think about it.  Take over the management and

4      the --

5          COURT REPORTER:  I'm sorry?  Sir, could you

6      start your answer again, please.

7  BY MR. MARZEC:

8      Q.   Slowly.

9      **A.   Take over the management and the (unintelligible).**

10         COURT REPORTER:  I can't understand you.  Could

11     you say it again, please.

12         THE WITNESS:  The purpose is to take over the

13     management and the economics life of Mr. Kosachuk and

14     NLG as well as change what the charging order was

15     that was obtained in February 2012.

16  BY MR. MARZEC:

17     Q.   And Mr. Houle, did Quebec require a judgment against

18  NLG, LLC, in order to obtain a charging order against Mr.

19  Kosachuk --

20     **A.   No.**

21     Q.   -- as far as you know?

22         MR. MARZEC:  I have no more questions.  It's

23     very difficult to communicate with this witness.

24         MR. SMITH:  I have one or two others.  This is

Page 66

1     Ed Smith.

2                         EXAMINATION

3     BY MR. SMITH:

4        Q.   How much did Mr. Kosachuk -- how much was the

5     judgment against Mr. Kosachuk that was obtained in New

6     York?

7        **A.   $95,000.**

8        Q.   And that was assigned to somebody else, wasn't it,

9     that judgment?

10            MR. DONATELLI:  Objection.  When?  Where?

11            MR. SMITH:  I'll withdraw that question.

12    BY MR. SMITH:

13       Q.   New question.  Why did you satisfy a judgment

14    against Ms. Hazan for over a million dollars when the debt of

15    Mr. Kosachuk was $95,000?

16       **A.   Hold on.**

17            MR. DONATELLI:  Hold on.  I have an objection to

18        that question.

19            MR. MARZEC:  I think this is a valid objection.

20            MS. MEYER:  I'm sorry.  I'm not hearing

21        somebody.

22            MR. MARZEC:  I'm sorry.  I spoke at the same

23        time.  I apologize.

24            MR. DONATELLI:  This is Guy.  I have an

142

Page 67

1      objection to the form of that question.

2          MR. MARZEC:  And I second that objection.

3          MS. MEYER:  Restate the question.

4   BY MR. SMITH:

5      Q.  You obtained an assignment of the judgment against

6   Mr. Kosachuk for approximately $95,000; correct?

7      **A.   Yes.**

8          MR. MARZEC:  Objection.  That is

9      mischaracterizing the witness' testimony.

10          MR. SMITH:  That's exactly what he just said.

11          MS. MEYER:  I thought -- let the reporter read

12      back the answer to the prior question.

13          MR. MARZEC:  The objection is asked and

14      answered.

15   BY MR. SMITH:

16      Q.  After you obtained that judgment against Mr.

17   Kosachuk for approximately $95,000, you later, on behalf of

18   NLG, satisfied a judgment against Elizabeth Hazan for over a

19   million dollars; isn't that correct?

20      **A.   Yes.**

21      Q.  Why did you satisfy that judgment worth over a

22   million dollars for a $95,000 debt?

23      **A.   The promise to pay me $200,000 in exchange of**

24   **satisfying the judgment against her.**

143

1    Q.   The charging order permitted you to attach any

2  interest of Mr. Kosachuk in NLG in payment of the $95,000;

3  isn't that correct?

4    **A.   I don't --**

5        MR. MARZEC:  Objection.  The document speaks for

6      itself.

7        MS. MEYER:  This is his understanding of the

8      document.  Overruled.

9        MR. MARZEC:  Go ahead, Mr. Houle.

10       THE WITNESS:  I don't understand the question, I

11     think.

12 BY MR. SMITH:

13   Q.   You got a charging order, and that allowed you to

14 attach anything owned by Mr. Kosachuk and NLG in order to

15 satisfy his debt of $95,000; correct?

16       MR. MARZEC:  I have to object.  This

17     mischaracterizes the document and his testimony.  I

18     could explain it further.  I just don't want to --

19       MS. MEYER:  Overruled.  You can clarify with

20     questions of your own.

21 BY MR. SMITH:

22   Q.   Do you want me to repeat the question, sir?

23   **A.   Yes.**

24   Q.   What's your understanding as to what the charging

Page 69

1    order allowed you to do?

2        **A.    Yes, to take over NLG.**

3        Q.    Take over NLG and then do what?

4        **A.    Replace Kosachuk and NLG.**

5        Q.    And was that for the purpose of getting payment of

6    the $95,000?

7        **A.    No.**

8        Q.    What was the purpose then?

9        **A.    (No response.)**

10       Q.    What was your purpose in taking over NLG?

11       **A.    Because I wanted to make the $200,000.**

12       Q.    Was that your only reason?

13       **A.    Yes, for my business decision.**

14       Q.    And it was Elizabeth Hazan who was going to pay you

15   the $200,000?

16       **A.    Yes.**

17       Q.    And she hasn't paid you that yet?

18       **A.    No.**

19       Q.    Has she agreed to pay you on a particular date?

20       **A.    I already respond to that.**

21       Q.    Well, would you please repeat it.

22           MR. MARZEC:  Objection.  Asked and answered.

23   Witness is right.

24           MS. MEYER:  I'm sorry.  What?

Page 70

1        MR. SMITH:  I don't believe that question was

2    ever asked.

3        MR. MARZEC:  Objection.  Asked and answered.

4    The question is when is the payment due.

5        MS. MEYER:  Overruled.

6   BY MR. SMITH:

7    Q.   When is she going to pay you the $200,000?

8    **A.   Over the next two -- next 24 months.**

9    Q.   In a lump sum or in monthly payments?

10   **A.   (No response.)**

11   Q.   Is she going to pay you all at once, or is she going

12   to pay it over time?

13   **A.   Wait a moment.**

14       MR. MARZEC:  I didn't get that.

15       MS. MEYER:  "Wait a moment".

16       THE WITNESS:  She won't pay me any more since

17   the judgment's been cancelled by the --

18   BY MR. SMITH:

19   Q.   Hold the phone up to your mouth and answer the

20   question, please.  Go ahead.  Now say that again.

21   **A.   She won't pay me any more now.**

22   Q.   Why?

23   **A.   Because the action -- the judgment's been cancelled.**

24   Q.   What has been cancelled?

146

1      A.    I don't -- because the judgment of NLG came back

2  against her.   Hear?

3      Q.    I'm sorry.  You have to say that again.  I don't

4  understand your answer.

5      A.    Because -- she won't pay any more because the

6  judgment of NLG came back against her.

7      Q.    What do you mean it came back against her?

8      A.    I mean, it was going and now it was no more.  You

9  have the document.  You know all these answers.

10      Q.    Was there a written agreement between you and

11  Elizabeth Hazan with regard to that $200,000 payment?

12      A.    Yes.

13      Q.    Who prepared that agreement?  Was it prepared by a

14  lawyer?

15      A.    I did.

16      Q.    You prepared it?  And do you have it?

17      A.    No, not with me.

18      Q.    Where is it?

19      A.    I don't remember where I put it.

20      Q.    Did you prepare it on the computer?

21      A.    No.

22      Q.    How did you prepare it?

23      A.    I don't remember.

24      Q.    Did you handwrite it?

Page 72

1    **A.    (No response.)**

2    Q.    Did you write it out longhand on a piece of paper?

3         MR. MARZEC:  I think I'm going to object.  The

4    witness already gave an answer that he -- well --

5         MS. MEYER:  I'm going to view these questions as

6    trying to refresh the witness' recollection.

7         MR. DONATELLI:  Why don't we have a little bit

8    of a break.  I have folks coming at 1:00 today.

9    They're in my conference room.  May I go out and tell

10   them that I'll be another 10 or 15 minutes?

11        MR. SMITH:  I'm almost done.

12        MS. MEYER:  How much longer do we have?

13        MR. SMITH:  One or two questions, and I'm done.

14   I just want to find out where the agreement is.

15   BY MR. SMITH:

16   Q.    Did you write the agreement in longhand on a piece

17   of paper with a pen or pencil?

18   **A.    No.  The computer -- I don't remember the place.**

19   Q.    I'm sorry.  I didn't understand what you said.  Hold

20   the phone up, please.

21   **A.    I think I prepare it on a computer.**

22   Q.    And you still have the same computer?

23   **A.    No.**

24   Q.    Where is that computer?

148

Page 73

1      **A.    It broke.**

2      Q.   Did you give a copy of that agreement to any

3  attorney?

4      **A.    I don't recall.**

5      Q.   Did you give the agreement to Ms. Hazan?

6      **A.    I'm sure.**

7      Q.   Did she sign the agreement?

8      **A.    Yes.**

9      Q.   Will you ask her for a copy of it back?  Are you

10  willing to do that?

11          MR. MARZEC:  I have to object.  That's not a

12      proper request to the witness.  You can only ask

13      questions of the witness and not ask the witness to

14      do something.

15          MS. MEYER:  If you want to ask for a production

16      of it from -- I guess you'd have to ask for it from

17      Hazan or subpoena it from Hazan, unless the witness

18      is willing to ask for it.  If he is, it's a fair

19      question.  I don't know how you will enforce it.

20  BY MR. SMITH:

21      Q.   Are you willing to ask Ms. Hazan for a copy of it?

22      **A.    Yes.**

23      Q.   And will you give it to your attorney when you get

24  it?

1     **A.    Yes.**

2            MR. SMITH:  Thank you.  That's all I have.

3            MR. MARZEC:  I have no more questions.  Darius

4     Marzec here.

5            MS. MEYER:  Anyone else?

6            MR. ROGERS:  I have three very brief questions.

7     This is Peter Rogers.

8                          EXAMINATION

9     BY MR. ROGERS:

10       Q.   Mr. Houle, do you understand that Mr. Marzec has

11    asked the Court for permission to stop being Quebec's

12    attorney?

13           MR. SMITH:  Objection.

14           MS. MEYER:  Overruled.

15           MR. SMITH:  Is he still there?

16    BY MR. ROGERS:

17       Q.   Mr. Houle, are you still there?

18       **A.    Yes.**

19       Q.   Let me ask it again.  I'll try to make it as simple

20    as possible.  Do you understand that Mr. Marzec has asked the

21    Court for permission to stop being Quebec's attorney?

22       **A.    Yes.**

23       Q.   Do you understand that Quebec will need to get a new

24    attorney?

Page 75

1    **A.    Yes.**

2    Q.    Do you give permission to Mr. Marzec to stop being

3    Quebec's attorney?

4    **A.    Pardon?   Can you repeat?**

5    Q.    Do you, as the shareholder of Quebec, give

6    permission to Mr. Marzec to stop being Quebec's attorney?

7    **A.    Yes.**

8         MR. ROGERS:   I don't have any other questions.

9         MS. MEYER:   Anyone else?

10        MR. MARZEC:   No.

11        MR. SMITH:   Ed Smith has none.

12        MR. DONATELLI:   Mr. Donatelli has none.

13        (Whereupon, the deposition was concluded at

14    1:05 p.m.)

15

16

17

18

19

20

21

22

23

24

1              C E R T I F I C A T I O N.

2                        I hereby certify that the

3    proceedings, evidence and objections noted are contained

4    fully and accurately in the notes taken by me in the hearing

5    of the foregoing matter, and that this is a true and correct

6    transcript of the same.

7

8

9

10

11

12

13

14

15

16        _____*Carol Shearer*_____

17              CAROL L. SHEARER, RPR

18              Stenographic Court Reporter

19              Notary Public.

20

21                        (THE FOREGOING CERTIFICATION OF THIS

22   TRANSCRIPT DOES NOT APPLY TO ANY REPRODUCTION OF THE SAME BY

23   ANY MEANS, UNLESS UNDER THE DIRECT CONTROL AND/OR SUPERVISION

24   OF THE CERTIFYING REPORTER.)

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

Address of Plaintiff:
3765 Saint-Kevin, Ste 9
Montreal, Quebec H3T 1H8
Canada

---

9197-5904 Quebec, Inc.

**Plaintiff,**

Index No.:

against

**JUDGMENT BY**
**CONFESSION**

NLG, LLC, a Delaware Limited Liability Company,

**Defendant.**

12101875

---

| | | |
|---|---|---|
| Amount Confessed | $5,000,000.00 | |
| Interest | $0.00 | $ 5,000,000.00 |
| | | |
| Costs by Statute | $15.00 | |
| Transcript | | |
| Fees on Execution | | |
| Satisfaction | | |
| Filing Fee | $210.00 | $ 5,000,225.00 |

The undersigned, Attorney at Law of the State of New York, affirms that he is the attorney of record for the Plaintiff herein and states that the disbursements specified are correct and true and have been or will necessarily be made or incurred herein and are reasonable in amount and affirms this statement to be true under the penalties of perjury.

Dated: February 16, 2012

**MARZEC LAW FIRM, PC**

I HEREBY CERTIFY THAT I HAVE
ADJUSTED THIS BILL OF COSTS AT
$ 225.00

FEB 22 2012

Norman Goodman
CLERK

Darius A. Marzec, Esq.
Attorney for Plaintiff
225 Broadway, Suite 3000
New York, NY 10007
(212) 267-0200

**FILED**

FEB 22 2012

COUNTY CLERKS OFFICE
NEW YORK

PLAINTIFF'S
EXHIBIT
H-9

153

JUDGMENT entered the ___22nd___ day of February, 2012

On the foregoing affidavit of Confession of Judgment made by the defendant herein,

sworn to the on the 16th day of February 2012,


**NOW, ON MOTION OF MARZEC LAW FIRM, PC,** attorney for plaintiff, it is


**ADJUDGED that** 9197-5904 Quebec, Inc. Plaintiff, with the address of 3765 Saint-

Kevin, Suite 9, Monteal, Quebec H3T 1H8, Canada, do recover of NLG, LLC,* Defendant, with

the address of 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309, the sum

of $5,000,000.00 with interest of $0.00, making a total sum of $5,000,000.00 together with

$225.00 costs and disbursements, as taxed by the clerk       amounting in all to the sum of

$5,000,225.00 and that the plaintiff have execution therefor.


Norman Goodman

CLERK

FILED

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

* Defendant's full name is:
NLG, LLC, a Delaware Limited
Liability Company

154

**SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK**

Index No. 101875/12

9197-5904 Quebec, Inc.,

Plaintiff,

against

NLG, LLC, *A DELAWARE LIMITED LIABILITY COMPANY,*

Defendant.

**AFFIDAVIT OF
CONFESSION OF
JUDGMENT**

**FILED**

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

**STATE OF NEW YORK**

**COUNTY OF NEW YORK** ss.:

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

The defendant hereby confesses judgment herein and authorizes entry thereof against defendant in the sum of $5,000,000.00.

Defendant's address is 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309; Defendant authorizes entry of judgment in New York County, New York, if said residence address is not in New York State.

This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Fraud and Abuse of Process.

**This affidavit, if made in connection with an agreement for the purchase for $1,500.00 or less of any commodities for any use other than a commercial or business use upon any plan of deferred payments whereby the price or cost is payable in two or more installments, was executed, subsequent to the time a default occurred in the payment of an installment thereunder.**

Sworn to before me this
16 day of Feb, 2012

9197-5904 Quebec, Inc. by Raymond Houle, Manager
MANAGER, NLG LLC

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/2013

NOTARY PUBLIC

155

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 101875/12

9197-5904 Quebec, Inc.,

Plaintiff,

against

NLG, LLC,

Defendant.

AFFIDAVIT OF
RAYMOND HOULE
REGARDING FACTS
SUPPORTING
JUDGMENT

STATE OF NEW YORK

COUNTY OF NEW YORK          ss.:

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Defendant has consistently abused its legal position by filing frivolous litigation documents, affidavits, pleadings, and motions, in and without the state, misrepresenting the truth concerning key facts regarding the mode of operation, personnel, employees, corporate documents and status of defendant; Defendant has failed to abide by rules of court with respect to discovery, disclosures and subpoena power of the court and counsel, and has made litigation process difficult, wasteful, and expensive to adversary/ies. All actions of Defendant constitute abuse of process and fraud upon the court and parties involved, who were unduly damaged by such fraudulent conduct and abuse of process by Defendant. The conduct of Defendant was intentional and malicious and calculated to cause additional expense, delay and harassment to defendant's adversaries; such conduct was illegal, improper, unethical and unnecessary to the administration of justice and process in these matters, giving Plaintiff a cause of action.

RAYMOND HOULE

Sworn to before me on the 21 day of February, 20 12.

Notary Public

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified In Queens County
Commission Expires 04/28/20 12

FILED

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

157

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No.

9197-5904 Quebec, Inc.,

Plaintiff,

against

NLG, LLC., A DELAWARE LIMITED LIABILITY
COMPANY,

Defendant.

---

### JUDGMENT BY CONFESSION
### AFFIDAVIT OF JUDGMENT BY CONFESSION

---

**ATTORNEYS FOR PLAINTIFF**
Marzec Law Firm, P.C.
Darius A. Marzec, Esq.
225 Broadway, Suite 3000
New York, NY 10007
212-267-0200

**FILED AND DOCKETED**
FEB 2 2 2012
AT 10:25 A M
N.Y., CO. CLK'S OFFICE

---

### CERTIFICATION

Pursuant to Section 130-1.1, the following documents are hereby certified:

By: Darius A. Marzec, Esq.
MARZEC LAW FIRM PC
Attorneys for Plaintiff
225 Broadway, Ste. 3000
New York, NY 10007
(212) 267-0200

DOCKETED BY

158

# EXHIBIT 9
FitzSimon Judgment

IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| In re: | : | DISMISSED CHAPTER 7 INVOLUNTARY |
| | : | |
| | : | CASE NO. 12-16438(JKF) *SEALED* |
| CHRISTOPHER KOSACHUK, a.k.a. | : | |
| CHRIS KOSACHUK | : | |
| | : | |
| | : | |

## ORDER AND FINAL JUDGMENT

Upon consideration of the Motion of Christopher Kosachuk to Declare this Involuntary Bankruptcy Petition a Bad Faith Filing, for Costs, Compensatory and Punitive Damages, to Seal the Records and Sanctions (the "Motion") with respect to 9197-5904 Quebec, Inc. and the arguments of counsel and evidence admitted at the trial conducted before this Court on March 18, 2015, it is **ORDERED, ADJUDGED AND DECREED**:

1.    The Motion is **GRANTED** as to 9197-5904 Quebec, Inc. without effect on the Motion as to the claims asserted and relief sought in the Motion against Darius A. Marzec, Esq.

2.    Final Judgment for monetary sanctions in the amount of $192,173.71 pursuant to 11 U.S.C. §§ 105(a) and 303(i)(1), representing the reasonable costs and attorneys' fees incurred by Mr. Kosachuk in this matter, is awarded to Chris Kosachuk against 9197-5904 Quebec, Inc., plus prejudgment interest and post judgment interest at the federal judgment rate of interest.

3.    Final Judgment for monetary sanctions in the amount of $_760,968.55_ pursuant to 11 U.S.C. § 303(i)(2)(B) and this Court's inherent powers, representing punitive damages, is awarded to Chris Kosachuk against 9197-5904 Quebec, Inc., plus prejudgment interest and post judgment interest at the federal judgment rate.

A TRUE COPY CERTIFIED
TO FROM THE RECORD
DATED: March 25, 2015
ATTEST: Virginia S. DeSurety
U.S. B...

118113055_1

160

4.     Final Judgment pursuant to 11 U.S.C. § 105(a) and this Court's inherent powers, is awarded to Chris Kosachuk that the indebtedness of Chris Kosachuk with respect to that certain judgment issued by the Supreme Court, County of New York, under Index No. 103896/2004 in favor of Eugenia Lorret and against Chris Kosachuk in the sum of $150,732.45 accounting for $108,293.54, plus interest of $41,388.91 from November 25, 2002, plus costs of $1,050, and which judgment was thereafter modified and reduced on May 12, 2008 to the sum amount of $48,293.54, plus costs of $1,050, plus interest from November 25, 2002, and which judgment was assigned to 9197-5904 Quebec, Inc. on December 15, 2009 by Assignment of Judgment, and which judgment was further assigned to SRS Techonologies Professionals, LLC by Assignment of Judgment, dated February 10, 2014, Index No. 103896/2004, and Corrected Assignment of Judgment, dated February 10, 2014, is hereby cancelled nunc pro tunc to July 6, 2012.

5.     This Final Judgment may be recorded as a matter of public record.

6.     This Final Judgment is effective immediately upon entry and this Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and Final Judgment.

7.     Chris Kosachuk shall be entitled to writs of execution and all other legal process to enforce this Final Judgment permitted by Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure and applicable law.

March 24th 2015

BY THE COURT:

The Honorable Jean K. FitzSimon
United States Bankruptcy Judge

A TRUE COPY CERTIFIED
TO FROM THE RECORD
DATED: March 25, 2015
ATTEST: Eugenia S. diBuono
Deputy Clerk
U.S. Bankruptcy Court

# EXHIBIT 10
Third Circuit Judgment and Opinion

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-2216

_____

IN RE: JOHN DOE,

Involuntary Petitioner

v.

9197-5904 QUEBEC, INC.,

Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:15-cv-04870)
District Judge:  Hon. Wendy Beetlestone

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 15, 2018

_____

Before:  JORDAN, SHWARTZ and KRAUSE, Circuit Judges.

_____

JUDGMENT

_____

This case came to be considered on the record from the United States District

Court for the Eastern District of Pennsylvania and was submitted pursuant to Third

Circuit L.A.R. 34.1(a) on March 15, 2018.

On consideration whereof, it is now hereby ORDERED and ADJUDGED by this

Court that the Order of the District Court entered on April 18, 2017 is hereby

AFFIRMED.  Costs taxed against Appellant.  All of the above in accordance with the

Opinion of this Court.

ATTEST:

s/ Patricia S. Dodszuweit
Clerk

Dated:  March 15, 2018

OFFICE OF THE CLERK

**PATRICIA S. DODSZUWEIT**

**CLERK**



Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇꜱ Cᴏᴜʀᴛ ᴏꜰ Aᴘᴘᴇᴀʟꜱ

FOR THE THIRD CIRCUIT

21400 UNITED STATES COURTHOUSE
601 MARKET STREET
PHILADELPHIA, PA 19106-1790

Website: www.ca3.uscourts.gov

TELEPHONE

215-597-2995

March 15, 2018

John Doe
N/A

Todd M. Mosser
1500 John F. Kennedy Boulevard
Two Penn Center Plaza
Suite 1723
Philadelphia, PA 19102

In re: John Doe
Case Number: 17-2216
District Case Number: 2-15-cv-04870

ENTRY OF JUDGMENT

Today, **March 15, 2018** the Court entered its judgment in the above-captioned matter pursuant to
Fed. R. App. P. 36.

If you wish to seek review of the Court's decision, you may file a petition for rehearing. The
procedures for filing a petition for rehearing are set forth in Fed. R. App. P. 35 and 40, 3rd Cir.
LAR 35 and 40, and summarized below.

Time for Filing:
14 days after entry of judgment.
45 days after entry of judgment in a civil case if the United States is a party.

Form Limits:
3900 words if produced by a computer, with a certificate of compliance pursuant to Fed. R. App.

P. 32(g).
15 pages if hand or type written.

<u>Attachments</u>:
A copy of the panel's opinion and judgment only.
Certificate of service.
Certificate of compliance if petition is produced by a computer.
No other attachments are permitted without first obtaining leave from the Court.

Unless the petition specifies that the petition seeks only panel rehearing, the petition will be construed as requesting both panel and en banc rehearing. Pursuant to Fed. R. App. P. 35(b)(3), if separate petitions for panel rehearing and rehearing en banc are submitted, they will be treated as a single document and will be subject to the form limits as set forth in Fed. R. App. P. 35(b)(2). If only panel rehearing is sought, the Court's rules do not provide for the subsequent filing of a petition for rehearing en banc in the event that the petition seeking only panel rehearing is denied.

A party who is entitled to costs pursuant to Fed.R.App.P. 39 must file an itemized and verified bill of costs within 14 days from the entry of judgment. The bill of costs must be submitted on the proper form which is available on the court's website.

A mandate will be issued at the appropriate time in accordance with the Fed. R. App. P. 41.

Please consult the Rules of the Supreme Court of the United States regarding the timing and requirements for filing a petition for writ of certiorari.

Very truly yours,
Patricia S. Dodszuweit, Clerk

By: <u>s/ Marianne/arr</u>, Legal Assistant
Direct Dial: 267-299-4911

<div align="right">**NOT PRECEDENTIAL**</div>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2216
_____

IN RE: JOHN DOE,
                    Involuntary Petitioner

v.

9197-5904 QUEBEC, INC.,
                    Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:15-cv-04870)
District Judge: Hon. Wendy Beetlestone
_____

Submitted under Third Circuit L.A.R. 34.1(a)
March 15, 2018
_____

Before: JORDAN, SHWARTZ, and KRAUSE, <u>Circuit Judges</u>.

(Filed: March 15, 2018)

_____

OPINION[*]
_____

SHWARTZ, <u>Circuit Judge</u>

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

9197-5904 Quebec, Inc. ("Quebec") appeals, for the second time, from an order denying Quebec's motion for post-judgment relief under Federal Rule of Civil Procedure 60(b)(1). Because the District Court did not abuse its discretion in denying such relief, we will affirm.

I

Quebec filed an involuntary bankruptcy petition against John Doe, which the Bankruptcy Court dismissed. Doe then filed a motion asking the Bankruptcy Court to declare Quebec's petition to be in bad faith and for damages. Quebec failed to appear at the hearing on the motion allegedly due to the then-hospitalization of Quebec's representative, and on March 24, 2015, the Bankruptcy Court granted the motion and awarded approximately $1 million in punitive damages. Quebec then retained its current counsel. Twenty-one days after the appeal deadline passed, Quebec sought an extension of time for filing the appeal, asserting that it did not receive a copy of the Bankruptcy Court's March 24, 2015 order. The Bankruptcy Court denied the extension request. Quebec appealed that ruling to the District Court, and that same day, it received notice that it needed to file a designation of portions of the Bankruptcy Court record for the appeal by September 8, 2015. Quebec failed to do so, and the District Court dismissed the appeal on September 30, 2015 without an opinion. Quebec asserts that it failed to timely file the designation due to its counsel's erroneous calendaring of the deadline as October 22, 2015.

On October 20, 2015, Quebec filed its designation of record and a motion for post-judgment relief under Federal Rules of Civil Procedure 59(e) and 60(b)(1) seeking to

vacate the District Court's September 30, 2015 dismissal of the appeal.  The District

Court denied the motion as "untimely" without an opinion.  Quebec filed a motion for

reconsideration under Rule 59(e) which the District Court also denied without an opinion.

Quebec appealed.  We vacated the District Court's order denying Quebec's second Rule

59(3) motion because the District Court did not analyze whether Quebec's prior Rule

60(b) motion was timely filed.  In re Doe, 681 F. App'x 106, 108-09 (3d Cir. 2017) (not

precedential).  We remanded to allow the District Court to determine the motion's

timeliness and, if timely, consider the merits of the motion under Pioneer Investment

Services Company v. Brunswick Associates Limited Partnership, 507 U.S. 380, 395

(1993).  Id. at 109.

On remand, the District Court again denied Quebec's Rule 59(e) motion, finding

that the motion's timeliness was "questionable" and, even if timely, the prior Rule 60(b)

motion nevertheless failed on the merits because the Pioneer factors demonstrated that

Quebec had not shown "excusable neglect" warranting Rule 60(b)(1) relief.  App. 10-14.

Quebec appeals.

II[1]

---

[1] The District Court had jurisdiction under 28 U.S.C. § 158(a)(1).  Our Court has jurisdiction pursuant to 28 U.S.C. § 1291.  Doe argues that this appeal is untimely and that we therefore lack appellate jurisdiction.  See Doe's June 12, 2017 Mot. to Dismiss ¶ 10.  Doe is mistaken.  The District Court entered its order denying Quebec's Rule 60(b) motion on April 18, 2017, and Quebec filed its notice of appeal on May 18, 2017, which is within the 30-day timeframe set forth in Fed. R. App. P. 4(a)(1)(A).  See also Fed. R. App. P. 6(b)(1) (applying Rule 4(a)(1)(A) to bankruptcy appeals).  Therefore, this appeal is timely, and Doe's motion to dismiss for lack of appellate jurisdiction is denied.

We review a district court's order denying a Rule 60(b)(1) motion for abuse of discretion, except with respect to issues of law, over which we exercise plenary review. McBride v. Int'l Longshoremen's Ass'n, 778 F.3d 453, 458 (3d Cir. 2015). An abuse of discretion occurs where the district court's order "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact" or where "no reasonable person would adopt the district court's view." In re Cendant Corp. PRIDES Litig., 235 F.3d 176, 181 (3d Cir. 2000) (citation and internal quotation marks omitted).

Under Rule 60(b)(1), a district court may relieve a party from an order if the order resulted from "excusable neglect."[2] Fed. R. Civ. P. 60(b)(1). The question of whether a party's "neglect is 'excusable' is essentially an equitable one, in which courts are to take into account all relevant circumstances surrounding a party's failure to file.'" George Harms Constr. Co. v. Chao, 371 F.3d 156, 163 (3d Cir. 2004) (citation omitted). In making this determination, courts consider: (1) "the danger of prejudice," (2) "the length of the delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant," and (4) "whether the movant acted in good faith." Pioneer, 507 U.S. at 395. "[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute

---

[2] Rule 60(b) motions "must be made within a reasonable time" and "no more than a year after the entry of the judgment" from which relief is sought. Fed. R. Civ. P. 60(c)(1). Quebec does not challenge the District Court's conclusion that it was "questionable" whether the motion was made within a reasonable time.

'excusable' neglect," but excusable neglect "is not limited strictly to omissions caused by circumstances beyond the control of the movant."  Id. at 392.

The District Court applied the Pioneer factors, found that Quebec's failure to timely file a designation of record for its appeal—which resulted in the dismissal of the appeal—was not attributable to excusable neglect, and denied Quebec's Rule 60(b)(1) motion.[3]  The District Court's ruling was not an abuse of discretion.

First, the reason for the delay weighs against finding excusable neglect.  Quebec's counsel concedes that he had notice of the September 8, 2015 deadline for filing the designation of record but explains that the deadline was mis-calendared.  The District Court aptly found that counsel's oversight could have been prevented through effective office procedures and reasonable diligence on the part of counsel in checking the bankruptcy docket.  See Ragguette v. Premier Wines & Spirits, 691 F.3d 315, 322, 326, 328-31 (3d Cir. 2012) (concluding no excusable neglect based primarily on the reason for the delay factor where counsel's 29-day delay was caused by poor office practices,

---

[3] Quebec argues that the factors in Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863 (3d Cir. 1984), support relief.  However, the Poulis framework applies when a district court considers dismissing a case before trial.  Quebec does not challenge the dismissal of its involuntary bankruptcy petition against Doe but instead seeks review of a post-judgment order—the bankruptcy court's ruling imposing damages for Quebec's bad faith filing of the petition.  See Roberts v. Ferman, 826 F.3d 117, 123 n.5 (3d Cir. 2016) (stating that a district court must consider the Poulis factors before dismissing a case for failure to prosecute but no Poulis analysis is necessary when the district court "dismisses a post-trial motion"); Knoll v. City of Allentown, 707 F.3d 406, 408-11 (3d Cir. 2013) (holding that Poulis does not apply in the post-trial context); see also George Harms, 371 F.3d at 163 (applying the Pioneer factors to a Rule 60(b)(1) motion).  Because Poulis does not apply in the post-judgment context, we reject Quebec's argument that the Poulis factors support its request for relief.

5

explaining that counsel should have discovered the error earlier, and noting authority

from another circuit which held that counsel's mis-calendaring was not excusable); Nara

v. Frank, 488 F.3d 187, 193-94 (3d Cir. 2007), as amended (June 12, 2007) (holding no

excusable neglect under Rule 60(b) where an attorney would have received notice of the

order he untimely sought to challenge had he complied with the standing order to register

with the electronic filing system).  Moreover, the District Court correctly observed that it

was "difficult to excuse" counsel's incorrect recording of the September 8 deadline as

October 22, "nearly two months after he filed the notice of appeal (and received the email

notification)" and far beyond the fourteen-day deadline, in light of "the appellate practice

[Quebec's counsel] professes to maintain."  App. 11-12.  In addition, the District Court

correctly rejected Quebec's argument that it could not be held responsible for its

counsel's errors given the Supreme Court's clear statement that "clients must be held

accountable for the acts and omissions of their attorneys," Pioneer, 507 U.S. at 396.

Second, the District Court did not abuse its discretion in finding that Quebec's

delay prejudiced Doe and had a negative impact on judicial proceedings because "redress

for the harm [to Doe] caused by Quebec's filing of an involuntary bankruptcy petition . . .

has now been delayed for nearly five years," and the delay "undermin[ed] the expeditious

administration of this litigation, which has already been protracted as a result of Quebec's

dilatoriness."  App. 13.  The District Court further noted that Quebec's delay was another

example of its bad faith conduct exhibited throughout the underlying bankruptcy

proceeding.  Quebec "fail[ed] to cooperate with [Doe], fail[ed] to appear at hearings, and

fail[ed] to appear at trial." App. 12-14 (citing <u>In re Kosachuk</u>, Bankr. No. 12-16438, slip op. (Bankr. E.D. Pa. Mar. 24, 2015)).

Although Quebec's present counsel was retained after the Bankruptcy Court issued its decision on Quebec's bad faith filing of the bankruptcy petition, reasonably diligent counsel entering at that late stage of the litigation would have reviewed the record, observed the history of dilatoriness and prior finding of bad faith, and ensured that future filings complied with all applicable rules and orders. <u>See</u> <u>In re Cendant Corp. PRIDES Litig.</u>, 235 F.3d at 184; <u>see also</u> <u>In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.</u>, 496 F.3d 863, 867 (8th Cir. 2007) (concluding lack of good faith where a party had a history of delay). Therefore, the District Court did not abuse its discretion in concluding that Quebec has not shown excusable neglect that would entitle it to relief under Rule 60(b)(1).

<div align="center">III</div>

For the foregoing reasons, we will affirm.

# EXHIBIT 11
The Foreclosure Order

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO.: 11-42770-CA 02

NLG, LLC,

       Plaintiff,

v.

ELIZABETH HAZAN; an individual;
UNKNOWN SPOUSE OF ELIZABETH HAZAN;
an individual; 6913 VALENCIA, LLC,
a Florida Limited Liability Corporation;
J.P. MORGAN CHASE BANK, N.A.;
a foreign Corporation, FISHER ISLAND
COMMUNITY ASSOCIATION, INC.; a Florida
Non Profit Corporation; VALENCIA ESTATES
HOMEOWNERS ASSOCIATION, INC., a Florida
Non Profit Corporation; and JOHN DOE and
JANE DOE, individually, as unknown Tenants
in possession of the Subject Property

       Defendants

_____/

## ORDER GRANTING FORECLOSURE

THIS ACTION came before the Court on October 14, 2015, on Plaintiff's Second
Amended Motion for Judgment of Foreclosure and pursuant to the Florida Rules of Civil
Procedure and the opinion of the Third District Court of Appeal, the Court hereby FINDS,
ORDERS AND ADJUDGES as follows:

The history of the litigation between the parties was set out in detail when the matter went up on appeal to the Third District. The facts and procedural history recited in the opinion constitute the law of the case. In its opinion, the Third District stated as follows:

### Facts and Procedural Background

It is undisputed that NLG sold a home on Fisher Island to Ms. Hazan in 2007 for $5,100,000.00, receiving a purchase money note and mortgage on the residence from Ms. Hazan for $1,275,000.00 of that amount. The note and mortgage required an instalment payment of $300,000.00 one month after the sale, and the note was to mature six months after the sale.

When the required payments were not forthcoming, NLG filed a lawsuit for the collection of the promissory note in the Miami-Dade circuit court. A settlement agreement was entered into, but required payments again were not made. In April 2008, and in accordance with the settlement agreement, a default final judgment on the promissory note was entered against Ms. Hazan and in favor of NLG for $1,618,071.29, plus post-judgment interest. That judgment was recorded on May 2, 2008. The final judgment was affirmed by this Court. *Hazan v. NLG, LLC*, 995 So. 2d 504 (Fla. 3d DCA 2008). Ms. Hazan then obtained new counsel and moved to vacate the judgment on the promissory note. The motion was denied and Ms. Hazan's further appeal was dismissed by this Court. *Hazan v. NLG, LLC*, 19 So. 3d 319 (Fla. 3d DCA 2009).

NLG sought and obtained a sheriff's deed to the Fisher Island property by enforcing its judgment. Ms. Hazan moved to vacate that deed, however, on the grounds that the property was her homestead. The then-assigned circuit judge entered an order in December 2008 "quieting title," although Ms. Hazan's motion and the record establish that the order merely extinguished the sheriff's deed. Later, and in this appeal as well, Ms. Hazan argued that the quiet title order also extinguished the lien of NLG's mortgage.

The parties nevertheless entered into a second settlement agreement, and Ms. Hazan made three of the specified payments before defaulting again in February 2009. After additional settlement negotiations were unavailing, NLG filed a complaint to foreclose its mortgage on the Fisher Island home in 2011. In 2012, NLG amended its complaint to add as a defendant the holder of a recorded junior mortgage for $2,000,000.00. NLG alleges that this mortgage was given by Ms. Hazan to a sham Florida limited liability company established by her mother.

The foreclosure case proceeded to non-jury trial, and the trial court entered a final judgment in favor of Ms. Hazan, incorporating the transcript of his post-trial ruling (January 2, 2013) into the final judgment "as though set forth herein." This appeal followed.

*NLG, LLC v. Hazan,* 151 So. 3d 455, 455-456 (Fla. 3d DCA 2014)

The Third District issued its mandate on November 25, 2014.

### *Status of the Pleadings After Mandate*

Since the mandate issued, Defendant Hazan has been trying to reopen the case to amend her answer and affirmative defenses, starting on December 2, 2014, with the filing by a non-party, Sean Neil Meehan, Hazan's husband, of a Satisfaction of Mortgage. NLG filed it Motion for Entry of Judgment of Foreclosure on January 6, 2015. On January 12, 2015, Attorney Ray Garcia entered an appearance for Hazan, and proceeded to file eleven Notices of Filing. He followed this with a 65-page Verified Motion to Dismiss and a 64-page Verified Memorandum in Opposition to Plaintiff Motion for Entry of Final Judgment. On March 3, 2015, this Court denied Hazan's Motion to Dismiss.

Mr. Garcia then filed a 21-page Motion to Take Judicial Notice of Court Orders, a 64-page Motion for Summary Judgment, followed by 17 Notices of Filing. On April 8, 2015, Mr. Garcia filed Hazan's Motion for Leave to File Amended Answer, seeking to raise seventeen (17) affirmative defenses.

On May 1, 2015, this Court denied Hazan's Motion to Amend. Thus, as the pleadings stand, there is no legal reason to deny NLG a judgment pursuant to the mandate of the Third District. In fact, it would be error to do otherwise. *See Bank of Am., N.A. v. Lukas*, 166 So. 3d 965, 966 (Fla. 4th DCA 2015), citing *Feltus v. U.S. Bank Nat'l Ass'n*, 80 So. 3d 375, 376 (Fla. 2d DCA 2012) ("A pleading filed in violation of rule 1.190(a) is a nullity, and the controversy should be determined based on the properly filed pleadings.").

3

At that same hearing on May 1, 2015, Attorney Mark Cohen appeared and argued to the Court on behalf of Selective Advisors Group, LLC, even though that entity had never moved to intervene. Although Mr. Cohen represented to this Court that he did not know what the relationship was between Hazan and Selective Advisors, it is undisputed that the sole Managing Member of Selective Advisors, Sean Neil Meehan, is Hazan's husband. After this Court denied Hazan's motion to amend, Selective still did not move to intervene. It was not until October 7, 2015, that Selective Advisors first moved to intervene. A comparison of the Motion to Intervene with Hazan's Proposed Answer and Affirmative Defenses reveals that the Motion is trying to inject the very same issues and arguments that this Court ruled could not be presented by Hazan. Nothing happened after May 1, 2015, that would change Selective's alleged rights to intervene, other than the fact that they filed a Satisfaction of Judgment of the New York Judgment by Confession discussed below. The motion may be rejected as a matter of law.

### *Intervention*

Under Florida Rule of Civil Procedure 1.230, a motion to intervene may be granted to "[a]nyone claiming an interest in pending litigation." Selective Advisors' motion fails to set forth what interest it is claiming in the pending litigation. The ability to intervene is a permissive right granted in the trial court's discretion. *De Sousa v. JP Morgan Chase, N.A.*, 170 So. 3d 928, 929 (Fla. 4th DCA 2015); *Andresix Corp. v. Peoples Downtown Nat'l Bank*, 419 So. 2d 1107, 1107 (Fla. 3d DCA 1982) ("We affirm the trial court's order denying the motion to intervene filed by Andresix Corporation upon a holding that Andresix, as a purchaser of

property which was then the subject of a mortgage foreclosure action and accompanying lis pendens by Peoples Downtown National Bank, was not entitled to intervene in such action.").

The Florida Supreme Court long ago explained the requirements for intervention.  In *Union Cent. Life Ins. Co. v. Carlisle*, 593 So. 2d 505 (Fla. 1992), the Court stated that "[t]he test to determine what interest entitles a party to intervene is set forth in *Morgareidge v. Howey*, 75 Fla. 234, 238-39, 78 So. 14, 15 (1918):

> [T]he interest which will entitle a person to intervene . . . must be in the matter in litigation, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment. In other words, the interest must be that created by a claim to the demand in suit or some part thereof, or a claim to, or lien upon, the property or some part thereof, which is the subject of litigation."

Carlisle, 593 So. 2d at 507.

A careful review of the motion to intervene does not disclose that Selective has any interest in the litigation.  The Wherefore Clause merely requests intervention.  But if Selective is trying to collect on the Judgment by Confession, it is undisputed that the judgment has been satisfied.  Selective's efforts to intervene are a transparent attempt by Hazan's husband, not to assert its rights, but to obstruct the foreclosure of his wife's property.  To allow intervention by Selective would be an abuse of the intervention rule.

Furthermore, intervention would not achieve such an obstruction.  As the Third District recently stated in *State v. Fla. Workers' Advocates*, 167 So. 3d 500 (Fla. 3d DCA 2015), even if Selective were allowed to intervene, they would take "the procedural posture of the case as it stood when they were allowed to intervene." *Id.* at 505, *citing Omni Nat'l Bank v. Ga. Banking Co.*, 951 So. 2d 1006 (Fla. 3d DCA 2007). Its intervention would be in "subordination to the then-existing claims in the lawsuit."  The court then quotes from *Envtl. Confed'n of Sw. Fla. Inc.*

*v. IMC Phosphates, Inc.,* 857 So. 2d 207, 211 (Fla. 1st DCA 2003): "Intervention is a dependent remedy in the sense **that an intervenor may not inject a new issue into the case**. . . . Furthermore, the rights of an intervenor are conditional in that they exist only so long as the litigation continues between the parties..." *Fla. Workers' Advocates*, 167 So. 3d at 505. (emphasis added).

Moreover, courts are very reluctant to grant intervention after a final judgment has been entered. The narrow exception to the rule prohibiting post-judgment intervention arises when the interests of justice so require. *De Sousa*, 170 So. 3d at 930, citing *Wags Transp. Sys., Inc. v. City of Miami Beach*, 88 So. 2d 751, 752 (Fla. 1956). In *De Sousa*, the court stated that the case did not align with the circumstances in *Wags* to meet the narrow exception to the general rule prohibiting post-judgment intervention, in part because *Wags* involved the subject matter of zoning, not foreclosure. *Id.*

### Substitution

The motion to intervene also requests to substitute the party plaintiff based on an alleged judicial assignment of a judgment in Case No. 07-19532 that dates back to a non-final order entered by Judge Peter Lopez (the "Lopez Order") on August 20, 2014. As will be discussed later, that judgment was judicially assigned while its enforceability was pending in an appeal of this case. It is significant that Selective waited over a year since the opinion of the Third District was announced to claim that NLG's interest in the litigation had been transferred and it was entitled to be substituted under Florida Rule of Civil Procedure 1.260(c).

This effort suffers from the same infirmity as Selective's efforts to intervene, as it is undisputed that there is no outstanding judgment against NLG. Nothing prevented Selective

6

from filing its motion after August 20, 2014, other than Mr. Meehan hoping that his wife would prevail in the pending appeal. The only new developments since August 20, 2014, are (1) the opinion reversing this case and the subsequent mandate, and (2) the Consent Judgment from the New York State Court that was domesticated in Miami-Dade County under Case No. 14-10475, which has been dismissed as the underlying judgment has been satisfied.

*Selective Advisors' Arguments*

Even though Selective Advisors should be denied leave to intervene as a matter of law, this Court will discuss the arguments raised by it. In a nutshell, Selective's motion seeks to argue that this action cannot proceed because NLG has lost all its rights against Hazan.

First, the motion seeks to have Selective substituted as party plaintiff, based on the Lopez Order" in Case No. 14-10475. Selective argues that this order allows it to stand in the shoes of NLG ostensibly to collect on a New York Judgment by Confession that had been domesticated in that case. However, on October 1, 2015, the case was dismissed by Judge Lopez, stating: "It appearing the judgment has been satisfied of record, this cause is dismissed & no further proceeding will be taken." Because it is undisputed that the underlying judgment has been satisfied and the Florida case domesticating that judgment has been dismissed, Selective's right to stand in the shoes of NLG have been likewise extinguished.

Next Selective argues that a judgment entered in Case No. 07-19532 CA 11 was assigned to it in the Lopez Order. NLG had obtained a Default Final Judgment on April 28, 2008, in the amount of $1,618,071.29, against Hazan ("Default Judgment"). In the foreclosure action filed on December 21, 2011—long before the 2014 Judge Lopez domestication action—NLG sought to foreclose on the money due under the Default Judgment in both the initial complaint and the

7

amended complaint. In Paragraph 10 of the Amended Complaint that was tried on December 26 and 27, 2012, NLG pleaded the Default Judgment. In her Answer, Hazan's second and third affirmative defenses asserted that the Default Judgment was not owned by NLG. The sixth affirmative defense alleged that NLG improperly split its causes of action by obtaining a Default Judgment on the promissory note without pursuing a foreclosure at that time. The seventh affirmative defense was that NLG was forum shopping by filing a new action instead of proceeding under the same case in which it had obtained the Default Judgment. The eighth affirmative defense was that after obtaining the Default Judgment, NLG entered into a settlement agreement with Hazan that did not reserve the right to foreclose and now its only remedy was under the Default Judgment. The ninth affirmative defense was that NLG was limited to enforcing the Default Judgment in the division in which it was obtained.

The case went to trial on December 26 and 27, 2012, at the end of which Judge Eig entered judgment in favor of Hazan by way of a "Final Judgment for Defendant Elizabeth Hazan" dated February 8, 2013. That was the judgment which was appealed to the Third District. The District Court heard oral argument on July 14, 2014, and issued its opinion reversing the final judgment on September 3, 2014. It subsequently issued its mandate on November 25, 2014.

As can be seen from this chronology, at the time of the entry of the Lopez Order, there was no Default Judgment that could have been assigned, as that judgment had been subsumed into the final judgment in favor of Hazan. *See Geico Gen. Ins. Co. v. Paton*, 150 So. 3d 804, 808 (Fla. 4th DCA 2014) (stating that the final judgment subsumed an earlier order).

Even if the Default Judgment survived the Final Judgment in favor of Hazan, the issue of its enforceability was an integral part of the litigation and trial in this case, not a collateral matter. In fact, in its Answer Brief to the Third District, it was Hazan's first argument—that the trial court correctly found that NLG was limited to the remedy of its existing money judgment because of the doctrine of election of remedies. Clearly the enforceability of the Default Judgment was the central issue before the Third District after the filing of the Notice of Appeal on March 11, 2013. In fact, in its Analysis, this is the first issue discussed in the district court opinion: "First, NLG's prior suit on the promissory note and recordation of a judgment on the note was not an election of remedies precluding the later enforcement of the mortgage." *NLG, LLC v. Hazan*, 151 So. 3d 455, 456 (Fla. 3d DCA 2014).

It is well established that while an appeal is pending, the lower court may not enter orders that will deprive the appellate court of jurisdiction. During the appeal, the lower court's jurisdiction is limited to enforcing the judgment. *See Wassman v. Travelers Cas. & Sur. Co.*, 797 So. 2d 626, 631 (Fla. 5th DCA 2001) ("It is also clear that 'when a case has merged into a final judgment and an appeal has been perfected therefrom . . . jurisdiction in the trial court terminates, except as to enforcement of the judgment.'"), *citing State ex rel. American Home Ins. Co. v. Seay*, 355 So. 2d 822, 824 (Fla. 4th DCA 1978). *See also Waltham A. Condominium Asso. v. Village Management, Inc.*, 330 So. 2d 227, 229 (Fla. 4th DCA 1976) (stating that "the trial court is without power to finally dispose of the cause by dismissal or otherwise so as to in form or effect interfere with the power and authority of the appellate court."); *see also State ex rel. Schwartz v. Lantz*, 440 So. 2d 446, 448-449 (Fla. 3d DCA 1983) (stating that "Since *Waltham*, every district court in this state has, at least once, vacated a trial court order because

9

183

it altered a judgment on appeal.") (citing numerous cases). *And see Fulton v. Poston Bridge & Iron, Inc.,* 122 So. 2d 240, 242 (Fla. 3d DCA 1960) (quoting from Corpus Juris Secundum that "the lower court has no jurisdiction, pending an appeal by amendment of the record or proceedings or otherwise, to change the status of the case or to interfere with the rights of parties under the judgment or order."); *Fritz v. Sroczyk,* 202 So. 2d 796, 798 (Fla. 1st DCA 1967) ("Upon the filing of the notice of appeal the trial court lost jurisdiction to take any further action...").

It is axiomatic that this Court in whose division the foreclosure action had been filed since 2011, had no jurisdiction to judicially assign the Default Judgment during the appeal, as the validity and enforceability of the judgment was pending before the Third District.   Thus, while the foreclosure suit was pending before the Third District, the only proper remedy for Selective to pursue would have been to seek leave from the appellate court to relinquish jurisdiction for the purpose of judicially assigning the judgment.   Selective chose not to elect that remedy.

### The "New York Judgment by Confession"

The foreclosure action in this case was tried by Judge Eig on December 26 and 27, 2012. None of the nine affirmative defenses mentioned the New York Judgment by Confession. Hazan made a strategic decision not to try this issue.

It was not until April, 2014, that Quebec, Selective and Hazan started their efforts to enforce the aforementioned Consent Judgment from the New York State Court that was domesticated in Miami-Dade County under Case No. 14-10475.  It is undisputed that that the Domesticated New York Judgment has been dismissed as the underlying judgment has been

satisfied. On April 4, 2014, Selective Advisors Group LLC was incorporated in Delaware. Quebec filed the New York Judgment by Confession in Miami-Dade County on April 21, 2014. Shortly thereafter, on April 30, 2014, Quebec assigned the judgment to Selective.

On July 14, 2014, the Third District held oral argument where the issue of whether the mortgage was wiped out by NLG obtaining its Default Judgment entered on April 28, 2008, played a prominent part. Instead of moving the Third District to relinquish jurisdiction to assert the New York Judgment by Confession, or seeking to intervene in the foreclosure case, which was the older case in this division, Selective instead obtained the domestication Order on August 20, 2014.

The docket sheet in the New York Judgment by Confession case shows that NLG had already moved to vacate the judgment and had a hearing scheduled for August 6, 2014. The matter was adjourned to September 29, 2014; November 10, 2014; December 1, 2014; January 12, 2015; March 16, 2015; and to May 18, 2015. This court had repeatedly stayed ruling on this matter in order to allow the parties a chance to argue the Motion to Vacate the Judgment before the New York Court. On this last court setting, Selective, the judgment **creditor**, filed a bankruptcy petition two hours before the scheduled time, in the U.S. Bankruptcy Court for the Eastern District of New York, apparently using the bankruptcy stay to avoid the vacatur hearing before the New York State Court Judge on the Judgment by Confession. The bankruptcy petition was signed by the manager of Selective, Sean N. Meehan (Ms. Hazan's husband). The Court appointed Marc Pergament as Trustee for the Estate.

On July 1, 2015, the Trustee conducted an examination under oath of Mr. Meehan.[1] The sole creditor listed was Selective's prior attorney, Joseph Nierman, who was alleged to be owed $3,500. The sole asset was the Judgment by Confession, premised on an Affidavit signed by Raymond Houle who claimed to be president of Quebec while simultaneously acting as manager of NLG. "The Affidavit of Confession did not provide any additional information to substantiate the basis for the Judgment." (Affirmation, Par. 9). Mr. Meehan was placed under oath and he testified "that he had no knowledge of the underlying basis for the Judgment and that he claimed that no money was paid to Quebec for the Assignment of the Judgment, except there was an unspecified "deal" whereby [Selective] would pay a certain amount to the Assignor upon collection of the Judgment." (Affirmation, Par. 10).

Mr. Meehan also testified about the pending foreclosure of 6913 Valencia Drive, Fisher Island, Florida, which is also his residence. He disclosed that title is held by his wife, Elizabeth Hazan. The Trustee then stated in Paragraph 17: "As Mr. Meehan's testimony was not plausible with respect to the entry of the Order and Judgment [signed by Judge Jean K. FitzSimon in the Pennsylvania bankruptcy] nor with respect to the underlying Judgment [the Judgment by Confession], I believe that dismissal of this case with prejudice is appropriate..." The Trustee also found the excuse for the filing of the bankruptcy – the claim of Mr. Nierman for fees – to be "suspicious." (Affirmation, Par. 19).

In its motion to intervene, Selective states in Par. 27: "With respect to New York, NLG has failed to re-file or restore its motion to vacate Selective's Judgment, after Selective's

---

[1] The Trustee submitted an Affirmation in Support of a dismissal with prejudice in Case No. 815-72153-A736 which was the subject of a motion by NLG to take judicial notice and Hazan having filed no objection, the motion is hereby granted and the Affirmation is attached as Exhibit "A."

bankruptcy was dismissed on August 28, 2015, even though two months have elapsed from that date." What Selective leaves out is that NLG did indeed attempt to schedule once again on September 3, 2015, its motion to vacate the Judgment by Confession by way of letter to the presiding judge. This prompted a letter dated September 4, 2015, to the presiding judge from Selective's New York lawyer, James F. Vlahadamis. The letter stated that plaintiff had accepted payment in full satisfaction of the judgment, making it "unsuitable for this Court to entertain any application of NLG, LLC (such as one filed by letter on September 3, 2015) seeking to restore the motion to vacate the judgment as there currently exists no judgment to vacate and the matter remains moot."[2] At the hearing on NLG's motion for entry of a judgment based on the mandate of the Third District, Selective offered no explanation as to why it took from August 20, 2014, to September 4, 2015, for the judgment to be satisfied.

The New York Judgment by Confession may have been entitled to full faith and credit while it was an outstanding judgment. The judgment, however, has been satisfied. There is no judgment entitled to deference by the courts of Florida.

But even if the judgment was still outstanding, the U.S. Supreme Court has stated that "[a] judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). As the Trustee stated after conducting an examination under oath of Mr. Meehan, the Judgment by Confession was entered with Mr. Houle acting for both the plaintiff and the defendant. The records submitted by Selective in its motion to intervene shows that NLG received no notice or opportunity to be heard because

---

[2] The letter is attached as Exhibit "B."

Houle was acting for both Quebec and NLG. Without notice, a foreign court lacks personal jurisdiction, and the "foreign judgment need not be recognized." *Williams v. Cadlerock Joint Venture, L.P.*, 980 So. 2d 1241, 1243 (Fla. 4th DCA 2008).

By continuously postponing the hearing on NLG's motion to vacate before the New York court, NLG has never had a full and fair opportunity to litigate the issue of personal jurisdiction in the foreign court. *See Whipple v. JSZ Fin. Co., Inc.*, 885 So. 2d 933, 936 (Fla. 4th DCA 2004); *Williams*, 980 So. 2d at 1243; see also Stoll v. Gottlieb, 305 U.S. 165, 172-73, 59 S. Ct. 134, 83 L. Ed. 104 (1938) ("After a party has his day in court, with opportunity to present his evidence and his view of the law" as to jurisdiction, "a former judgment in a state court is conclusive" and not subject to collateral attack).

If a defendant has not had "the opportunity to contest jurisdiction, he may raise the issue subsequently in a proceeding brought to enforce the judgment." *Williams*, 980 So. 2d at 1243 (citation omitted). *See also Riskin v. Miklos*, 569 So. 2d 940, 941 (Fla. 3d DCA 1990) ("[W]here the jurisdictional issue is not fairly litigated in the initial court, the defendants are free to raise the question de novo in the jurisdiction in which enforcement of the judgment is attempted.").

14

*Conclusion*

For the foregoing reasons, the Second Amended Motion for Judgment of Foreclosure is hereby GRANTED. The Court will hereafter enter a Final Judgment of Foreclosure upon the presentation of updated affidavits.

ORDERED at Miami, Miami-Dade County, Florida, on this 1st day of December, 2015.

_____
Circuit Court Judge

MONICA GORDO
CIRCUIT COURT JUDGE

Judgment Prepared by:
Plaintiff's Counsel:
Juan Ramirez, Jr
Diaz, Reus & Targ, LLP
100 SE 2nd Street, Suite 3400
Miami, Florida 33131

Copies Furnished to:

Roger Slade, Esq.
Jonathan S. Goldstein, Esq.
Matthew David Glachman, Esq.
Mark Cohen, Esq.
Daniel A. Milian, Esq.
Bruce Jacobs, Esq.

# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

In Re:                                                      Chapter 7

Selective Advisors Group LLC,                               Case No. 815-72153-A736

        Debtor.                                            <u>Affirmation in Support</u>

---------------------------------------------------------X

        Marc A. Pergament, duly affirms under the penalties of perjury as follows:

        1.      I am an attorney admitted to practice law in the United States Court of Appeals for the Second Circuit and the United States District Court for the Eastern and Southern Districts of New York and am a member of Weinberg, Gross & Pergament LLP, attorneys for the Trustee.

        2.      I am also the Trustee of this Estate and am familiar with the facts and circumstances set forth herein.

        3.      This Affirmation is submitted in support of my request that the Court scheduling a hearing on shortened notice: (a) approving the dismissal of this bankruptcy case with prejudice; (b) authorizing the Debtor to pay Weinberg, Gross & Pergament LLP the sum of $6,500.00 for services rendered; and (c) such other and further relief that this Court deems just and proper.

        4.      On May 18, 2015, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The initial bankruptcy filing was a bare bones petition filed by the Debtor. The manager who signed the petition was Sean N. Meehan. Mr. Meehan failed to appear at the § 341(a) meeting scheduled for June 24, 2015. The Debtor's counsel appeared on that date and requested an adjournment of the 341(a) meeting.

191

5.     I directed the Debtor to file all necessary schedules and a Statement of Financial Affairs by June 30, 2015 and appear for an examination pursuant to § 341(a) on July 1, 2015.  A further request for an adjournment of the § 341(a) meeting was declined.

6.     On July 1, 2015, Mr. Meehan appeared for an examination with Debtor's counsel after the Debtor had filed the schedules and Statement of Financial Affairs, which were filed on June 30, 2015.

7.     My review of the file, schedules and documents that had been previously provided to me indicated that there are many facts that questioned the good faith filing by the Debtor in this Chapter 7 case.

8.     Specifically, the schedules revealed that the sole creditor of the Debtor was its former attorney, Joseph Nierman, and he was alleged to be owed the sum of $3,500.00. The Debtor's Schedule F indicated that it was a disputed claim.

9.      The Debtor's counsel disclosed that the Debtor was formed in August 2014 and its sole asset was a Judgment that it held by way of Affidavit of Confession of Judgment against NLG LLC in the sum of $5,000,000.00, plus interest.  The Judgment, however, was based on an Assignment by 9197-5904 Quebec Inc. to the Debtor of a Judgment that it had obtained against NLG LLC, which had been filed in the New York County Clerk's office on February 22, 2012.  A copy of the Assignment of Judgment is annexed hereto as Exhibit "A." However, that Judgment was premised on an Affidavit signed by Raymond Houle who claimed to be the president of 9197-5904 Quebec, Inc., and was also the manager of NLG LLC.  The Affidavit of Confession did not provide any additional information to substantiate the basis for the Judgment.  A copy of the Affidavit of Confession of Judgment of NLG LLC and Affidavit of Raymond Houle is annexed hereto as Exhibit "B."

2

10.     After applying the oath, I questioned Mr. Meehan at his § 341(a) meeting concerning the Judgment and he advised me that he had no knowledge as to the underlying basis for the Judgment and that he claimed that no money was paid by the Debtor to 9197-5904 Quebec, Inc. for the Assignment of the Judgment, except that there was an unspecified "deal" whereby the Debtor would pay a certain amount to the Assignor upon collection of the Judgment.

11.     As I questioned Mr. Meehan in depth at the § 341(a) meeting, it became apparent that the Judgment was the subject of a contentious dispute with NLG LLC. I reviewed certain public records and certain information which indicated that there is a pending foreclosure lawsuit in the State of Florida with respect to the real property known as 6913 Valencia Drive, Miami, Florida ("Miami Residence") and the Miami Residence was also Mr. Meehan's residence. Mr. Meehan disclosed that title to the Miami Residence was held by his wife, Elizabeth Hazan, and that she was in a dispute with NLG LLC concerning foreclosure of the Miami Residence.

12.     Mr. Meehan testified that he filed bankruptcy in the United States Bankruptcy Court for the Eastern District of New York because the place of business of this Debtor was 103 West Tano Road, Hampton Bays, New York ("Hampton Bays Residence"), which is the residence of Mr. Meehan's parents and he claims that he sometimes spends the summers at the Hampton Bays Residence, although he does not presently reside there.

13.     Thus, there is a question as to the validity of the venue selected by Mr. Meehan for this bankruptcy case.

14.     I was in communication with NLG LLC's counsel and he provided me with substantial information and documents, including documentation indicating that the United

States Bankruptcy Court for the Eastern District of Pennsylvania had previously determined that an involuntary bankruptcy proceeding that had been filed against Christopher Kosachuk was a bad faith filing and that Court determined that an award of monetary sanctions of $190,173.71 in favor of Mr. Kosachuk and against 9197-5904 Quebec, Inc. was warranted. A copy of that Order and Judgment of the Honorable Jean K. FitzSimon is annexed hereto as Exhibit "C."

15. Judge FitzSimon's Judgment also awarded sanctions against 9197-5904 Quebec, Inc. in the sum of $960,968.55.

16. The dispute with respect to the Judgment is evident.

17. As Mr. Meehan's testimony was not plausible with respect to the entry of the Order and Judgment nor with respect to the underlying Judgment, I believe that dismissal of this case with prejudice is appropriate so the Debtor and NLG LLC can continue their litigation in other forums.

18. NLG LLC had moved by order to show cause to vacate the Judgment that had been filed by 9197-5904 Quebec, Inc. and the bankruptcy was filed a couple of hours before the hearing to be heard by the Supreme Court of the State of New York, County of New York, on May 18, 2015 for the vacating of the Judgment as NLG LLC had not learned of that Judgment until 2015.

19. I inquired of Mr. Meehan as to the claim of Mr. Nierman and he explained that there was a dispute as to the amount owed and that reason for the bankruptcy filing was that Mr. Nierman was refusing to turnover his litigation file concerning the dispute with NLG LLC. I found that claim to be suspicious as the Debtor already had obtained an Assignment of Judgment of 9197-5904 Quebec, Inc. against NLG LLC and thus, the litigation file was of no import. Mr. Meehan was unable to provide any explanation.

4

20. For these reasons, I negotiated a resolution whereby this case is dismissed with prejudice and my firm is paid for services rendered. A copy of the Stipulation is annexed hereto as Exhibit "D."

21. I have requested a hearing on shortened notice as the Debtor would be benefited by a lengthy delay.

22. It is also requested that this Court waive the requirement of the filing of a memorandum of law as no novel issue of law is present with respect to the issues herein.

23. No prior application has been made to this or any other Court for the relief requested herein.

WHEREFORE, it is respectfully requested that this Honorable Court grant the Trustee's motion in its entirety and such other and further relief that this Court deems just and proper.

Dated: Garden City, New York
August 6, 2015

_____
Marc A. Pergament

5

195

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 101875/2012

-------------------------------------------------------------------x
9197-5904 QUEBEC INC
Plaintiff,

-against-

NLG LLC
Defendant.
-------------------------------------------------------------------

## ASSIGNMENT OF JUDGMENT

This indenture made the 30th day of April 2014, between 9197-5904 Quebec Inc a Canadian Corporation located at 5552 Queen Mary Road Suite #4, City of Hampstead, State of Quebec, Canada H3X 1V9 party of the first part, and Selective Advisors Group, LLC, located at 16192 Coastal Highway Lewes. Delaware 19958 County of Sussex, party of the second part,

WHEREAS, on the 22nd day of February,2012 a judgment was entered in the Supreme Court, County of NY, in favor of 9197-5904 Quebec Inc , and against NLG LLC, a Delaware Limited Liability Company located at 854 Pheasant Run Road, West Chester, PA in the sum of $5,000,000.00 plus interest from February 22nd 2012 plus costs of $225.00, and said judgment was duly entered in the office of the Clerk of the County of New York State, NY on the 22nd day of February 2012.

NOW THIS INDENTURE WITNESSETH, that the said party of the first part, in consideration of $10 and other valuable consideration to them duly paid has sold, and by these presents does assign, transfer and set over, unto the said party of the second part, Selective Advisors Group, LLC, its executors, administrators, and assigns, the said judgment and all sum or sums of money that may be had or obtained by means thereof, or on any proceedings to be had thereupon.

Also, the said party of the first part does hereby constitute and appoint the said party of the second part, its executors, administrators, and assigns, their true and lawful attorney irrevocable, with power of substitution and revocation, for the use and at the proper costs and charges of the said party of the second part, to ask, demand, and receive, and to obtain executions, and take all lawful ways for the recovery of the money due or to become due on said judgment and on payment to acknowledge satisfaction, or to discharge the same; and attorneys one or more under them for the purpose aforesaid, to make and substitute, and at pleasure to revoke; hereby ratifying and confirming all that their said attorney or substitute shall lawfully do in the premises. Also, the said party of the first part does covenant, that that they will not collect or receive the full payment of the judgment, or any part thereof, nor release or discharge the said judgment but will allow all lawful proceedings therein to be taken by the said party of the second part, saving the said party of the fist part harmless of and from any costs in the premises.. This assignment is made without recourse to the party of the first part in any event whatsoever.

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal the day and year first above written.

On behalf of 9197-5904 QUEBEC INC :

*Raymond Houle*

RAYMOND HOULE, president


## ACKNOWLEGEMENT

Province
~~State~~ of _____Quebec_____

County of ___D'Arcy McGee___ ss.:

On the __2__ day of __June__ in the year 2014, before me, Raymond Houle, personally appeared, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.


*Pierrette Tardif*
Notary Public

*Raymond Houle*
Raymond Houle


## CERTIFICATE OF CONFORMITY

I, Pierrette Tardif, a duly licensed notary public in the Province of Quebec, Canada, affirm under penalty of perjury and certify that I witnessed the signature of Raymond Houle as applied to the document annexed to this certificate, which was signed and dated on June 2/ 2014. The matter in which was signed was, and is, in accordance with, and conforms to, the laws for taking oaths at acknowledgments, in the Province of Quebec, Canada.

Dated: June 2/ 2014   *Pierrette Tardif*

NOTARY PUBLIC
NAME:

COMMISSAIRE À L'ASSERMENTATION
PIERRETTE
TARDIF
# 198836
POUR LE QUÉBEC MÉTROPOLITAIN

# EXHIBIT B

**SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK**

Address of Plaintiff:
3765 Saint-Kevin, Ste 9
Montreal, Quebec H3T 1H8
Canada

9197-5904 Quebec, Inc.

Plaintiff,

Index No.:

**JUDGMENT BY
CONFESSION**

against

NLG, LLC, a Delaware Limited Liability Company,

Defendant.

12101875

| | | |
|---|---|---|
| Amount Confessed | $5,000,000.00 | |
| Interest | $0.00 | $ 5,000,000.00 |
| Costs by Statute | $15.00 | |
| Transcript | | |
| Fees on Execution | | |
| Satisfaction | | |
| Filing Fee | $210.00 | $ 5,000,225.00 |

The undersigned, Attorney at Law of the State of New York, affirms that he is the

attorney of record for the Plaintiff herein and states that the disbursements specified are correct

and true and have been or will necessarily be made or incurred herein and are reasonable in

amount and affirms this statement to be true under the penalties of perjury.

Dated: February 16, 2012

MARZEC LAW FIRM, PC

I HEREBY CERTIFY THAT I HAVE
ADJUSTED THIS BILL OF COSTS AT
$ 225.00

FEB 2 2 2012

Norman Goodman
CLERK

Darius A. Marzec, Esq.
Attorney for Plaintiff
225 Broadway, Suite 3000
New York, NY 10007
(212) 267-0200

**FILED**

FEB 2 2 2012

COUNTY CLERKS OFFICE
NEW YORK

EXHIBIT A

200

JUDGMENT entered the _22nd_ day of _February_, 2012.

On the foregoing affidavit of Confession of Judgment made by the defendant herein,

sworn to the on the 16th day of February 2012,

**NOW, ON MOTION OF MARZEC LAW FIRM, PC,** attorney for plaintiff, it is

ADJUDGED that 9197-5904 Quebec, Inc. Plaintiff, with the address of 3765 Saint-

Kevin, Suite 9, Monteal, Quebec H3T 1H8, Canada, do recover of NLG, LLC, Defendant, with

the address of 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309, the sum

of $5,000,000.00 with interest of $0.00, making a total sum of $5,000,000.00 together with

$225.00 costs and disbursements, as taxed by the clerk amounting in all to the sum of

$5,000,225.00 and that the plaintiff have execution therefor.

_Norman Goodman_
CLERK

**FILED**

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

* Defendant's full name is:
NLG, LLC, a Delaware Limited
Liability Company

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 10187 5/12

9197-5904 Quebec, Inc.,

Plaintiff,

against

NLG, LLC, A Delaware Limited
Liability Company,

Defendant.

**AFFIDAVIT OF
CONFESSION OF
JUDGMENT**

FILED

FEB 22 2012

COUNTY CLERKS OFFICE
NEW YORK

STATE OF NEW YORK

COUNTY OF NEW YORK        ss.:

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

The defendant hereby confesses judgment herein and authorizes entry thereof against defendant in the sum of $5,000,000.00.

Defendant's address is 6499 North Powerline Road, Suite 304, Fort Lauderdale, Florida 33309; Defendant authorizes entry of judgment in New York County, New York, if said residence address is not in New York State.

This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Fraud and Abuse of Process.

This affidavit, if made in connection with an agreement for the purchase for $1,500.00 or less of any commodities for any use other than a commercial or business use upon any plan of deferred payments whereby the price or cost is payable in two or more installments, was executed, subsequent to the time a default occurred in the payment of an installment thereunder.

Sworn to before me this
1b day of Febny, 2012

9197-5904 Quebec, Inc. by Raymond Houle, Manager
MANAGER, NLG LLC

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified in Queens County
Commission Expires 04/28/2012

NOTARY PUBLIC

EXHIBIT A

202

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 10875/12

9197-5904 Quebec, Inc.,

Plaintiff,

against

NLG, LLC,

Defendant.

**AFFIDAVIT OF RAYMOND HOULE** REGARDING FACTS SUPPORTING JUDGMENT

STATE OF NEW YORK

COUNTY OF NEW YORK ss.:

Raymond Houle, being duly sworn, deposes and says; that deponent is the Manager and duly authorized agent of the defendant Limited Liability Company and is duly authorized to make this Affidavit on behalf of the LLC defendant herein.

This confession of judgment is for a debt justly due to the plaintiff arising from the following facts: Defendant has consistently abused its legal position by filing frivolous litigation documents, affidavits, pleadings, and motions, in and without the state, misrepresenting the truth concerning key facts regarding the mode of operation, personnel, employees, corporate documents and status of defendant; Defendant has failed to abide by rules of court with respect to discovery, disclosures and subpoena power of the court and counsel, and has made litigation process difficult, wasteful, and expensive to adversary/ies. All actions of Defendant constitute abuse of process and fraud upon the court and parties involved, who were unduly damaged by such fraudulent conduct and abuse of process by Defendant. The conduct of Defendant was intentional and malicious and calculated to cause additional expense, delay and harassment to defendant's adversaries; such conduct was illegal, improper, unethical and unnecessary to the administration of justice and process in these matters, giving Plaintiff a cause of action.

EXHIBIT A

RAYMOND HOULE

Sworn to before me on the 21 day of February, 20 12.

Notary Public

Darius A. Marzec
Notary Public State of New York
No. 02MA6186309
Qualified In Queens County
Commission Expires 04/28/20 12

FILED

FEB 22 2012

COUNTY CLERK'S OFFICE
NEW YORK

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK                                    Index No.

9197-5904 Quebec, Inc.,

                                       Plaintiff,

        against

NLG, LLC., A DELAWARE LIMITED LIABILITY
                 COMPANY,

                                       Defendant.

---

JUDGMENT BY CONFESSION
AFFIDAVIT OF JUDGMENT BY CONFESSION

---

ATTORNEYS FOR PLAINTIFF
Marzec Law Firm, P.C.
Darius A. Marzec, Esq.
225 Broadway, Suite 3000
New York, NY 10007
212-267-0200

FILED AND
DOCKETED
FEB 2 2 2012
AT     10:25 A   M
N.Y., CO. CLK'S OFFICE

---

CERTIFICATION

Pursuant to Section 130-1.1, the following documents are hereby certified:

By: Darius A. Marzec, Esq.
MARZEC LAW FIRM PC
Attorneys for Plaintiff
225 Broadway, Ste. 3000
New York, NY 10007
(212) 267-0200



EXHIBIT A

205

# EXHIBIT C

## IN THE UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF PENNSYLVANIA

In re:                              :    DISMISSED CHAPTER 7 INVOLUNTARY
                                    :
                                    :    CASE NO. 12-16438(JKF) *SEALED*
CHRISTOPHER    KOSACHUK,   a.k.a.   :
CHRIS KOSACHUK                      :
                                    :
                                    :
                                    :

### ORDER AND FINAL JUDGMENT

Upon consideration of the Motion of Christopher Kosachuk to Declare this Involuntary Bankruptcy Petition a Bad Faith Filing, for Costs, Compensatory and Punitive Damages, to Seal the Records and Sanctions (the "Motion") with respect to 9197-5904 Quebec, Inc. and the arguments of counsel and evidence admitted at the trial conducted before this Court on March 18, 2015, it is **ORDERED, ADJUDGED AND DECREED:**

1.      The Motion is **GRANTED** as to 9197-5904 Quebec, Inc. without effect on the Motion as to the claims asserted and relief sought in the Motion against Darius A. Marzec, Esq.

2.      Final Judgment for monetary sanctions in the amount of $192,173.71 pursuant to 11 U.S.C. §§ 105(a) and 303(i)(1), representing the reasonable costs and attorneys' fees incurred by Mr. Kosachuk in this matter, is awarded to Chris Kosachuk against 9197-5904 Quebec, Inc., plus prejudgment interest and post judgment interest at the federal judgment rate of interest.

3.      Final Judgment for monetary sanctions in the amount of $ 960,968.55 pursuant to 11 U.S.C. § 303(i)(2)(B) and this Court's inherent powers, representing punitive damages, is awarded to Chris Kosachuk against 9197-5904 Quebec, Inc., plus prejudgment interest and post judgment interest at the federal judgment rate.

118113055_1

4.    Final Judgment pursuant to 11 U.S.C. § 105(a) and this Court's inherent powers, is awarded to Chris Kosachuk that the indebtedness of Chris Kosachuk with respect to that certain judgment issued by the Supreme Court, County of New York, under Index No. 103896/2004 in favor of Eugenia Lorret and against Chris Kosachuk in the sum of $150,732.45 accounting for $108,293.54, plus interest of $41,388.91 from November 25, 2002, plus costs of $1,050, and which judgment was thereafter modified and reduced on May 12, 2008 to the sum amount of $48,293.54, plus costs of $1,050, plus interest from November 25, 2002, and which judgment was assigned to 9197-5904 Quebec, Inc. on December 15, 2009 by Assignment of Judgment, and which judgment was further assigned to SRS Techonologies Professionals, LLC by Assignment of Judgment, dated February 10, 2014, Index No. 103896/2004, and Corrected Assignment of Judgment, dated February 10, 2014, is hereby cancelled nunc pro tunc to July 6, 2012.

5.    This Final Judgment may be recorded as a matter of public record.

6.    This Final Judgment is effective immediately upon entry and this Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and Final Judgment.

7.    Chris Kosachuk shall be entitled to writs of execution and all other legal process to enforce this Final Judgment permitted by Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure and applicable law.

March 24th 2015

BY THE COURT:

The Honorable Jean K. FitzSimon
United States Bankruptcy Judge

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In Re:                                          Chapter 7

Selective Advisors Group LLC,                   Case No. 815-72153-A736

Debtor.                          <u>Stipulation of Settlement</u>

------------------------------------------------------------X

Whereas, the Debtor having filed a voluntary petition for relief under Chapter 7 of

the Bankruptcy Code,

Whereas, the Debtor having appeared for examination pursuant to § 341(a) of the

Bankruptcy Code,

Whereas, the Trustee having raised issues as to whether this filing was a good

faith bankruptcy filing by the Debtor,

Whereas, there is an issue concerning whether the Debtor has any creditors in this

bankruptcy case,

Whereas, the Trustee's attorneys, Weinberg, Gross & Pergament LLP having

expended substantial time and effort in trying to understand this bankruptcy case and all of the

related litigation between the Debtor and NLG LLC,

It is hereby Stipulated and Agreed as follows:

1.      This bankruptcy case is dismissed with prejudice.

2.      The Debtor shall pay the sum of $6,500.00 to Weinberg, Gross &

Pergament LLP for the attorneys' fees and costs incurred in investigating the claims asserted by

the Debtor in the bankruptcy petition and related State Court lawsuits.

3.    This Stipulation represents the entire agreement between the parties and may not be modified unless in writing signed by the parties and is subject to approval by the Bankruptcy Court.

4.    The parties acknowledge that the United States Bankruptcy Court for the Eastern District of New York shall retain jurisdiction with respect to the interpretation and enforcement of this Stipulation of Settlement and the terms herein.

Dated: Garden City, New York
        July 23, 2015

Weinberg, Gross & Pergament LLP
Attorneys for Trustee

By: _____
Marc A. Pergament
400 Garden City Plaza, Suite 403
Garden City, New York  11530
(516) 877-2424

Vlahadamis & Hillen, LLP
Attorneys for Debtor

By: _____
Evans M. Hillen
148 East Montauk Highway, Suite 3
Hampton Bays, New York  11946
(631) 655-4115

"So Ordered"

2

# EXHIBIT "B"

# VLAHADAMIS & HILLEN LLP

### Attorneys and Counselors at Law

8 E. Montauk Highway, Suite 3
Hampton Bays, NY 11946

Telephone: 631.594.5400
Fax: 631.594.5401
www.vhlawny.com

*JAMES F. VLAHADAMIS
james@vhlawny.com

*Admitted in NY & NJ

EVANS M. HILLEN
evans@vhlawny.com

September 4, 2015

Via Fed Ex
Hon. Shlomo S. Hagler
c/o Meshulum Bulls
Supreme Court, Civil Term
New York County
60 Centre Street
Room 335
New York, New York 10013

RE: 9197-5904 QUEBEC, INC. (Selective Advisors Group, LLC, Judgment Assignee)
v. NLG, LLC
Index No.: 101875/2012

Hon. Judge Hagler,

Please be advised that my firm represents the Selective Advisors Group LLC, plaintiff judgment creditor herein. This correspondence shall constitute a courtesy notification that plaintiff accepted payment in full satisfaction of the judgment outstanding against NLG, LLC and has caused the annexed Satisfaction of Judgment to be recorded with the county clerk's office.

Given the foregoing, it would be unsuitable for this Court to entertain any application of NLG, LLC (such as one filed by letter on September 3, 2015) seeking to restore the motion to vacate the judgment as there currently exists no judgment to vacate and the matter remains moot. Thank you for your attention to this matter.

Sincerely yours,

James F. Vlahadamis

CC:
ARI MOR, Esq. (Attorney for NLG, LLC)
JONATHAN BORG, Esq. (Attorney for ADR Miami, LLC, nonparty movant)

213

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X
SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
Assignee of 9197-5904 Quebec Inc
      Plaintiff,             Index No: 101875/2012

                                    **NOTICE OF FILING
                                    SATISFACTION OF
                                    JUDGMENT**

           - against -

NLG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY,
                         Defendant.
-------------------------------------------------------------X

PLEASE TAKE NOTICE that the Plaintiff Assignee Selective Advisors Group, LLC is

hereby filing a Satisfaction of Judgment.

Dated: September 3, 2015
       New York, New York

Vlahadamis & Hillen, LLP

                           By:    */s/ James F. Vlahadamis*
                                 James F. Vlahadamis, Esq.
                                 148 E. Montauk Highway
                                 Suite 3
                                 Hampton Bays, New York 11946

TO:    THE LAW OFFICES OF ARI MOR, ESQ
       347 E 65th Street, Suite 2RW
       New York, New York 2RW
       (347) 850-0578
       ari.mor.esq@gmail.com

       ATTORNEY FOR DEFENDANT
       NLG, LLC, a Delaware Limited Company

JONATHAN M. BORG BEDELL & FORMAN LLP
44 Wall Street, 10th Floor
(646) 219-7551
jborg@bedell-forman.com

ATTTORNEY FOR ADR MIAMI LLC ("ADRM")



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
As successor 9197-5000 Quebec Inc.

                    Plaintiff,                    Index No. 601375/2012
                                                 SATISFACTION OF
              -against-                          JUDGMENT

NBG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## SATISFACTION OF JUDGMENT

WHEREAS, a judgment was entered in the above-entitled action on February 26, 2012, in
favor of 9197-5000 QUEBEC, INC. against NBG, LLC in the amount $8,000,000.00 plus
costs in $2,295.00 and and $8,002,295.00 in judgment;

WHEREAS, docketed in the Office of the Clerk of the County of New York on February
26th, and;

WHEREAS, said judgment has been satisfied on April 5th, 2014 to Selective Advisors
Group, and that;

216

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK.
-------------------------------------------------------------------X
SELECTIVE ADVISORS GROUP, LLC, A DELAWARE
LIMITED LIABILITY COMPANY,
Assignee of 9197-5904 Québec, Inc

                     Plaintiff,          Index No: 101875/2012
                                        **SATISFACTION OF**
                                        **JUDGMENT**

       - against -

NLG, LLC, A DELAWARE LIMITED LIABILITY
COMPANY,
                     Defendant.
-------------------------------------------------------------------X


## SATISFACTION OF JUDGMENT


WHEREAS, a judgment was entered in the above entitled action On February 22, 2012 In

favor of 9197-5904 QUEBEC, INC Against NLG, LLC In the sum of $5,000,000.00 plus

costs of $225.00, and said $5,000,225.00 judgment

Which was docketed in the Office of the Clerk of the County of New York, On February

22, 2012 and

WHEREAS said judgment has been assigned on April 30, 2014 to Selective Advisors

Group, LLC and

WHEREAS said judgment has been paid in full (Plaintiff has accepted a partial payment

that is hereby deemed as payment in full satisfaction of the judgment) on September 1,

2015 and the amount of $0.00 remains unpaid, and

It is certified that there is no outstanding execution with the Sheriff or Marshal within the State of New York, and

WHEREAS the undersigned is the holder of said judgment and said judgment has not been assigned,

THEREFORE, full satisfaction of the judgment is hereby acknowledged and said Clerk is hereby authorized and directed to make an entry of said satisfaction on the docket of said judgment.

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal the day and year first above written.

On behalf of
SELECTIVE ADVISORS GROUP, LLC:

Dated: 9/3/15

Sean Neil Meehan, manager

## ACKNOWLEGEMENT

COUNTY OF _Camacho_

On the _3rd_ day of _September_ the year _2015_ before me, Sean Neil Meehan, the undersigned, personally appeared personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities and that by his/her/their signature(s) on the instrument, the

individual(s), or the person upon behalf of which the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

_____
Sean Neil Meehan

## CERTIFICATE OF CONFORMITY

I, _Diane Bibeau_, a duly licenced notary public in the province of _Quebec_, Canada, affirm under penalty of perjury and certify that I witnessed the signature of Sean Neil Meehan as applied to the document annexed to this certificate, which was signed and dated on September 5, 2015. The matter in which acknowledged, in accordance with, and conforms to, the laws for taking oaths at acknowledgements, in the province of Quebec, Canada.

Dated: September 5th 2015

_____
NOTARY PUBLIC
NAME:

AFFIRMATION OF SERVICE

STATE OF NEW YORK      )
                       )      SS.:
COUNTY OF NEW YORK     )

I, James Vlahadamis, being sworn, say, I an attorney duly admitted to practice law in the State of New York.  On September 3, 2015, I served the within Notice of Filing of Judgment Satisfaction and Satisfaction of Judgment by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to the following person at the last known address set forth after the name:

TO:      THE LAW OFFICES OF ARI MOR, ESQ.
         347 E 65th Street, Suite 2RW
         New York, New York 2RW
         (347) 850-0578
         ari.mor.esq@gmail.com

         ATTORNEY FOR DEFENDANT
         NLG, LLC, a Delaware Limited Company

         JONATHAN M. BORG BEDELL & FORMAN LLP
         44 Wall Street, 10th Floor
         (646) 219-7551
         jborg@bedell-forman.com

         ATTTORNEY FOR ADR MIAMI LLC ("ADRM")


Vlahadamis & Hillen, LLP

                              By:      /s/ James F. Vlahadamis
                                       James F. Vlahadamis, Esq.
                                       148 E. Montauk Highway
                                       Suite 3
                                       Hampton Bays, New York 11946